## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Lawerence Battle                              )
                                              )
       **Plaintiff**                              )
                                              )    Civil Action No: 05-1412 (JR)
       **v.**                                      )
                                              )
Norman Y. Mineta                              )
Secretary of Transportation                   )
                                              )
       **Defendant,**                             )

---

## PLAINTIFF'S MOTION TO DENY DEFENDANT'S MOTION TO DISMISS

## SUPPORTED BY DOCUMENTARY MATERIAL EVIDENCE AND

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BASED ON

## UNDEPUTED FACTS SUPPORTED BY DOCUMENTARY MATERIAL

## EVIDENCE

Comes now, Lawerence Battle (Plaintiff) in the above styled matter, moves the

honorable court to deny defendant's motion to dismiss; and grant appellant's motion for

summary judgment based on documentary material evidence submitted in Exhibits A and

B by appellant that disputes defendant's allegations of Motion to Dismiss and Argument.

Plaintiff provided documentary material evidence that validates Defendant provided false

information to this court; and validates defendant's huge credibility problem.

## MEMORANDUM STATEMENT OF MATERIAL FACTS THAT DISPUUTE

## DEFENDANT'S MOTION TO DISMISS MEMORANDUM

# RECEIVED

DEC 2 1 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Lawerence Battle hereafter (Plaintiff) respectfully moves this Court to deny defendant's motion to dismiss or alternatively for summary judgment; and to grant plaintiff summary judgment or alternatively schedule this case for trial. Plaintiff submits that Defendant has failed to provide this Court factual information supported by documentary material evidence to warrant dismissal of this civil action case No. 05-1412 (JR). Moreover there are numerous genuine issues of material facts that preclude dismissal or summary judgment in favor of defendant as a matter of law.

The Federal Aviation Administration (FAA) treated Plaintiff less favorable than it treated employees outside of his protective class group, which is disparate treatment. **Ref. Exhibit A Tab 25.** On August 5, 1998, Plaintiff sustained a disabling traumatic injury in the performance of duty, his traumatic injury claim (Form CA-1) was pending at the U.S. Department of Labor (OWCP). Subsequently, Plaintiff's claim was accepted by OWCP. **(Ref. Exhibit A Tab 12)** Plaintiff requested sick leave accommodation on December 24, 1998; and Dick Brown, Ph.D. Licensed Psychologist notified Plaintiff's Supervisor Jack Phillips that Plaintiff was under his professional care and was unable to return to work. **Ref. Exhibit A Tabs 14).** Mr. Phillips who **lacks medical and mental health training** denied Plaintiff's sick leave accommodation request, directed Plaintiff to return to work and assigned Plaintiff former ARX-100 Division employer Elvia Rivera workload (Configuration Management) in addition to his own original workload; which cause a severe resumption/reoccurrence of Plaintiff's medical condition as confirmed by Dr. Brown and the FAA Hired Consultant Dr. Brian Schulman. For Dr. Brown **(Ref. Exhibit A Tab 23)** and for Dr. Schulman **(Ref. Exhibit B Tab 5 Page 411 Lines 1-9.**

Dr. Schulman was asked by Plaintiff's attorney the question what he knew about thee FAA as far as operations, operational functions. Dr. Schulman testified what he knew about the FAA operations and operational functions and Plaintiff's type of work. He testified that Plaintiff was working in a highly safety sensitive position (Management and Program Analyst) at a GS-14 level, there was no margin for error and Plaintiff had to be 100% competent and every position at the FAA is highly safety sensitive. He was asked where is that located in Plaintiff position Description, he testified that he could not find it and he does not need to see it in the position description. He testified that his conclusion is that all jog at the FAA are highly safety therefore Plaintiff could not do any job at the FAA. **Ref. Exhibit B Tab 5 Page 413 line 4 through Page 416 line 20).**
FAA Dr. Barton Pakull was asked by Plaintiff's attorney if Plaintiff Management and Program Analyst position 343 series was a safety sensitive position? Dr. Pakull testified that plaintiff was not in a safety related position. The U.S. Department of Transportation regulation DOT 3910.1C identifies all safety-related positions in the Department of Transportation. Safety-related position the employees have to be tested for Drugs and Alcohol. The series 343 Management and Program Analyst position are not safety-related position and employees do not have to be tested. **Ref. Exhibit B Tab 8 Appendix Page 1 and 5).**

Jose Justiniano (Plaintiff 2nd level supervisor) used incorrect information provided by Dr. Schulman that Plaintiff could not do any job at the FAA and fired Plaintiff. On October 21, 1998, Mr. Justiniano signed a resolution agreement resolving prior EEO claims, wherein in exchange for the promises the agency agreed that no reprisal action would be taken against Plaintiff. However, within days of Mr. Justiniano signing the

3

agreement, Mr. Phillips and the FAA started retaliation against Plaintiff. Plaintiff

brought Mr. Phillips' retaliatory treatment to Mr. Justiniano attention on December 15,

1998. Moreover, Mr. Justiniano regarded Plaintiff as having a major life activity

**(thinking)** substantially limited effective August 5, 1998, as early as August 5, 1998,

which is covered under the ADA Rehabilitation Act. **Ref. Exhibit B Tab 10 Mr.**

**Justiniano Interrogatories Page 12 of 32 mid-page; and SF-3112B Sections A-F).**

Jack Phillips (Plaintiff 1st level supervisor) regarded plaintiff as having a major

life activity **(concentration)** substantially limited, which is covered under the ADA

Rehabilitation Act. **Ref Exhibit B Tab 11 Page 7 second paragraph 2nd sentence.**

Also, Mr. Phillips authorized Plaintiff sick leave based on Plaintiff's work related stress

and work related disability. **NOTE: (Exhibit B Tab 11 contains Phillips letter dated**

**January 7, 2000, and SF-71 sickleave approval and his June 29, 1999, letter advising**

**Plaintiff that he will be on sick leave until he make a decision on his transfer**

**accommodation request).** Mr. Phillips has established his own ADA Rehabilitation

Act requirements, which is entirely different from EEOC Notice. Mr. Phillips'

requirement for Plaintiff under the ADA Rehabilitation Act is "Plaintiff have to be

physically abused in his position and the environment Plaintiff is working is totally

unacceptable or was personally harassed by people working where he was working. **Ref.**

**Exhibit B Tab 12 page 87 line 14 thru page 88 line1.** Also, Mr. Phillips testified that

he has no training in medicine or mental health or law. **Ref. Exhibit B Tab 12 line 13-**

**16.** Mr. Phillips complete deposition dated October 30, 2000, is testimony of Mr. Phillips

discrimination and retaliation against Plaintiff and making false statement to cover up his

adverse action against Plaintiff. **Ref. Exhibit B Tab 12.**

This discrepancy was brought to the attention of FAA Legal Counsel Sheryl Williams, Jose Justiniano ARX-2, John Staples ARX-1, James Washington ARS-1, Jim Hevelone ARX-2, and Jane F. Garvey FAA Administrator and Norman Y. Mineta Secretary. No official took corrective action. Jim Hevelone ARS-2 stated that Dr. Schulman medical information and conclusion was wrong and that Plaintiff Management and Program Analyst position was not safety related.

The FAA made its decision to terminate Plaintiff's employment in 1998, per Christine Comer Manager Policy Staff and Employee Relations who testified as a facts witness for the FAA. **Ref. Exhibit B Tab 8 Page 48 lines 1-19.** Also, Ms. Comer testified that she wrote the January 7, 2000, letter for Mr. Phillips signature to remove me from services, although Mr. Phillips was no longer my supervisor and had been detailed to an unclassified position effective January 2, 2000. (**Ref. Exhibit B Tab 9 Philllips' detail).**

Mr. Phillips action of denying Plaintiff's December 24, 1998 sick leave accommodation, directing Plaintiff to return to work on February 16, 1999, over Dr. Brown's professional advice and doubling Plaintiff workload assignment **exacerbated Plaintiff's depression and Generalized Anxiety Disorder.** This action was part of the agency plot to force plaintiff out of the Agency. **The removal decision was made in 1998.**

The Agency regarded Plaintiff as having a **disability** effective August 5, 1998. The FAA recently requested Plaintiff to submit medical evidence to support his continued disability sustained in the performance of duty on August 5, 1998. Also, the FAA provided a letter documenting that its had reimbursed the U.S. Department of Labor

$329, 185.93 due to Plaintiff August 5, 1998, work related disability injury. **Ref. Exhibit B Tab 13.**

**Defendant concealed the above information from this court and Judge Robertson in C.A. 01-2213 (JR), which would have made a different in the September 2, 2005 decision.**

The Court must be aware that Mr. Phillips submitted a letter dated January 8, 1999, to Plaintiff requesting specific medical information from Plaintiff's doctor. On January 8, 1999, Mr. Phillips did not request any information regarding Plaintiff's major life activities, which were severely impaired under the ADA/Rehabilitation Act nor did he request medical information on Plaintiff's disability. **Ref. Exhibit A Tab 13.** The FAA did not raise any issue about Plaintiff disability status or his qualification under the ADA/Rehabilitation Act prior to or on February 16 and 17, 1999, and to raise this issue 6 years and 10 months after the fact is **pretextual.** Moreover, medical evaluation reports completed by Dr. Brown and Dr. Sheehan have sleeping, thinking, concentration, occupational functioning, school (learning) and work documented as some of Plaintiff's major life activities, which were severely impairments. In Mr. Phillips January 8, 1999, letter requesting specific medical information, Mr. Phillips did not request any medical information regarding Plaintiff's sleeping problems. Although, the FAA was knowledgeable of plaintiff's unable to sleep condition problem. Also, Dr. Schulman (FAA Hired Consultant) testified to major life activities of Plaintiff severely impairments. **Ref. Exhibit B Tab 5 Page 412 lines 1-22.** Dr. Brown provided a medical response dated January 12, 1999, to all medical information requested by Mr. Phillips. Phillips required Plaintiff to return to work contrary to Dr. Brown's advice, he established

unrealistic, burdensome deadlines for Plaintiff production of medical information in order
to avoid being placed on AWOL.

The court must be aware that when the FAA denied Plaintiff sick leave request
accommodation dated December 24, 1998, plaintiff had more than <u>2200 hours of accrued</u>
<u>sick leave and over 240 hours of accrued annual leave; and Plaintiff had one period of</u>
<u>over 20 years without using any sick leave.</u>  This along is testimony to plaintiff loyal and
dedication to the FAA.  <u>The FAA's reason for denying Plaintiff December 24, 1998, sick</u>
<u>leave accommodation request, directing him to return to duty over Dr. Brown's</u>
<u>professional advice; and assigning him former ARX-100 Division employee Elvia Rivera</u>
<u>workload (Configuration Management) in addition to his own original workload is</u>
**<u>pretext</u>** <u>and proof of the FAA's continuous discrimination and retaliation against</u>
<u>Plaintiff.</u>  FAA Chief Psychiatrist Barton Pakull testified as an expert witness for the
FAA On June 27, 2000, that he reviewed Dr. Brown medical documents and since he
agreed with Dr. Brown medical documents there was nothing that needed to be done
since he agreed with them. Dr. Pakull reviewed Dr. Brown's May 19, 1999, letter
documentation of Plaintiff's major life activities substantially impaired, which Attorney
Charles Chester submitted to Jim Washington ARS-1,which Mr. Washington submitted
to Mr. Phillips for action. **Ref. Exhibit B Tab 6 Page 600 lines 9-22.**  Also, FAA Chief
Psychiatrist Dr. Barton Pakull testified that after he reviewed Dr. Brown medical records
he found plaintiff use of sick leave to be appropriate and justified. **Ref. Exhibit B Tab 6**
**Page 636 lines 17-22.**

Dr. Pakull testified that prior to June 29th, 1999, no one asked him whether
Plaintiff was a qualified person with a disability under the ADA Rehabilitation Act and

no one asked him whether a transfer for Plaintiff would be a reasonable accommodation under the ADA or Rehabilitation Act. **Ref. Exhibit B Tab 6 Page 637 lines 11-20.** Dr. Pakull testified that there came a time when Donald Faulkner wanted Plaintiff evaluated for other reasons, but that was separate. Dr. Pakull testified that he destroyed Dr. Brown's medical records submitted to him during the litigation pendency of plaintiff's case. **Ref. Exhibit B Tab 6 Page 672 line 3 through Page 673 line13.**

Donald Faulkner wanted Plaintiff evaluated for "other reasons" to gain information to submit to OWCP in his effort to convince OWCP to reject Plaintiff CA-1 form regarding Plaintiff disability traumatic injury sustained in the performance of duty on August 5, 1998. Dr. Pakull had reviewed the medical information regarding Plaintiff submitted by Dr. Brown and found no deficiencies in Dr. Brown's medical documents, he testified that since he agreed there was nothing to be done. There is documentary material evidence that Donald Faulkner wanted Plaintiff evaluated by Dr. Brian Schulman to gather information to submit to OWCP in his effort to persuade OWCP to deny Plaintiff August 5, 1998 disability traumatic injury claim. After the OWCP appeal hearing OWCP submitted a copy of the hearing transcript to the FAA with a 20 days response time. Mr. Faulkner responded October 20, 1999. Page 4 fifth paragraph Mr. Faulkner documented Mr. Phillips called Plaintiff's September 3, 1998, to convey that he decided to controvert Plaintiff claim dated august 27, 1998 concerning the alleged injury on August 5, **including continuation of pay (COP).** Mr. Faulkner documented plaintiff characterized this as harassing. Mr. Faulkner just validated Mr. Phillips lied in his affidavits and testimonies wherein Mr. Phillips testified that he called plaintiff on August 28, 1998, to tell him he was granted COP. Mr. Phillips also, lied in his testimony when

8

he statted that he called plaintiff on September 3, 1998, to inform Plaintiff he granted him
COP. This also, validates that Mr. Faulkner and Mr. Jose Justiniano lied when they
testified as a witness that Mr. Phillips called Mr. Battle and informed him he was on COP
when Phillips received the CA-1 form. Also, Page 4 fourth paragraph, Mr. Faulkner
documents that Mr. Phillips stated he observed no deficiencies in Plaintiff's performance
prior to his August 5, 1998 disability traumatic and Mr. Phillips stated that he observed
no deficiencies in Plaintiff's performance in February after Plaintiff's disability
traumatic. This mean that Plaintiff could perform the essential functions of his position
with or without accommodation.

After Mr. Phillips instructed Plaintiff to present himself to Dr. Schulman for an
evaluation to make a decision on Plaintiff long pending ADA Rehabilitation Act transfer
accommodation. Dr. Schulman submitted a report. Donald Faulkner took this medical
information the agency alleged will be used for plaintiff ADA Rehabilitation Act
accommodation and use it for another purpose in an effort to persuade OWCP to deny
Plaintiff claim. **Ref. Exhibit B Tab 14. NOTE: (Exhibit B Tab 14 contains Donald
Faulkner's letters dated October 20, 1999, December 30, 1999, and June 19, 2000).**
Mr. Faulkner submitted a letter dated December 30, 1999, to OWCP advising that office
that the Agency is in receipt of recent medical information regarding Plaintiff, which
should be considered in determining whether or not Plaintiff claim is compensable under
FECA. He went into Dr. Schulman indications regarding Plaintiff. Mr. Faulkner even
stated that Plaintiff has not authorized the Agency to release Dr. Schulman medical
evaluation report to anyone except the FAA Chief Psychiatrists, Dr. Barton Pakull.
However, Mr. Faulkner released this information to OWCP, which is a violation of

9

Plaintiff Privacy rights. **Ref. Exhibit B Tab 14 Faulkner letter dated December 30, 1999.**

Mr. Faulkner submitted a letter dated June 19, 2000, to OWCP in his effort to persuade OWCP to deny Plaintiff August 5, 1998, disability traumatic injury claim. Mr. Faulkner accused the Hearing Representative Jan R. Wood of misunderstanding the records she review when she made a finding based on the evidence that Plaintiff's performance appraisal for July 1, 1994 through March 31, 1995 was falsified which constitutes a compensable factor of employment. **Ref. Exhibit B Tab 14 Faulkner's letter dated June 19, 2000.** Mr. Faulkner intentionally provided false and misleading information in his effort to persuade OWCP to deny Plaintiff claim. There was no requirement for Faulkner to submit his December 30, 1999, and June 19, 2000, information to OWCP. On or about October 20, 1999, was the last opportunity OWCP gave the Agency to respond to the June 30, 1999 hearing. Also, Faulkner submitted an Affidavit thru Agency Counsel Sheryl Williams intentionally providing false information to cover up Phillips discrimination and retaliation against Plaintiff. Faulkner lie and stated that it is his collection that Mr. Phillips informed Mr. Battle that he would be granted COP for his August 5, 1998, traumatic. However, Mr. Faulkner submitted a letter dated October 20, 1999, to OWCP advising OWCP that Phillips called Plaintiff on September 3, 1998, and advised Plaintiff that his COP was controverted. **Ref. Exhibit B Tab 14 Faulkner's Affidavit dated June 29, 2001. NOTE: (Exhibit B Tab 14 contains Faulkner letters dated October 20, 1999, December 30, 1999, June 19, 2000, and Affidavit dated June 29, 2001).**

November 2, 1999, Attorney Charles Chester responded to Mr. Faulkner October 20, 1999, response to OWCP. There was no more responses requested or allowed by OWCP after Attorney Chester November 2, 1999, response. Attorney Charles Chester responded to the false and misleading information Mr. Faulkner submitted in his letter dated October 20, 1999, to OWCP. Attorney Chester supported Mr. Faulkner provided false information with documentary material evidence Exhibits A,B.C.D and E. The record speaks for itself. **Ref. Exhibit B Tab 23.**

After, Mr. Faulkner, Mr. Phillips and the FAA tactics of intentionally providing false and misleading information to OWCP in an attempt to persuade OWCP to deny Plaintiff disability traumatic injury claim sustained in the performance of duty on August 5, 1998, evidence by Mr. Faulkner letter dated October 20, 1999, with Attached statements submitted by Phillips and Justiniano. Next Mr. Phillips start intentionally providing false information for deciding officials to use to decide Plaintiff EEO discrimination claims. Mr. Phillips submits an Affidavit dated January 2, 2000, intentionally providing false information accusing the T & A clerk of faltering Plaintiff' Time and Attendance records. Provided false information about changing Plaintiff AWS. The U.S. Department of Labor forbids federal agencies from changing an employees work schedule when an employee sustain a disability injury in the performance of duty. Page 2 response 2b. last sentence Mr. Phillips confirmed the Claim I documented in my Civil Action Case No. 01-2213 (JR). Mr. Phillips document that I June 1999, he discovered that having Mr. Battle on the AWS instead of a standard schedule cost the government an additionally 20 hours of leave per year because of the holiday pay. Mr. Philips is lying about he discovered this issue in June because I filed an EEO complaint

on February 4, 1999, regarding Mr. Phillips taking 2 hours of leave from me every

holiday. Page 2 item 3, Mr. Phillips continues to intentionally provide false information.

He did not call Plaintiff's house on August 28, 1998, to in him he was on COP because

Phillips documented in the CA-1 he received it on September 1, 1998. Also, he

documented he controverted the COP request. The Agency cannot controvert COP using

reason (d) and grant COP at the same time. Page 3 item 6. Phillips documented that he

learned in December that a settlement had been reached, therefore he expected me to be a

work. **That statement confirms Phillips retaliation against plaintiff.** Phillips also,

state "If Dr. Brown felt it was ill-advised for Mr. Battle to return on February 16 all Mr.

Battle had to do was provide a letter from his doctor saying it was ill-advised. I would

have approved the sick leave as I had. **Ref. Exhibit B Tab 24 Jack Phillips affidavit**

**dated January 2, 2000.**

Mr. Phillips is intentionally providing false information. Dr. Brown submitted a

medical report dated January 12 to Mr. Phillips advising Mr. Phillips that Plaintiff was

under his professional care and was unable to return to work at this time. **Ref Exhibit A**

**Tab 14.** Also, Plaintiff submitted a letter dated January 28, 1999, to Mr. Phillips

advising Mr. Phillips that Dr. Brown had submitted a letter dated January 12, 1999,

advising Phillips that he was unable to return to work. **Ref. Exhibit A Tab 21.** Plaintiff

documented in his May 4, 1999, EEO discrimination complaint that Mr. Phillips was

trying to force him out of the agency. Page 6 3rd paragraph Mr. Phillips confirmed what

Plaintiff been saying, Mr. Phillips documented "Dr. Schulman medical evaluation was

considered to be a factor in determining what if any, accommodation could have been

appropriate or possible for Mr. Battle id he was determined to be a disabled person per

the rehabilitation Act." Dr. Schulman incorrectly concluded that plaintiff's 343 series

Management and Program Analyst position is a highly sensitivity safety position and all

position at the FAA are highly safety sensitivity therefore, plaintiff cannot perform the

duties of his position or any position within the FAA. The record speaks for itself. **(See**

**Exhibit B Tab 5, Dr. Schulman testimony Page 413 line 4 thru Page 416 line 20).**

The U.S. Department of Transportation order DOT 3910.1C identify all FAA

safety related positions. Plaintiff's Management and Program Analyst 343 series position

is not a safety related position. The record speaks for itself. **(See Exhibit B Tab 7 DOT**

**3910.1C)** Also, Mr. Phillips deposition dated October 30, 1999, Mr. Phillips state his

ADA Rehabilitation Act requirement. The record speaks for itself. **Ref. Exhibit B Tab**

**12.**

The way the FAA treated Plaintiff is in sharp contrast in how the FAA treats

employees that sustains disabling traumatic injuries in the performance of duty outside of

Plaintiff's protective class group when the FAA **denied Plaintiff's sick leave**

**accommodation request, directed him to return to work without any**

**accommodation and increased his workload assignment.** Although, they were

similarly situated employees connected by disabling traumatic injuries sustained in the

performance of duty. **Ref. Exhibit A Tab 25 FAA employee Kenneth Neel Affidavit**

**dated December 1, 2005.**

The above statements can be confirmed by obtaining the complete personnel

records files (including the medical records section) of FAA employees Kenneth L. Neel

(White Male); Ken Bitgood (White Male); and Yashoba Reddy (Indian Female) all three

sustained a disabling traumatic injury in the performance of duty. Mr. Kenneth L. Neel

and Mr. Ken Bitgood who previously held an Air Traffic Controller position series

**2152KH** are currently working in the Gulf Coast System Management Office in an

Administrative Assistant position series **301**, located at Houston, Texas and can be

contacted at telephone number 281-876-5600. Ms. Yashoba is currently working in the

Great Lakes Region Office located in Des Plaines, Illinois in the Logistic Office and can

be contacted at 847-294-7297. **Ref. Exhibit A Tab 25 regarding Kenneth L. Neel**

    The FAA can easy obtain the above three referenced employees complete

personnel records files because their personnel records are in the FAA's possession and

not at the national archive record center located in St. Louis Missouri. Moreover, Mr.

Kenneth Neel has submitted an Affidavit wherein he attests to how the FAA treated him

and the accommodations he received and is still receiving from the FAA. Mr. Neel's

affidavit along is sufficient evidence that proves Plaintiff received disparate treatment by

the FAA. Also, there is an age different between Plaintiff and Mr. Neel. Mr. Neel is

much younger than Plaintiff. **Ref. Exhibit A Tab 25.** The FAA brought both Mr. Neel

and Mr. Bitgood back to work under the "FAA Return to Work Program" with

accommodations. Within the past two years the FAA has returned at least 31 employees

back to work under the FAA Return to Work Program with accommodations that

sustained a disabling traumatic injury in the performance of duty and were receiving

OWCP benefits. The FAA has these 31 employees personnel records in its possession.

Plaintiff provided three employees by name (Mr. Kenneth Neel, Mr. Ken Bitgood and

Ms. Yashoba Reddy) that the FAA can easily provided their complete personnel records

files including medical records that will confirms the FAA subjected Plaintiff to

disparately treatment including discrimination and retaliation. These three FAA

employees complete personnel records files can be obtained through the discovery procedure request for production of records. The FAA cannot use pretext "unable to produce records because employees have retired and are no longer employed by the FAA and the FAA do not have their personnel files, don't have their SSN and these former FAA employees personnel records files are stored at the Record Storage Center located in St. Louis Missouri."

The FAA cannot withhold information in its possession that would have changed the results in Plaintiff's decision, reference FAA employees Kim L. Hamilton v Merit System Protection Board, No. 94-3195, United States Court of Appeal, Federal Circuit dated January 26, 1996. The court rejected the FAA's argument that it had no obligation to come forward with relevant evidence in its possession. The court ruled that the agency may not sit by concealing evidence that would change the result in a case and the court disapprove of such gamesmanship. Likewise the FAA has at least 31 employees that sustained a disabling traumatic injury in the performance of duty and did not direct them to return to duty and increase their workload. The FAA brought these 31 employees back to work off the OWCP benefits roll under the 'FAA Return to Work Program" with accommodations. These 31 personnel records files are in the FAA's possession and will prove that the FAA treated these similarly situated employees different than it treated Plaintiff when all including Plaintiff sustained a disabling traumatic injuries in the performance duty. The FAA has documentary material evidence in its possession that will prove Plaintiff's case against Defendant; and this information can be obtained through the Court's discovery procedures process.

The Federal Government (Defendant) wishes to include certain parts of <u>Battle v.</u> <u>Mineta</u>, C.A. No. 01-2213 (JR) when it is to defendant's convenience and when it is not it does not involve it. However, since Defendant has brought issues of C.A. No. 01-2213 (JR) Plaintiff must address those issues in his motion supported by documentary material evidence. During the EEOC administrative complaint process the Federal Aviation Administration (FAA) sever these claims in C.A. No 05-1412 (JR) from claims in <u>Battle</u> <u>v. Mineta</u>, C.A. No. 01-2213 (JR). Defendant has documentary material evidence in its possession that confirms FAA's actions. Plaintiff's claims <u>Battle v. Mineta</u>, C.A. No. 05-1412 (JR) are not precluded by *res judicata*, inasmuch as Plaintiff could not have and did not advance these claims in the discrimination suit that this Court just resolved in favor of the Defendant, <u>Battle v. Mineta</u>, C.A. No. 01-2213 (JR) because these claims (<u>supervisor</u> <u>Jack Phillips assigning Appellant former ARX-100 Division Employee Elvia Rivera's</u> <u>workload configuration management, in addition to his own workload</u>) were still in the EEOC administrative complaint process. Defendant did not and cannot identify between the four corners of C.A. No. 01- 2213 (JR) where the issue of Appellant's supervisor assigning Appellant a former employer workload in addition to his own workload. Mr. Phillips and the FAA have admitted that Mr. Phillips doubled Appellant's workload per Mr. Phillips' statements to *the FAA EEO Counselor "Mr. Phillips explained that his* *organization had been reduced from 15 to eight people yet retained the same workload.* *Other people, as well as Mr. Battle were asked to absorb the workflow. Mr. Phillips said* *he asked Mr. Battle if he would take over a program since the other person working it* *had left." ***(Ref. Exhibit A Tab 16 EEO Counselor report page 4 third Paragraph** **and Beth Henderson e-mail).**

16

**The above claim made by Mr. Phillips is pretextual.** Mr. Phillips did not identify the 7 employees that left his organization that reduced it from 15 to 8 employees. Mr. Phillips did not identify the programs the employees were working that left the organization. Mr. Phillips did not identify what programs were assigned to the other people in his organization. The reason Mr. Phillips failed to name the others employee workload that were increased and name the addition program he assigned to them is because Mr. Phillips did not increase other ARX-100 Division employees workload.

The Equal Employment Opportunity Commission (EEOC) issued a decision dated August 3, 2001, in Appellant's favor **(Ref. Exhibit B Tab 1).** FAA (Legal Counsel Sheryl Williams) submitted a motion to reconsider dated September 28, 2001 to EEOC **(Ref. Exhibit B Tab 2).** Appellant submitted his opposition to Agency's motion for reconsideration, wherein he documented the agency's reconsider request will only be dilatory in nature and will prejudice his efforts to vindicate his rights in Court **(Ref. Exhibit B Tab 3). NOTE: (Exhibit b Tab 3 contains Plaintiff's letter of opposition to Agency motion to reconsider and Plaintiff EEO discrimination complaint filed on May 4, 1999).** EEOC issued a decision dated September 26, 2003, which affirmed its August 3, 2001 decision **Ref. Exhibit B Tab 4).**

Moreover, Plaintiff claims are legitimate and are genuine issues for trial or summary judgment in favor of Plaintiff because Plaintiff suffered an adverse employment action. EEOC decision dated August 3, 2001, EEOC documented that upon review of the entire record it found that the claims address a personal loss or harm regarding a term, condition, or privilege of plaintiff's employment. **(Ref. Exhibit B Tab 1, page 2, second**

**paragraph).** Contrary to Defendant's statements, EEOC found that plaintiff suffered an adverse employment action. **(Ref. Exhibit B, page 2, third paragraph).**

Defendant has documentary material evidence in its possession that confirm plaintiff suffered an adverse employment action on February 16 and 17 1999, when his supervisor directed him to return to duty and doubled his workload. Appellant's Professional Health Care Provider (Dick Brown, Ph.D. Licensed Psychologist submitted a letter dated February 22, 1999, with attached Mental Health Treatment Plan to Jack Phillips; and advised Mr. Phillips that Plaintiff return to work on February 16 and 17, 1999 was psychologically ill advised and caused a **severe resumption of Appellant's anxiety** which he clearly documented in the opinion from the Forensic Psychological Evaluation of November 12, 1998. **(Ref. Exhibit A Tab 23 for Dr. Brown) and (Ref. Exhibit B Tab 5 Dr. Brian Schulman testimony Page 411 lines 1-22).**

Brian Schulman, Physician and Psychiatrist appeared at the GFT hearing on June 26, 2000, as the FAA hired consultant expert witness. Dr. Schulman testified for the FAA that Appellant reintroduction to the workplace on February 16 and 17 of 1999, caused a **severe reoccurrence of Plaintiff's condition.** Ref. Exhibit B Tab 5 Page 411 **lines 1-22.** Dr. Schulman told the FAA that he understood the condition under which Plaintiff became reintroduced to the workplace was that Plaintiff contended that he was not medically able. He had been sent a letter that he had to return to work, and that he contended that he needed to continue on medical leave of absence and he believe the medical leave was supported by Dr. Brown. **(Ref. Exhibit B Tab 5 page 411 lines 1- 22). Defendant has not and cannot dispute Drs. Brown and Schulman medical**

**evidence findings that Plaintiff's return to the workplace on February 16 and 17,**

**1999, caused a severe harm to plaintiff's medical condition and well being.**

Dr. Brown submit a medical report dated January 12, 1999, to Mr. Philips

responding to medical information requested in Mr. Phillips' letter dated January 8, 1999.

**Ref. Exhibit A Tab 14.** Mr. Phillips did not request any medical information regarding

Plaintiff's major life activities and their impairments in accordance with the

ADA/rehabilitation Act. **Ref Exhibit A. Tab 13.** Dr. Brown advised Mr. Phillips that he

had completed a Forensic Psychological Evaluation medical report on Appellant on

November 12, 1998, and the work was performed based on Form CA-16 which Mr.

Phillips authorized and his findings indicated Plaintiff suffers from a generalized anxiety

disorder casually related to the work environment; and at this time Appellant is unable to

return to duty because of his anxiety. **(Ref. Exhibit A Tab 14).**   September 11, 1998, Per

the U.S. Department of Labor Form CA-16 Mr. Phillips authorized Dr. Brown to

examine and treat Plaintiff. **Ref. Exhibit B Tab 6.** Dr. Brown completed Part B

(Attending Physician's Report) of form CA-16, which he documented his findings and

treatment he provided and the period of the disability.

The court must consider the following ten (10) facts: (i) Mr. Phillips documented

in his January 22, 1999, letter directing appellant to return to duty that Dr. Brown's

medical documentation submitted to date (Forensic Psychological Evaluation Report

dated November 12, 1998, medical report dated September 17, 1998, medical report

dated October 22, 1998, and medical report dated January 12, 1999), lacks sufficient

details to support appellant's continued absence; **(ii) Mr. Phillips lacks medical and**

**mental health training, knowledge, experience and background;** (iii) Mr. Phillips did

not request Appellant to submit himself for a second opinion medical evaluation by a Dr.
chosen by the FAA; (iv) Mr. Phillips did not submit the medical information to the FAA
medical office to be reviewed by medical credentials officials; (v) Mr. Phillips did not
question the ADA Rehabilitation Act or if appellant was a qualified individual under the
act; (vi) June 4, 1999, Mr. Phillips requested the medical information in (i) to be
reviewed by FAA doctor Barton Pakull to determine if **sick leave** was justified however,
Mr. Phillips did not ask Dr. Pakull to determine if the medical documentation justify
ADA/Rehabilitation Act and if Appellant is a qualified individual under the Act; (vii) Dr.
Pakull reviewed the medical documentation submitted by Dr. Brown and determined that
sick leave was appropriate and justified; and advised Mr. Phillips. **(viii) Mr. Phillips**
**came up with the ADA/Rehabilitation Act and Appellant is not a qualified**
**individual under the Act PRETEXT for the first time on August 18, 1999;** (ix) the
U.S. Department of Labor notified the FAA that Appellant sustained a disability
traumatic injury in the performance of duty on August 5, 1998 and the FAA has
reimbursed the U.S. Department of Labor over $350, 000 for Appellant August 5,
1998,disability injury; and (x) the Office of Personnel Management (OPM) notified the
FAA of Appellant's has a disability.  If the Agency did not regard plaintiff as sustaining a
disability traumatic injury in the performance of duty and having a disability when Mr.
Phillips denied Plaintiff's December 24, 1998, sick leave accommodation request, the
FAA would not have paid the U.S. Department of Labor over $350, 000.00 to date.

Dr. Brown submitted a medical report dated October 22, 1998, to Mr. Phillips
advising him that Appellant suffers from the diagnosis of Generalized Anxiety Disorder
involving excess anxiety and worry due to work related problems and the anxiety

symptoms cause **clinically significant distress or impairment in social, occupational, and other important areas of functions.** **(Ref. Exhibit A Tab 14).**

Dr. Brown submitted a medical report dated September 17, 1998, to Mr. Philips advising him that Appellant was under his care for treatment of work related stress. He advised Mr. Phillips that Appellant could return to work when his stress adequately subsides. **(Ref. Exhibit A Tab 14).** Defendant "has not" and "cannot" produce a medical document from any doctor advising the FAA that Appellant stress has adequately subsided and appellant can return to work.

Appellant (Lawerence Battle) sustained a disability traumatic injury in the performance of duty on August 5, 1998, and U.S. Department of Labor advised the Federal Aviation of the disability traumatic injury. **(Ref. Exhibit A Tab 12).**

Plaintiff has submitted documentary material evidence that dispute defendant's contends that procedurally Plaintiff's claims are precluded by *res judicata*, inasmuch as Plaintiff could and should have advanced these claims in the discrimination suit that this Court just resolved in favor of the Defendant, Battle v. Mineta, C.A. No. 01-2213 (JR). Also, dispute Defendant's allegation that Plaintiff claims fails because he has not suffered an adverse employment action.

Plaintiff has stated a claim upon which relief shall be granted. Plaintiff supervisor (Jack Phillips) did not have the authority nor did he have the legal rights to severely harm appellant health when he directing Appellant to return to duty over Appellant professional health care provider advice and assign him another employee workload in addition to his own. The Federal Aviation Administration Human Resource Management Office, (Manager EAP Kim Braums) had a copy of the Forensic Psychological

Evaluation Medical Report completed by Dr. Brown and had spoken with Dr. Brown regarding Plaintiff's medical condition on or about January 27, 1999, which was prior to Mr. Phillips doubling Plaintiff workload. The FAA was fully aware of Plaintiff disability and medical condition prior to Mr. Phillips increasing plaintiff's workload. Mr. Phillips reviewed and signed on September 4, 1998, the CA-1 form regarding Plaintiff disability traumatic injury sustained in the performance of duty on August 5, 1998. The FAA recognizes and regards Plaintiff as an individual with a disability. The FAA had requested Plaintiff to provide it with medical evidence to support his continued disability and the FAA recently provided a document dated June 25, 2005, wherein the FAA documented it has reimbursed the U.S. Department of Labor $329, 185.93 in compensation for Plaintiff's August 5, 1998, disability traumatic injury sustained in the performance of duty. **Ref. Exhibit B Tab 8**

Defendant has intentionally provided false information to this court and intentionally concealed facts because Defendant is cognizant that Plaintiff supervisor (Jack Phillips) assigned to him on February 16, 1999, the workload (Configuration Management) of a former employer (Elvia Rivera) in addition to Plaintiff's own workload; and this claim was not and could not have been included in C.A. No. 01-2213 (JR).

Defendant failed to provide this court honest, forthright, straightforward, and factual information. "Defendant's conduct rises to the level of retaliatory treatment."

Retaliatory treatment has been held to include **harassment** (Calcote v. Texas Educ. Foundation, Inc., 576 F.2d 95, 97 (5th cir. 1978)), **false accusations** and

__intimidation comments__ (Griffin v. Michigan Dept. of correction, 654 F. Supp. 690 (E.D. Mich. 1982)).

For *Res judicata* to be applicable, requires identity in thing sued for as well as identity of cause of action, of persons and parties to action, and of quality in persons for or against whom claim is made. The sum and substance of the whole rule is that a matter once judicially decided is finally decided. Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 415, 66, L.Ed. 2d 308.

Identity – *The state or fact of remaining the same one, as under varying aspects or conditions. Exact likeness in nature, or quality.*

Identity – Evidence. *Sameness; the fact that a subject, person, or thing before a court is the same as it is represented, claimed, or charged to be.*

December 24, 1998, Appellant submitted a letter to his supervisor Jack Phillips. Appellant requested Mr. Phillips to terminate his annual leave status and place him back on __sick leave__ effective January 4, 1999, until such time that he is released for duty by his professional care provider. __The December 24, 1998, document is clearly a sick leave accommodation request and Mr. Phillips is the only FAA official involved.__ (Ref. __Exhibit A Tab 2).__

__Defendant cannot identify between the four corners of C.A. 01-2213 (JR) the December 24, 1998, sick leave accommodation request issue being raised as an issue by Appellant.__ Appellant sustained a disability traumatic injury in the performance of duty on August 5, 1998. November 1998, Mr. Phillips informed Appellant that he had to

discontinue his sick leave status and go on Annual leave or he would forfeit his 183 hours use or lose of annual leave.

Appellant's December 24, 1998, <u>sick leave</u> accommodation request denial by Mr. Phillips; Mr. Phillips was aware that Plaintiff suffers from generalized disorder **(Ref. Exhibits A Tab 14);** <u>Mr. Phillips directing Appellant to return to work over appellant's doctor advice;</u> and on <u>January 16 and 17, 1999, Mr. Phillips assigned Appellant former ARX-100 Division employer Elvia Rivera workload (Configuration Management) in addition to his original workload;</u> **Mr. Justiniano** submitted an <u>official government document</u> and testified that he truly believed and agreed that the severity of Plaintiff medical condition affected **his thinking, perception and actions. Ref. Exhibit B Tab 9 Page 12 of 32);** and **Mr. Phillips** submitted an <u>official government document</u> validating he knew and has agreed that plaintiff anxiety disorder interferes with his ability to **concentrate** and significant diminishes other **work-related capacities (See Exhibit B TAB 11 Page 7 second Paragraph of Phillips letter dated January 7, 2000).** Plaintiff's major life activities **(thinking and concentration)**, which are substantially limited are claims in **Civil Action No. 05-1412 (JR).** <u>Former EEO discrimination complaint filed by Appellant on May 4, 1999;and alleged discrimination official Jack Phillips.</u> **Right to sue letter dated April 12, 2005.**

**Civil Action No. 01-2213 (JR)** consisted of numerous EEO discrimination complaints filed by Appellant including the November 8, 1999, <u>ADA Rehabilitation Act, reasonable accommodation transfer request complaint.</u> Appellant May 20, 1999/ June 10, 1999 reasonable accommodation transfer request validated by Mr. Phillips June 29, 1999 letter to appellant. Moreover, Dr. Brian Schulman testified as an expert witness for the

FAA at the GFT hearing that Appellant request had been pending since <u>February 1999</u>. The May 20, 1999, ADA request with attached May 19, 1999, medical report from Dr. Brown. Dr. Brown documented Appellant major life activities substantially impaired such as **<u>difficulty concentrating; easily fatigued;, sleep difficulties; impairment in school (learning); and occupational functioning.</u>** **(Ref. Exhibit B Tab 15).** <u>Former EEO discrimination complaint was filed by Appellant on November 8, 1999, discriminating officials Jack Phillips, Jose Justiniano and John Staples.</u> **<u>Right to sue letter dated September 25, 2001.</u>**

Defendant *res judicata* claim fall short of the required identity C.A. 05-1412 (JR) involves discriminating official **Jack Phillips** and C.A. 01-2213 (JR) involves discriminating officials **Jack Phillips, Jose Justiniano and John Staples.**

Appellant is aware and will testify that supervisor Jack Phillips permitted the following non-African American to take leave, did not arbitrary demand their return, and did not double their workload thereafter:

**Elvia Rivera** – (Hispanic) took FMLA leave to be with her ill daughter located in Albuquerque, NM and after granting her leave Mr. Phillips granted Ms. Rivera a detail from March 1998 to November 1998, to allow Ms. Rivera to provide necessary care to her immediate family member. Ms. Rivera faced no retaliation/workload increase or arbitrary demand to return to work. **(Ref. Exhibit A Tab 19).**

**Richard Acosta** – (Hispanic) received time off to care for his wife, and for his own heart attack. Mr. Acosta faced no retaliation/workload increase or arbitrary demand to return to work.

**Bob Hintson** – (White) had knee surgery. Phillips granted him time off to recover. Mr. Hintson faced no retaliation/workload increase or arbitrary demand to return to work.

**Jim Copeland** – (White) beat his subordinate (Richard Chase) eye out. The FAA accommodated Mr. Copeland. The FAA relocated Mr. Copeland work location from Jamaica, NY to Norfolk, VA, gave him a 5% ATCRA pay increase and subsequently promoted Mr. Chase from a GS-12 level position to a GS-13 level position. Mr. Copeland engaged in violence conduct and the FAA accommodated him. Mr. Copeland SSN for his personnel record file can be obtained by contacting the FAA Eastern Region Office located in Jamaica, NY, Human Resources Management Division at 718-553-3130, Airway Facilities Division Manager Barry Boshnack at 718-553-3400, manager Selim Haber at 718-553-3401 and Manager Abigail Moserowitz at 718-553-3420. Mr. Copeland was not ill and disabled, the FAA accommodated him for drinking at a local bar and getting into a fight with his subordinated employee and beating his eye out. But refused to accommodate Plaintiff sick leave request for his job related disability injury.

**Kenneth R. Neel** - (White male who is much younger than Plaintiff) Sustained a disabling traumatic injury in the performance of duty. The FAA granted Mr. Neel time off. Mr. Neel did not face retaliation/workload increase or arbitrary demand to return to work. After an extended absence from his duty (more than 28 months) Mr. Neel was accommodated by the FAA and returned to duty at a different work location and a different position with different duties. Mr. Neel was an Air Traffic Controller prior to his disabling traumatic injury. The FAA accommodated Mr. Neel in the Gulf Coast (GLF) SMO Airway Facilities Facilities organization. Mr. Neel's personnel file records

including his medical records can be obtained by contacting the Gulf Coast SMO located at Houston TX, telephone No. 281-876-7100 or 281-876-5600. Also, you can contact the Southwest Region Headquarters Human Resource Management Division located at Fort Worth, TX, telephone No. 817-222-5400. **Mr. Neel is currently working at the Gulf Coast SMO located at Houston, Texas. Mr. Neel will appear before the court and testify as a witness for Plaintiff regarding how the FAA accommodated him and treated him, which is much more favorable than the FAA treated Plaintiff. (Ref. Exhibit A Tab 25).**

Mr. Kenneth Neel"s Official Personnel File including his medical records will prove Plaintiff received disparate treatment by the FAA. The FAA cannot use the pretext that it cannot produce Mr. Neel's Personnel Records File including his medical records because it does not have Mr. Neel's Social Security Number and Mr. Neel is no longer employed by the FAA and his personnel medical records are at the Record Storage Center located in St. Louis, Missouri. Mr. Neel is still employed by the FAA and is currently working at the Gulf Coast System Management Office located in Houston Texas and the FAA has his complete records file in its possession. **Ref. Exhibit A Tab 25.**

**Ken Bitgood** – (White) sustained a disabling traumatic in the performance of duty. The FAA granted Mr. Bitgood time off Mr. Bitgood did not face retaliatory/ workload increase or arbitrary demand to return to work. Aftfer an entended absence from his Air Traffic Control position, the FAA accommodated Mr. Bitgood in the Gulf Coast (GLF) SMO Airway Facilities organization. Mr. Bitgood's personnel file records can be obtained by contacting the GLF SMO at 281-876-7100 or 281-876-5600; or the

South Region Office at 817-222-5400. **Mr. Bitgood is currently working at the Gulf Coast SMO located at Houston Texas.**

Mr. Phillips submitted a letter dated August 20, advising Appellant that he will be on sick leave during his absence. **(Ref. Exhibit A Tab 5).**

EEO Counselor Marietta Swain had a meeting and EEO counseling with Mr. Phillips on October 27, 1998 on discrimination and reprisal charges raised by Appellant. **(Ref. Exhibit A Tab 1).**

EEO Counselor Marietta Swain contacted Mr. Phillips on January 7, 1999, to schedule a meeting on January 14, 1999.

The very next day after being contacted by the EEO Counselor, on January 8, 1999, Mr. Phillips submit a letter to Appellant responding to Appellant's letter dated December 24, 1998. Mr. Phillips documented Appellant request to be place on sick leave as of January 4, 1999, until such time Appellant is released for duty by his professional health care provider. Mr. Phillips referenced the October 22, 1998 medical report from Dr. Brown. Mr. Phillips referenced Appellant's involved protective activities of less than 2 months (November 1998). Mr. Phillips instructed Appellant to submit medical information from his doctor by close of business January 13, 1999, which gave Appellant less than two days to have the information to him. **(Ref. Exhibit A Tab 14).** Moreover, Mr. Phillips was in training for two week and was not in his office.

Also, Mr. Phillips failed to follow the FAA's own guideline, policy and procedures as well as the U.S. Department of Labor regulation when he denied Plaintiff's sick leave accommodation request, directed him to return to duty and assigned him former employee Elvia Rivera's workload in addition to his own work load without

completing the U.S. Department of Labor Form CA-17 (Duty Status) Side A (Supervisor

Section) and submitting it to Dr. Brown to complete Side B (Physician Section).

Plaintiff's disability traumatic injury claim was pending at the U.S. Department of Labor

when Mr. Phillips submitted his letter dated January 8, 1999, requesting medical

information without submitting a "Duty Status Report" with Side A completed by him as

required by federal regulations. **Subsequently, Plaintiff's disability traumatic injury**

**claim for his August 5, 1998, disability injury sustained in the performance of duty**

**was accepted by the U.S. Department of Labor and Plaintiff is receiving benefits.**

**(Ref. Exhibit A Tab 12)**

January 12, 1999, Dr. Brown submitted a medical report to Mr. Phillips advising

him that Mr. Battle is unable to return to work. **(Ref. Exhibit A Tab 14).**

January 14, 1998, EEO Counselor Marietta Swain had a meeting and EEO

counseling with Jack Phillips regarding Appellant's discrimination and retaliation

charges by Mr. Phillips. **(Ref. Exhibit A Tab 1).**

January 22, 1999, Mr. Phillips submit a letter to Appellant directing him to return

to work. This is just **8 days** after the EEO Counselor had a meeting with Mr. Phillips

regarding Appellant's claims of discrimination and retaliation by Mr. Phillips. Mr.

Phillips went into great detail telling Appellant that he had deducted 252 hours of sick

leave from appellant sick leave balance. Mr. Phillips documented that he had received a

letter dated January 12, 1999, from Dr. Brown advising him that Appellant was unable to

return to work. **As a pretext to hide his discrimination and retaliation against**

**Appellant, Mr. Phillips used the phrase that Appellant absence was causing an**

**additional burden on his colleagues because his work was assigned to them; and the overall work of the office is increasing.** (Ref. Exhibit A Tab 15).

Apparently, AHR Employee Relations Specialist Donald Faulkner prepared the January 22, 1999, letter and Phillips signed the letter. This document was prepared on Donald Faulkner computer, and Donald Faulkner was providing advice and guidance to Mr. Phillips. John Staples Director ARX-1, did not know Mr. Phillips had directed Appellant to return to work. During the February 17, 1999, ARX Program review Appellant met with Mr. Staples as scheduled, Mr. Staples informed Appellant that he was told that Appellant would bring him up to speed on the Configuration Management Program. Mr. Staples asked Appellant how he was doing health wise. Appellant informed Mr. Staples that he should not be at work because he was not able but Mr. Phillips directed him to return to work. This return to work adverse employment action was coordinated among Jack Phillips, Donald Faulkner and Harold Leblanc. **(Ref. Exhibit A Tab 15 Draft GRID initialed by Faulkner, Phillips and Leblanc).**

Mr. Phillips claim assigning Appellant's work assignment to his colleagues during Appellant's absence was causing an addition burden on Appellant's colleagues during a time when the Division work is increasing is **pretextual**. Mr. Phillips allowed ARX-100 Division employees **(Sharon K. Darnell, Maria Madera and Mary F. Foster)** for their person reasons to go on extended leave and extended detail out of the ARX-100 Division prior to Appellant August 5, 1998 disability traumatic injury and during Appellant's disability traumatic injury absence. **(Ref. Exhibit A Tab 17).**

More supporting evidence that Mr. Phillips claim is **pretextual** is FAA responses to interrogatories and request for production of document dated September 22, 2000,

submitted by FAA counsel Sheryl Williams. **(Ref. Exhibit A Tab 19 discovery responses by Sheryl Williams page 5, item 15 Ms. Williams' response).**

Addition supporting evidence that Mr. Phillips claim is **pretextual** is FAA (Legal Counsel Sheryl Williams) refused to provide honesty, forthright, straightforward and factual information as requested by item 16. However, Ms. Williams did admit that **Elvia Rivera** went on a 210 days detail to the southwest Region from approximately March 29, 1998 through the end of October 1998 to RIO SMO in RIO Grande, NM; **Bob Cook** went on a 120 day detail to Flight standard at FAA HQ.; and Stan Grubach went on detail from February 1998 to November 1998 to flight standards FAA HQ. **(Ref. Exhibit A Tab 19 page 6, item 16 of Ms. Williams' response).**

Plaintiff has reported FAA Legal Counselor Sheryl Williams misconduct of intentionally providing false information submitted by Mr. Phillips, Justiniano and others. Also, Ms. William's misconduct and violation of FAA Order 1400.8 section 835 the Role of the FAA Representative in the EEO Complaint process to Ms. Williams on numerous occasions. However, Ms. Williams' superiors have failed to take corrective actions. It is an on-going problem with Sheryl Williams in discriminating, retaliation, trying to terminate employment of force African American employees out of the FAA; and providing false information to EEOC  Law judges and Federal Court when these employee pursue their cases. FAA employees Toloria Odom had problem with ms. Williams. Ms. Williams threaten Ms Odom in her effort to get Ms. Odom to resign from the FAA when she pursued her EEO Complaint.     FAA Legal Counselor Sheryl Williams have been found discriminating and retaliating against another black male (IRA BRUCE MCMILLIAN). EEOC Administrative Judge Rose Marie Rhodes FOUND

Sheryl Williams to be not credible and retaliated against Mr. Mcmillian in retaliation for prior EEO Activities when Mr. Mcmillian was denied a superior contribution increase by Sheryl Williams. **Ref. Exhibit B Tab 25 page 11 line 13-23, Page 17 line 24 thru page 18 line 25;** EEOC Commission Decision dated September 28, 2004, following the FAA March 12, appeal. Page 2 fourth paragraph and page 5 second paragraph.. **NOTE: (Exhibit B Tab 25 contains EEOC law Judge Rose Marie Rhode January 24, 2004, Dicision of Discrimination and Retaliation against Ira McMillian by FAA Civil Rights officer Fanny Rivera and FAA legal Counsel Sheryl Williams and the Commission decision dated September 24, 2004 affirming the Law Judge decision)**

Mr. Phillips, Mr. Faulkner, Mr. Justiniano and Sheryl Williams have submitted statements that plaintiff sustained his disability traumatic injury when received letter from Fanny Rivera Dated August 3, 1998, regarding the FAA noncompliance with his July 1, 1998, settlement agreement. Maybe, those official believe FAA Civil Rights Officer Fanny Rivera action was discriminatory and retaliatory against Plaintiff for engaging in protected activities. EEOC Administrative judge found Ms. Rivera to have discriminated and retaliated against Ira McMillian (African-American male).

Albert Crawford (African-American) Chesapeake SMO located in Leesburg, VA contacted Mr. Phillips for a detail to the ARX-100 Division during Appellant absence. Mr. Crawford and Appellant both have Communication and Navigation training, knowledge, experience and background. Mr. Phillips refused Mr. Crawford's detail request. Mr. Crawford will testify to Mr. Phillips' detail denial action. Subsequently, After Mr. Phillips denied Mr. Crawford a detail to the ARX-100 Division, Mr. Crawford

requested a detail to the ARX-200 Division from Manager Jim Rowlette, Mr. Rowlette

granted Mr. Crawford a detail in the ARX-200 Division.

Mr. Phillips himself is evidence that the ARX-100 Division work was not a

priority for Mr. Phillips and the FAA. Mr. Phillips himself went on an extended detail

during Appellant's absence and never returned to the ARX-100 Division. **(Ref. Exhibit

B Tab 9).** This is exhibit Notification of Personnel Action (SF-50-B) is documentary

material evidence that effective January 2, 2000, Mr. Phillips was detailed out of the

ARX-100 division into an unclassified position. More appalling this mean that effective

January 2, 2000, Mr. Phillips was no longer appellant's supervisor. However, Mr.

Phillips misrepresented himself as appellant supervisor Manager ARX-100 on January 7,

2000, and submitted a letter to appellant proposing to terminate his employment.

Appellant understand that the ARX Management team subsequently transferred

Appellant's FTE position from the ARX-100 Division to the ARS-10 organization.

Mr. Phillips has shown no regards for FAA orders, rules, regulations, procedures,

guidelines and policies and counseling nor has Mr. Phillips shown and regards for other

federal rules regulations orders and policies. <u>During the month of September 1998,

Albert Douglas, Jr. Acting Director ARS-1 counseled Mr. Phillips on ARS and Agency's

policy where Appellant was to be treated equally and fairly in the workplace.</u> **(Ref.

Exhibit A Tab 7, Albert Douglas document dated January 29, 2000).** <u>July 14, 1999,

Jose Justiniano ARX-2 counseled Mr. Phillips on FAA expectations on government

ethics, impact of perceptions structuring and formalizing off-site during government time.

(Ref. Exhibit B Tab 16). NOTE: (Exhibit B Tab 16 contains Jose Justiniano e-mail</u>

**dated July 14- 20, 1999, wherein Mr. Justiniano counseled Mr. Phillips on shooting pool at a local bar on duty, Phillips picture shooting pool and Phillips e-mail.)**

See Mr. Justiniano e-mail dated July 20, 99 11:56 AM wherein Mr. Phillips discussed Phillips involvement in Plaintiff case and how it is affecting his health and his family. Mr. Justiniano recommended EAP. Also, Mr. Justiniano advised Mr. Phillips that he had the agency behind him the FAA team composed of AHR, AGC, AAM and ARD from within. Mr. Justiniano allowed Phillips a detail accommodation for Phillips health, however, Mr. Justiniano was aware that Plaintiff sustained a disability traumatic injury in the performance of duty but would not authorized Plaintiff December 24, 1998, sick leave request accommodation to recover.

On February 16, 1999, Mr. Phillips violated FAA order 1400. 8 Section 810 and FAA Office of Civil Rights Memorandum dated December 31, 1996, when he changed Appellant job assignment (doubled Appellant's workload) without consultation and coordination with the EEO Officer and through the Complaint Service Team (ACR-5) knowing that the EEO Counselor had met with him on October 15, 1998 and January 14, 1999. **(Ref. Exhibit B Tab 17 regarding FAA Order 1400.8 Section 810; and FAA Office of Civil Rights Memorandum dated December 31, 1996.**

The failure and refusal by Mr. Phillips to follow the FAA own binding rules, regulations procedures, guidelines and policies, which were promulgated with the stated purpose of establishing procedures to follows when an employee has engaged in protective activities, is evidence of pretext and discrimination. As set forth above, the record shows overwhelming evidence of Mr. Phillips departure from the FAA own procedures.

Courts have held that variance from an agency's standard operating procedures may be found to be "evidence of discrimination." <u>Johnson v. Lehman</u>, 679 F.2d 918, 922 (D.C. Cir. 1982) (stating that variance from hiring procedures is a factor a jury may consider in assessing discrimination). Since government regulations are binding upon the FAA deviation therefrom cannot be 'legitimate." The rules and regulations adopted by an administrative agency cannot be waived, suspended or ignored while such remain in force. <u>U.S. ex rel Accardi v. Shaughnessy</u>, 347 U.S. 260, 74 S. Ct. 449, 98 L.Ed. 681 (1954). Courts have held on numerous occasions that an agency is <u>bound</u> by it own regulations.

As the court stated in <u>United States v. Heffner</u>, 420 F.2d 809 (4th Cir. 1970);

An agency of the government must scrupulously observe rules, regulations or procedures which it has established. When it fails to do so, its actions cannot stand and the courts will strike it down. <u>Ed., at 811</u>.

Likewise in <u>Milburn v. West</u>, 854 F. Supp 1 (D.D.C. 1994), the employer repeatedly failed to abide by its own policies and procedures. It deviated from its "promote from within" policy, and engaged in improper reliance on numerical ranking to judge the applicants who were competing for promotion. Here, as in <u>Milburn</u>, the employer (FAA) deviated from its required coordination with the Office of civil rights procedures when Mr. Phillips changed Appellant's work assignment.

<u>The Configuration Management program assignment is a full workload</u>. Mr. Phillips submitted an affidavit to EEO Investigator Cynthia R. Daren dated March 8, 2004, sworn on oath executed under the penalty of perjury. Mr. Phillips was asked **Statement No. 8.** What workload was assigned to the complainant? Please explain why

this workload was assigned to the complainant versus another employee. **Was this a large assignment?** Did the complainant oppose the assignment when you discussed it with him? **(Ref. Exhibit A Tab 24, page 3 of 4).**

**Mr. Phillips Response:** According to a previous statement that is before me, that is not signed by me, I discussed a Configuration Management program with him. He was selected for this assignment because of his capabilities and experience. I felt he would be good at this program. **It was a permanent assignment, not short term. It was a regular program.** He had other assignments as well. No absolutely not. **Ref. Exhibit A Tab 24, page 3 of 4)**

The Configuration Management Program workload assignment Mr. Phillips assigned to appellant on February 16, 1999, was not a simple temporary assignment to a less desirable task as claimed by Defendant on page 9 of Defendant's memorandum in support of Defendant's motion to dismiss. Mr. Phillips' affidavit dated March 8, 2004, disputes defendant's statements. More than **6 years** has passed and now **Defendant** is attempting to **alter Mr. Phillips April 1999, statement that he doubled Appellant's workload** because his organization went from 15 employees to 8 employees. **(Ref. Exhibits A Tab 16).**

Also, more than **1 ½ years** and now **Defendant** is trying to **alter Mr. Phillips' March 8, 2004, statement** he submitted in his affidavit that Configuration Management is a regular program and was a permanent assignment and not short term. **(Ref. Exhibit A Tab 16).**

The FAA was aware that Appellant's sustained a disability traumatic injury in the performance of duty on August 5, 1998, and regarded Appellant as an individual with a

disability effective August 5, 1998. **(Ref. Exhibit B Tab 10 Standard Form 3112B**

**Disability Application Mr. Justiniano's Supervisor's statements submitted to OPM**

**dated April 6, 2000).** However, Mr. Justiniano and the FAA cannot produce a

performance appraisal wherein Appellant was rated less than fully successfully in any

critical job element. Mr. Justiniano and the FAA cannot produce any record wherein

appellant was counseled on his performance. Mr. Justiniano did not attach a performance

appraisal.

More appalling according to SF 3112B, which is an official government record

submitted to OPM, Mr. Justiniano and the FAA was aware as of **August 5, 1998**, that

**Appellant was physical inability to perform,** however, the FAA directed Appellant to

return to work on **February 16, 1999**, over Appellant doctor advice and assigned

Appellant a former employer workload in addition to his own workload. Mr. Justiniano

information in SF 3112B was used by OPM and OPM informed the FAA that Appellant

is a person with a disability.

Mr. Justiniano submitted an official government record to the U.S. Department of

Labor dated October 7, 1999, stating that Appellant's supervisor had not raised and issues

with Appellant's performance and Appellant return to work on February 16, 1999, and

did not experience any conflict; and in fact Appellant received positive recognition for a

project he had contributed to prior to his absence. (Absence was due to disability

traumatic injury sustained on August 5, 1998). Mr. Justiniano goes on and provided false

information regarding the discussion he had with Appellant the morning of August 5,

1998. Mr. Justiniano submitted this document to the U.S. Department of Labor to

dismiss Appellant traumatic injury claim. **(Ref. Exhibit B Tab 14 with attached statements dated October 7, 1999, signed by Jose Justiniano).**

Mr. Phillips submitted a memo during October 1999, to the U.S. Department of Labor, stating prior to August 5, 1998, he observed no sign of distress or lack of concentration in Appellant's performance. Mr. Phillips spoke of appellant return to work on February 16 and 17 1999, and how graciously his peers accepted him back and on February 17 Appellant was presented an award. Phillips mentioned no deficiency in Appellant performance prior to his August 5, 1998 disability injury or after Appellant's August 5, 1998, disability injury. **(Ref. Exhibit B Tab 14 with attached statements from Mr. Phillips).**

**Based on information Mr. Justiniano and Mr. Phillips submitted to the U.S. Department of Labor contradicts the information Mr. Justiniano submitted to OPM and vice-versa.** Also, this mean that Appellant could perform the essential function of his position because he accomplished it on February 16 and 17, 1999, which was after his disability injury. Mr. Justiniano lacks the courage and moral ethics value to admit he and Mr. Phillips made misstates and Mr. Phillips was wrong in denying plaintiff's December 24, 1998, sick leave accommodation request and Phillips directed Plaintiff to return to duty on February 16, 1999, and doubled Plaintiff's workload, which severely harmed Plaintiff's known medical condition. Therefore, Mr. Justiniano has reverted to lying and providing misleading statements to cover up his and Mr. Phillips' discrimination and retaliation against Plaintiff including terminating Plaintiff's employment.

Jack Phillips gave testimony on October 30, 2000. **(Ref. Exhibit B Tab 12).** Pages 1-4 are introductory. Pages 7-9 establish Mr. Phillips' background and training (he

states he has no training in medicine or mental health or law), and set forth Mr. Phillips assessment of the duties of Plaintiff's position at the relevant time.  At page 8, line 20 to page 9, line 6, Mr. Phillips testifies that he believes Plaintiff's work performance was "fine" on the last day plaintiff worked prior to the date of the incident, states that he had no problems with Plaintiff's work performance "whatsoever", and stated that Plaintiff was not a hostile or aggressive in any way toward him.

These above reference passages are relevant to establish certain parts of Plaintiff's *prima facie* case with respect to his disability claim, namely, that (1) Plaintiff was a "qualified" person with a disability because his supervisor admitted that Plaintiff could and did perform the essentials functions of his position, and (2) that Plaintiff was not a direct threat.  Because the Agency refuses to acknowledge that Plaintiff was able to perform the essential functions of his position on the relevant date, Mr. Phillips' testimony contradicts agency's current position on this matter, thus generating an inference that the Agency's assertion that Plaintiff could not perform the essential functions of his position is not worthy credence.

Pages 11-13 establish that Mr. Phillips had specific knowledge that Plaintiff named him as an alleged discriminating official shortly before the alleged discriminatory incident in question in this case.  In those pages, Mr. Phillips testifies that he first acquired knowledge of Mr. Plaintiff's EEO activity (in general) in June 1998.  Mr. Phillips also testified that after learning that Mr. Battle named him as an alleged discriminating official, he met with EEO counselor in "October or November 1998." (Page 11, lines 9-17).  This testimony establishes Mr. Phillips specific knowledge of Plaintiff's EEO complaints against him.  Moreover, the temporal nexus between the EEO

Late October 1998, interview and the adverse actions that Mr. Phillips took against Plaintiff in mid-February 1999, incident at issue here is proof of pretext.

Phillips' deposition dated October 30, 2000, pages 26-31, Mr. Phillips testifies that Plaintiff left work on August 5, 1998, (page 26, lines 11-12), that Mr. Phillips understood from Plaintiff's psychologist that Plaintiff left work due to his anxiety condition, (p. 26 line 11 – page 27, line 170, that he first learned that Plaintiff was unable to return to work on September 17, 1998, (p. 28, line 12); that in October 1998, he learned that Plaintiff suffered from Generalized Anxiety disorder (p. 30, line 1 to line 190; and that he did not dispute that diagnosis (p. 29 line 20 to p. 30, line 21). Mr. Phillips' testimony establishes that the Agency had known of and knowledge the nature of Plaintiff's disabling condition prior to the February 16-17, 1999 event; and it choose to take actions with respect to Plaintiff that would spike his already heightened anxiety levels.

Page 34 establishes that by January 8, 1999, Mr. Phillips knew that plaintiff had not been released from Dr. Brown's treatments for his condition. Despite this knowledge of Plaintiff's Anxiety disorder, Mr. Phillips chose to dump work, or a workload on Plaintiff, so that Plaintiff would have to complete it in addition to his own.

Page 36, line 11 to page 37, line 9 establish Mr. Phillips credibility problem also establish Mr. Phillips' pretext. (Page 37, line 6-9) Mr. Phillips testifies **"Now it January 8. I have heard nothing from Larry.** I received nothing more". Mr. Phillips documented in his letter dated January 8, 1999, that Plaintiff letter dated December 24, 1998, Plaintiff requested to be placed on sick leave as of January 4, 1999, until such time that he is released for duty by his professional care provider. Mr. Phillips documented

that he assumed Plaintiff was referring to his psychologist, Dick brown, Ph.D. **Ref Exhibit A Tab 13, page 1).** By Mr. Phillips own admission in his January 8 1999, letter establish that he heard from plaintiff in writing on December 24, 1998, requesting sick leave accommodation, **which establish that Mr. Phillips lied in his deposition testimony Exhibit B Tab 12, page 37 line 6-11).**

Page 43 line 19 to page 49, line 3, establishes that Mr. Phillips had no reason to doubt Dr. Brown's diagnosis and Mr. Phillips was knowledgeable that Plaintiff was unable to return to work; and Mr. Phillips had no medical evidence that he received from another source to dispute Dr. Brown medical information.

Phillips' deposition dated October 30, 2000, page 57 through 59 establish that Mr. Phillips set the February 16, 1999, return date for Plaintiff, and upon that return, Plaintiff's work performance was "fine." See page 58, line 21, to page 59, line 1. **Again, this is relevant to establish that the Agency found that Plaintiff's performance in his position was adequate, despite his disability.** It is relevant to establish that Plaintiff is a qualified person with a disability, and because the Agency refuses to acknowledge that plaintiff was able to perform the essentials functions of his position on the relevant date, it contradicts the position that the Agency has taken on this issue for this specific date in question.

Also, Mr. Phillips testimony wherein he established that Plaintiff's work performance was fine when he returned to work on February 16, 1999, **(Ref. Exhibit A Tab 12 page 58, line 21 to page 59 line 1)** contradicts the Agency information Mr. Justiniano documented in Standard Form 3112B and submitted to OPM and Plaintiff wherein Mr. Justiniano documented that Plaintiff was physical inability to perform as of

41

<u>August 5, 1998</u>. **(Ref. Exhibit B Tab 10, Section B Information about employee's performance)**. The Agency is intentionally providing false information to harm plaintiff. If the information provided will deny plaintiff a benefit the Agency will submit information that Plaintiff's work performance was fine prior to and on February 16 and 17, 1999, **See Exhibits B Tab 14 Faulkner letter dated October 20, 1999 with attached Mr. Justiniano and Mr. Phillips statements submitted to the U.S. Department of Labor)**. If the information will deny plaintiff a benefit the Agency will submit information that Plaintiff's work performance was unacceptable and Plaintiff was physical inability to perform effective August 5, 1998. **(Ref. Exhibit B Tab 10 , 3112B form Mr. Justiniano submitted to OPM)**. <u>The Agency intentional submitted false information to harm Plaintiff.</u>

Mr. Phillips deposition dated October 30, 1999, Page 87, line 14 through page 88, line 1, establish Mr. Phillips ADA/Rehabilitation Act requirement. **"Plaintiff has to be physically abused in a position and that under the environment plaintiff was working in was totally unacceptable or that Plaintiff was personally harassed by people working where he was working."** <u>**Ref. Exhibit B Tab 12.**</u>

The court shall take into consideration the followings critical facts: (i) the FAA had decided to terminate Appellant's employment as early as 1998. (ii) Appellant sustained a disability traumatic injury in the performance of duty on August 5, 1998. (iii) To settle EEO discrimination complaints claims raised by Appellant the FAA had to pay out a large sum of money and increase Appellant pay to the top step level of FG-14 and correct his performance appraisal, which the FAA falsified. (iv) <u>**Settlement action 1998.**</u> (v) Christine Comer testified as a <u>**FACTS**</u> witness for the FAA in the GFT Hearing No.

42

00-HR-04 on May 11, 2000. (vi) **Ms. Comer testified that she became involved in the**
**case as it relates to Appellant medical condition, the Agency's response to that,**
**ultimately the decision to remove in 1998.** (Ref. Exhibit B Tab 8 page 49 lines 16-
18). (vii) Subsequently, February 2000, the FAA terminated Appellant employment.

Mr. Jose Justiniano knew Mr. Phillips was not Appellant supervisor on January 7,
2000, however Mr. Justiniano acted on Mr. Phillips January 7, 2000, proposal and
terminated Appellant employment. **This is a personnel procedure violation.** This
procedure violation was brought to the court attention in C.A. No. 01-2213 (JR). This
procedure violation was brought to FAA attention by Arbitrator Dr. McKissick decision
dated September 18, 2000, in the GFT hearing. This is a issue that the Arbitrator and
Panel used to reach its decision that Appellant was subjected to unfair treatment by the
FAA.

May 20, 1999, Appellant Counsel (Charles Frederick Chester) on Appellant's
behalf advised James H. Washington, director Air Traffic System Requirements Service,
ARS-1 of Appellant's disability and requested and ADA accommodation. Also, in
support of the ADA accommodation request Counsel Chester attached to his May 20,
1999, letter a medical report dated May 19, 1999, from Dick Brown, Ph.D. Licensed
Psychologist, which identifies appellant major life activities and degree of impairments.
**(Ref. Exhibit B Tab 18).**

May 26, 1999, after receiving Counsel Chester's ADA accommodation request,
Mr. Washington responded to Appellant's letter dated April 2, 1999, regarding the status
of his transfer request. Mr. Washington informed Appellant that Mr. Phillips is the

appropriate management official to consider whatever options he might present to resolve his employment concerns. **Ref Exhibit B Tab 19.**

May 28, 1999, Plaintiff submitted a letter to Mr. Phillips with attached letter from Attorney Charles Chester dated May 20, 1999 to James Washington and Mr. Washington letter dated May 26, to Plaintiff. Plaintiff provided Mr. Phillips with the complete pakage submitted to Mr. Washington. He advised Mr. Phillips that Mr. Washington stated that Mr. Phillips was the appropriate person to resolve his employment matters. **Ref. Exhibit B Tab 20.**

Mr. Phillips submitted a letter dated June 4, 1999, to Plaintiff's attorney Charles Chester responding to Attorney Chester letter dated may 20, 1999, to Mr. James Washington. Mr. Phillips documented that he had reviewed Dr. Brown's letter dated May 19, 1999, which Dr. Brown documented Plaintiff's major life activities and their impairments. Mr. Phillips directed Attorney Charles Chester to submit all medical/psychological records/information used by Dr. Brown in reaching his conclusion regarding plaintiff, including , but not limited to, the Forensic psychological evaluation and multiple data sources referred to by Dr. Brown in his May 19, 1999,letter to Attorney Charles Chester. Mr. Phillips documented the medical question for response. **Ref. Exhibit B Tab 21.**

June 10, 1999, as directed by Mr. Phillips, Attorney Chester provided all the medical records Dr. Brown used to come to his conclusion that Plaintiff sustained a disability traumatic injury in the performance of duty on August 5, 1998, including test raw score and including all notes, and former co-workers of Plaintiff interviews. The medical evaluations and reports including the Mental Health Treatment plain and May

19, 1999, medical reports submitted by Dr. Brown clearly documents Plaintiff is a

qualified individual under the ADA Rehabilitation Act. The ADA Rehabilitation Act

medical information was provided to the FAA, although Mr. Phillips never requested this

type of medical information in his September 11, 1998, January 12, 1999, or June 4,

1999, medical information requests.

Appellant reported Mr. Phillips waste, fraud, and abuse misconduct (shooting

pool, consuming alcohol beverages and smoking cigar) at a local bar while on duty in his

October 1998, EEO discrimination complaint; and to FAA administrator Jane f. Garvey.

Plaintiff submitted Mr. Phillips picture shooting pool and Phillips e-mail message to

validate his claim. **Ref. Exhibit B Tab 16 Phillips picture shooting pool on the clock**

**during duty hour at a local bar.**

Defendant's motion to dismiss or alternatively summary judgment means no

regards for facts supported by documentary material evidence submitted by Appellant; no

discovery information including deposition from Jack Phillips, Jose Justiniano, John

Staples, Jim Washington, Donald Faulkner, Sheryl Williams and other Federal Aviation

Administration (FAA) officials; no trial, no details on what happens; and no witnesses

testifying before the court on how the FAA treated them when they sustained a disability

traumatic injury in the performance of duty or came down with an illness.

Form CA-1 documents the place where Appellant's August 5, 1998, disability

traumatic injury occurred: Federal Aviation Administration (FAA), Nassif Building;

Cause of injury: Emotional stress disorder casual related to the frustration and

aggravation in trying to get the Federal Aviation Administration to fulfill its legal

obligation contained in the July 1, 1998, resolution settlement, which was binding on the

45

FAA; Nature of injury: work stress resulting in physical and psychological symptoms. The July 1, 1998, settlement resulted from FAA officials going into Mr. Battle OPF and falsifying his performance appraisal covering the period from July 1, 1994 through March 31, 1995. (This is gross misconduct and a criminal offense falsifying an official government record). This is the type of FAA officials gross misconduct reference by Dr. Brown. The U.S. Department of Labor confirmed the falsification and advised the Federal Aviation. Acting supervisor wrote a statement that she completed my performance appraisal and rated me higher than fully acceptable. Also, 2 HRM personnel specialists wrote a statement that the date was changed using whiteout. Acting supervisor Kim Taylor stood by her rating.

Mr. Battle filed two EEO Complaints in the above reference matter. One EEO complaint was on FAA officials falsifying his performance appraisal and issuing the appraisal in violation of FAA order 3500.7 and other issues. The second complaint was on Mr. Battle appraisal rating lower than what Ms. Kim Taylor recorded and other issues. In it attempt to cover up its numerous discriminatory and retaliation actions against Mr. Battle the FAA list one issue from each complaint for resolution. The settlement agreement signed July 1, 1998, only resolved one issue from each complaint. Department Office of civil Rights Officer (Clem Monge) informed me that he had advised the FAA Civil Rights Office that the two EEO complaint was not resolved in the July 1, 1998, Settlement agreement, only one issue from each complaint was resolved. Therefore, the two EEO complaints were still active because each complaint had from 4 to 5 issues each.

After receiving this information from DOCR, FAA Office of Civil Right, ACR-5 (Harnetta Williams) tried to trick me into writing a statement that the July 1, 1998, settlement resolved the two complaints completely. Harnetta Williams informed me that DOCR had been in touch with her office and informed her that I had to sign a statement that all the issues were resolved for both EEO complaints in the July 1, 1998, resolution agreement.

I called DOCR (Clem Monge) and informed him of the information I received from Harieta Williams. Mr. Monge informed me that the information given to me by Harietta Williams was not true. He informed me that DOCR had informed the FAA Office of Civil Rights that the July 1, 1998, resolution only settled one issued from each complaint, therefore the two complaints are still active.

Appellant completed Federal employee's notice of traumatic injury and claim for continuation of pay/compensation (Form CA-1). Item 15a., was checked by appellant which state: "Continuation of regular pay (COP) not to exceed 45 days and compensation for wage loss if **DISABILITY** for work continues beyond 45 days."

It must be noted that Acting Manager ARX-100 (Lauren Grace) authorized Mr. Battle sick leave on August 5, 1998, beginning at 9:00am. Mr. Phillips has never talked with Mr. Battle to gather facts on what happened on the morning of August 5, 1998. Mr. Phillips was on leave on August 5, 1998. Mr. Battle visited Gail Feagan (profession health care provider) on August 6, 1998, Ms. Feagaan signed the SF-71 leave slip on August 6, 1998 and Mr. Battle submitted it to the FAA after August 6, 1998. <u>Mr. Battle did not turn in a leave slip the morning of August, 1998, and walk off the job without notice as alleged by Defendant.</u>

Appellant submitted the CA-1 form to his supervisor Jack Phillips. Mr. Phillips completed the official supervisor report. Item 19, documented regular work hours from 7:am to 5:30 pm; Item 20, Mr. Phillips documented regular work week **ALTERNATE WORKSCHEDULE**; item 22, Mr. Phillips documented that he received the Form CA-1 on September 1, 1998. Mr. Phillips completed the supervisory portion of the CA-1 form, Item 35, Mr. Philips checked **YES** the employing agency controvert continuation of pay.

September 4, 1998, Mr. Phillips signed his signature ton the Form CA-1 stating I certify that the information given above **AND THAT FURNISHED BY THE EMPLOYEE ON THE REVERSE OF THIS FORM** is **TRUE** to the best of my knowledge. Mr. Phillips did not document an exception. Also, this official government record signed by Mr. Phillips states "A supervisor who knowingly certifies to any false statement, misrepresentation, concealment of fact, etc., in respect to this claim may also be subjected to appropriate felony criminal prosecution. This is a genuine issue for trial.

After completing the Form CA-1 and signing it certifying that the information given above **AND THAT FURNISHED BY THE EMPLOYEE ON THE REVERSE OF THIS FORM;** Mr. Phillips goes back and cross out his statements and write **SEE ATTACHED.** Mr. Phillips attached his supplemental information for official supervisor's report regarding a traumatic injury claim with request for continuation of pay. Supervisor response to question 27, Mr. Phillips write the alleged injury occurred off the employing agency's premises and Mr. Battle was not engaged in official "off premises" duties. item 34, Mr. Phillips documents "Mr. Battle has been on sick leave since the day of his alleged illness. In supervisor's response to question 35, Mr. Phillips

state the alleged injury occurred off the employing agency's premises and Mr. Battle was not engaged in official "off premises' duties. <u>This is a genuine issue for trial</u>.

Phillips attached this supplemental information page to my Form CA-1, intentional providing false information stating that Mr. Battle alleged injury occurred off the employing agency's premises and Mr. Battle was not engaged in official "off premises" duties. Form CA-1 item 9, Mr. Battle documented the place where injury occurred: Federal Aviation Administration, Nassif Building, Washington, D.C. 20590. Mr. Phillips signed the Form CA-1 on September 4, 1998, certifying that the information furnished by Mr. Battle in item 9, is true to the best of his knowledge. <u>This is a genuine issue for trial</u>.

The Form CA-1 information item 37, and the supplemental information for official supervisor report regarding Mr. Battle's traumatic injury claim are **<u>DOCUMENTARY MATERIAL EVIDENCE</u>** that Mr. Phillips knowingly provided false statements, misrepresentation, concealment of facts, etc in respect to Mr. Battle's claim per his statements documented on Form CA-1, which may be subjected to appropriate **<u>felony criminal prosecution</u> OR** Mr. Phillips intentional submitted false information in his supplemental information for official supervisor's report regarding Mr. Battle's traumatic injury claim. <u>This is a genuine issue for trial</u>.

Mr. Phillips (FAA) submitted the Form CA-1 with attached false information documented in a supplemental information for official supervisor's report regarding Mr. Battle's August 5, 1998, disability injury to the FAA Human Resources Management Office. The FAA HRM Office Employee relations specialist attached a cover letter to the document and stated "Mr. Battle is alleging that one incident occurred on August 5, 1998

and another occurred on September 3, 1998. The Agency is controverting both claims including continuation of COP (COP)." This is a genuine issue for trial.

In according with the Department of Labor regulations, the COP was controverted because the injury occurred off the employing agency's premises and the employee was not involved in official "off premises duties"." This is item (d) in the list of nine (9) valid reasons to controvert the payment of COP. Thus the overall claims fail to meet at least one of the conditions for coverage under FECA, specifically that the Agency does not think the employee was in the performance of duty when the alleged injuries occurred. This cover letter was dated September 10, 1998, and attached to Mr. Battle Traumatic injury claims and submitted to the U.S. department of Labor. This false information that Mr. Battle injury occurred off the employing agency's premises and Mr. Battle was not engaged in official "off premises' duties, which is item (d) in the list of nine valid reasons to controvert the payment of COP; per the U.S. Department of Labor Regulation forbids the agency from granting Mr. Battle 45 days of COP. This means that the U.S. Department of labor has to accept Mr. Battle From CA-1 traumatic disability injury sustained on August 5 and September 3 1998, before the FAA can provide him 45 days COP. Also, this means that Mr. Battle could not submit a Form CA-7 for disability compensation wages for being disabled beyond 45 days. This is a genuine issue for trial.

On about September 11, 1998, Mr. Battle submitted a letter to Mr. Phillips informing him of his harassing telephone calls to his home on August 28, September 3 and September 11, 1998. He also, CC; to Acting ARS-1, director Albert Douglas. Mr. Douglas Counseled Jack Phillips 1st level supervisor, Jose Justiniano 2nd level supervisor

and John Staples 3rd level supervisor on treating Mr. Battle fairly in the workplace and on Agency's policies on treating Mr. Battle fairly.

September 17, 1998, Dr. Brown Fax to Mr. Phillips a medical report of Mr. Battle's medical condition. In that medical document, Dr. Brown informed Mr. Phillips that Mr. Battle can return to work when his stress adequately subsides. Mr. Phillips directed Mr. Battle to return to work absence of any medical information from a professional health care provider that Mr. Battle's stress had adequately subsided.

Mr. Battle appealed the US. Department of labor denial decision of December 8, 1998. in December 1998, Mr. Battle's attorney appealed the previous denial decision of November 1998. December 1998, the U.S. Department of Labor combined both the August 5 and September 3, 1998, disability traumatic injury claims under case file number 25-0530406. Subsequently, June 23, 2000,

The U.S. Department of Labor submitted a notice to the Federal Aviation Administration and advised the Federal Aviation Administration, "Information provided supports that the above-named employee (Lawerence Battle) is a federal employee who sustained a disabling traumatic injury in the performance of duty. You should continue the employee's regular pay for the period of disability not to exceed 45 days. The agency's controversion was not sustained because the claimant has factually demonstrated that the case is acceptable on its merit. The U.S. Department of Labor advised the Federal Aviation Administration that August 5, 1998 is the date of Mr. Battle's disabling injury. This is a genuine issue for trial.

As you recall During August and September 1998, Mr. Battle filed claims for workers compensation for traumatic injury suffered on the job, his claim was accepted by

the U.S. Department of Labor. **To date the Federal Aviation Administration has not provided Mr. Battle his 45 days COP. To date the FAA has not corrected Mr. Battle's time and attendance records per his AWS and provided the paperwork for him to buy back 431 hours of annual leave and approximately 2600 hours of sick leave.** This is a genuine issue for trial.

**NOTE:** Christine Comer FAA Manager Employee Relations and Benefits testified as a facts witness for the FAA on May 11, 2000, at the GFT hearing. As a facts witness this means her whole testimony was based on facts. She testified "I then became involved in this case as it relates to his (Mr. Battle's) medical condition, the Agency's response to that, **ultimately the decision to remove in 1998."** Several occasions over the period. Ref. No. 00-HR-04 Page 49 lines 16-19. Based upon facts presented by the FAA, the FAA had made a decision to terminate Mr. Battle's employment as early as the fall of 1998. This is a genuine issue for trial.

Mr. Battle file an EEO complaint on this matter the FAA (Sheryl Williams) informed EEOC that these issues are the same issues raised in a complaint in civil Action number 01-2213 (JR) and is pending in Federal court. Therefore they must be dismissed in the administrative complaint matter. EEOC dismissed the issues based on information provided by the FAA. Mr. Battle never got the opportunity to raise these unresolved issues in civil action number 01-2213 (JR).

On or about December 15, 1998, Mr. Battle contacted an EEO counselor and reported Mr. Phillips continuously discrimination and reprisal against him after learning Mr. Phillips had falsified his time and attendance records as well as **submitted a time and attendance record to payroll indicating that Mr. Battle was not at work during**

any portion of August 5, 1998 (this compliment Phillips and the FAA'S false statement "injury occurred off the employing agency's premises and the employee was not involved in official "off premises" duties); and reporting Mr. Battle's time and attendance starting PP #19 different from Mr. Battle's management approved AWS and different than Mr. Phillips reported to the U.S. Department of Labor on CA-1 items 19 and 20.   This is a genuine issue for trial.

On about December 15, 1998, Mr. Battle reported Mr. Phillips misconduct to Mr. Phillips' supervisor (Jose Justiniano) and informed Mr. Justiniano about his intention to file an EEO complaint against Mr. Phillips if his discriminatory and retaliation.  Mr. Justiniano attempted to persuade me not to file the EEO complaint against Mr. Phillips. Mr. Justiniano advised me that Mr. Phillips was doing what FAA legal (AGC) and HR told him to do; and the EEO complaint should name AGC and HR as the officials. **Presumable Mr. Justiniano was referring to Sheryl Williams (AGC) and Don Faulkner (HR) those individual was giving Mr. Phillips advice and guidance.**

(Mr. Battle had previous engaged in protective activity on October 15, 1998, regarding Mr. Phillips discrimination and reprisal against him).  In connection with Mr. Battle's traumatic injury claim, on December 24, 1998, Mr. Battle wrote to Mr. Phillips advising him not to change any of Mr. Battle's time and attendance records and requested him to wait for a "final decision and guidance from the Department of Labor.  In Mr. Battle December 24, 1998, letter to Mr. Phillips, he also, request to be placed on **sick leave accommodation** as of January 4, 1999, until he was released for duty by his professional health care provider.  This is a genuine issue for trial.

On December 24, 1998, Mr. Phillips was put on notice of Mr. Battle's need for sick leave accommodation. On February 22, 1999, Mr. Phillips was put on notice of Mr. Battle need for a reasonable accommodation transfer. **NOTE:** Mr. Phillips' ADA reasonable accommodation is different for the U.S. Equal Employment Opportunity Commission Enforcement Guidance reasonable accommodation under the Americans with disabilities Act. Mr. Phillips qualification-Probably be specific that Mr. Battle was physically abused in a position, I would imagine, and that the –I would assume that under the environment he was working in totally unacceptable or that he was personally harassed by people working where he was working. None of these things happened under my watch. **(Ref. Exhibit B Tab 12 page 87 line 14 thru page 88 line)** EEOC No. 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X October 30, 2000, deposition of Jack Phillips at page 87 line 17 to page 88 line 1. This is a genuine issue for trial.

Phillips deposition testimony dated October 30, 2000, regarding Dr. Brown's January 12, 1999, letter regarding Mr. Battle medical condition and Mr. Battle was unable to return to duty, Mr. Phillips testified that he had no reason to doubt Dr. Brown's diagnosis. And did not have any medical evidence from some other source to dispute Dr. Brown's diagnosis. He testified that in Dr. Brown's letter dated January 12, 1999, to him Dr. Brown says "At this time Mr. Battle is unable to return to duty because of his anxiety and of course, his prognosis remains good but continue treatment." Mr. Phillips was also, asked the question—So far as you were concerned, based on your understanding of this letter, what was Mr. Battle's ability or capacity to return to work on January 4? Phillips Answer—According to this here, it says "He is unable to return to duty because of his anxiety." Ref. page 44 line 4 thru page 45 line 4. This is a genuine issue for trial.

54

Dr. Barton Pakull (FAA Chief Psychiatrist) testified as an expert witness for the FAA on June 27, 2000, he testified that no one ever asked him to review any medical information regarding Mr. Battle prior to June 1999. Dr. Pakull was asked: Do you recall when you first became involved in the case involving appellant? Phillips answer: Yes. It was June –or probably early June of 1999, a year ago. Ref. Case No. 00-HR-04, June 27, 2000, Vol. 3. page 554 line 4 thru 7. On direct examination by FAA (Donald Faulkner) Dr. Pakull was asked Question: Did you find Dr. Brown's medical documentation, or the documentation that was submitted to you, to be conclusively or nonspecific. Dr. Pakull Answer: Well, let's put it this way. I have a choice when I review medical documentation from the outside, either I agree with it or I don't. If I don't agree with it or if I feel it's inadequate, then I would ask for more information or, you, know, would disagree and say we need more information or another evaluation. Since I agreed, there was nothing that needed to be done since I agreed with them. Ref. page 600 lines 9-21. On direct by Donald Faulkner, Dr. Pakull was asked Question: Was there any discussion about having another medical officer actually evaluate Mr. Battle at any point? Dr. Pakull Answer: Well, there came a time when you **(Donald Faulkner)** wanted him evaluated for other reasons, but that was separate. Ref. page 600 lines 14-22. **It must be noted that Donald Faulkner was trying to obtain medical information to submit to the U.S. Department of Labor to convince DOL to deny Mr. Battle' August 5, 1998, disability traumatic claim.** <u>This is a genuine issue for trial.</u>

June 27, 2000, Cross –examination by Mr. Battle Attorney Madonna McGwin , Dr. Pakull testified that initial he became aware of Mr. Battle's circumstances and were requested – that management had requested his assistance in June of 1999. He testified

that he was asked to look at whether sick leave was justified and it's his impression the request came from Jack Phillips. Dr. Pakull testified that after his review of the medical record he found sick leave to be appropriate and justified. Ref. page 635 line 8 thru page 636 line 22. This is a genuine issue for trial.

Dr. Pakull testified that prior to June 27, 1999, no one ever asked him whether Mr. Battle was a qualified person with a disability under the ADA or Rehabilitation Act. Dr. Pakull testified that no one ever ask him whether a transfer for Mr. Battle would be a reasonable accommodation under the ADA or Rehabilitation Act. Ref. page 637 line 11-2000. This is a genuine issue for trial.

Dr. Pakull also, testified on June 27, 2000, that Mr. Battle was not in a safety related position. On cross examination by Mr. Battle attorney (Madonna McGwin) Dr Pakull was asked Question: And just to clarify a point, is there a distinction in the FAA between safety-related position and other positions? Dr. Pakull Answer: Certainly, great distinctions. He was asked Question: Are safety-related position, is that element in a person's job description, that it's a safety-related position/ Dr. Pakull Answer: Yes, but also it relates to the fact whether you need medical qualification to do your job. He was asked Question: Was Mr. Battle in a safety-related position that you can remember. Dr. Pakull Answer: Not to my mind when I made that consideration. It would have been more serious and I would have brought it up much earlier if he had been. Ref. Case No. 00-HR- 04 Vol. 3 page 667 lines 7-22. This is a genuine issue for trial.

Dr Brian Schulman (FAA hired Psychiatrist) testified as an expert witness for the FAA on June 26, 2000, Dr. Schulman testified that Mr. Battle's for accommodation had

56

been pending since February 1999. Ref. No 00-HR-04 Vol. 2 page 380 lines 9-17. <u>This is a genuine issue for trial</u>.

Dr. Schulman testified that the reintroduction to the workplace on February 16 and 17, 1999, **caused a severe reoccurrence of Mr. Battle's condition.** He testified that he understand the condition under which Mr. Battle became reintroduced to the work. He testified that Mr. Battle contended that he was not medically able. He had been sent a letter that he had to return to work, and Mr. Battle contended that he needed to continue on medical leave of absence. He testified that he believe the medical leave was supported by Dr. Brown. Ref. page 411 line 10-22. <u>This is a genuine issue for trial</u>.

Dr. Brian Schulman was given a copy of Dr. Brown's February 22, 1999, Mental Health Treatment Plan pertaining to Mr. Battle that Dr. Brown Submitted to Mr. Phillips, which Mr. Phillips or some other FAA official submitted to Dr. Schulman labeled as Exhibit 11. Dr. Schulman was asked to look at page 2of exhibit 11. He was asked question: can you tell the panel what major life activities are mentioned in or under the description of symptoms exhibit 11? Dr. Schulman' Answer: "the relationship with his family, his spouse, social friends, social interaction in activities, maintaining relationship, central functions, general expressiveness.' Dr. Schulman describes major life activities in the second paragraph as discuss his occupational problems, disinterest in his work, diminished concentration, conflict with supervisors, excessive preoccupation with his work. Dr. Schulman described the third paragraph functioning in class, performing assignments as academic dysfunction major life activities. <u>**Functioning in class and performing assignment deals with learning**</u>. Ref. page 412 line1-22. <u>This is a genuine issue for trial</u>.

57

On direct examination be Donald Faulkner, Dr. Schulman was given Exhibit 11, Dr. Brown's Mental health Treatment Plan pertaining to Mr. Battle, Mr. Faulkner directed Dr. Schulman to the section under description of symptoms, the second paragraph says there is a severe impairment. Donald Faulkner asked the Question: What's your definition of severity? You just mentioned it in a moment ago. Dr. Schulman's Answer: Yes. Severe impairment is an impairment that is –a severe impairment would affect all or most all occupational functioning and social functioning. Severity in this context, the framework that I am using derived from the American Medical Association Guide for Evaluation, fourth edition. Let me backtrack. The AMA has published physicians and myself are trained to use those guidelines and are certified by the independence Medical Examiners based upon our familiarity with the guides and our understanding of how the guides are used. And more and more, the guides have become the standard by which assessments are made. Now, under Mental and behavioral Disorders of that book, which is summarized in chapter 14, they rate classes of mental impairment. And for mild impairment is an impairment that's compatible with most but not all functions. A moderate impairment is some, but not all. And so a severe impairment is if the impairment would interfere with most levels of functioning. That's the way it's defined. If I may go on with this. This is a document that I reviewed. If the impairment is severe it is by definition unaccommodatable? An accommodation, impairment would be mild, perhaps moderate impairment. Ref. 348 line 13 to page 350 line 8. <u>This is a genuine issue for trial</u>.

Dr. Schulman was asked the Question; were you given a list of available vacant position to assess whether you thought Mr. Battle could function in those other positions? Dr. Schulman answer: No. Ref. page 410 lines 18-22. <u>This is a genuine issue for trial</u>.

Dr. Schulman was asked the question: What do you know about the FAA as far as operations, operational functions? Dr. Schulman Answer: I believe the FAA has a supervisory authority over air travel in the united States, and its' my understanding that is an **<u>extremely safety sensitive occupation and responsibility.</u>** This is an extraordinarily tight run government organization where there is **<u>no margin for error.</u>** There is no tolerable margin for error. So the threshold for functioning in this environment is very high. And this is my understanding of the nature of this type of work and **<u>played a role</u> <u>in my determination of fitness in this.</u>** And this is not like sending somebody back to work as an accountant or as a salesman in a store or selling cars where there is no potential risk. The FAA has majority responsibility for the running of the air transportation system, both national and international as it pertains to the United States. So I regard **every position in the FAA as being an extremely safety-sensitive job, either direct or indirectly.** Ref. page 413 line 9 thru page 414 line 10. <u>This is a genuine issue for trial</u>.

Dr. Schulman was asked the question: And where did you get that impression from that –that sense from? Dr Schulman answer: That's my understanding. It not my impression. That's what I believe based upon my education, training, and reading over many years that I've been alive in my understanding of what this agency does and what its charge is and what its responsibility is. Dr. Schulman was asked the question: Can you show me where in Mr. Battle's position description that you had for Mr. Battle where

the **safety issue is specifically addressed as a management and program analyst**?

Ref. page 414 line 19-21.Schulman's answer: I didn't – I can't find that right now. He's

a GS-14 level. It is my thorough understanding that this is a safety-relevant position,

safety-sensitive position for which one must be a hundred percent competent to perform

their duty. I cannot imagine that somebody with a duty as a program analyst. And

frankly, I don't have to read the position description and find the sentence where it says

that. That is my basis assumption, and that is the basis upon which I made my opinion

that this is an inherently safety-sensitive organization, in that it took me 15 minutes to get

into the building, past security. So let's figure it out. How safety sensitive this

organization is and how the hurtle is, how high the hurtle is raised for every personnel,

certainly personnel at a Gs-14 level. Dr. Schulman was asked the Question: Do you

think getting into the building has something to do with air safety? Dr. Schulman

answer: Yes, I do so. Dr. Schulman was asked the question: Did you read the position

description prior to talking to Mr. Battle? Dr. Schulman answer: Yes; Ref page 415 line

18 thru page 417 line 1. This is a genuine issue for trial.

  Mr. Battle was not in an **extremely safety- sensitive position** as assumed by Dr.

Brian Schulman. Mr. Battle was in a non-safety related position. None of the series 343

position at the FAA is safety related positions. Ref. DOT 3910.1C Appendix Page 5 for

all safety related position in the Federal Aviation Administration. Note: there are no 343

series documented. Mr. Jose Justiniano terminated Mr. Battle's employment based on

incorrect assumptions made by Dr. Brian Schulman. This discrepancy has been brought

to the FAA officials (Jose Justiniano, John Staples, Sheryl Williams, Jim Washington,

Jim Hevelone, Jane Garvey, Monte Belger, Jim Whitlow, Donald Faulkner, Christine

comer, Candice Cavanagh, Fanny Rivera and Glenda Tate)attention on numerous. All
FAA officials have ignored this reported discrepancy and failed to take appropriate
corrective actions. This is a genuine issue for trial.

On or about January 6, 1999, EEO Counselor Marietta Swain contacted Mr.
Phillips to schedule EEO Counseling with him regarding Mr. Battle's reported
discrimination and reprisal. Two days after Mr. Phillips was contacted by the EEO
Counselor, January 8, 1999, Mr. Phillips responded to Mr. Battle's December 24, 1998
letter, Mr. Phillips advised Mr. Battle that he knew the claim had been "denied" and that
he had received no indication from the U.S. Department that [Mr. Battle] requested a
hearing, reconsideration, or an appeal board review of this matter," so Mr. Phillips
intended to "amend" his time and attendance records. Mr. Phillips also, cited Dr.
Brown's October 22, 1998, letter indicating that Mr. Battle's "prognosis is good provided
the work environment related to ongoing legal difficulties stabilizes. Based upon
information from Don Faulkner about confidential settlement in some, but not all, of Mr.
Battle's legal matters, without asking for fitness to return to duty certification, Mr.
Phillips decided that Mr. Battle should be back at work. Mr. Phillips then requested that
Mr. Battle submit "medical information from your doctor specifying the current
diagnosis, prognosis, and risk avoidance value of not returning to duty on either a full or
part time basis as of January 4, 1999. On January 12, 1999, Dr. Brown responded to Mr.
Phillips requests: Dr. Brown reminded Mr. Phillips that he had completed a Forensic
Psychological Evaluation on Mr. Battle (based on Phillips' authorization from September
11, 1998), on November 12, 1998, and submitted it to the U.S. Department of Labor and
the U.S. Department of Labor received it on November 16, 1998. In his evaluation

(which was based on 20 hours of observation and testing analysis) Dr. Brown noted that Mr. Battle suffers from generalized anxiety disorder, casually related to the work environment. Dr. Brown further noted that Mr. Battle was unable to return to duty because of his anxiety, but that his prognosis remained "good, with continued treatment." Dr. Brown told Mr. Phillips that he could not respond to his request regarding information about "risk avoidance value of returning to work" because he was unfamiliar with the phrase." <u>This is a genuine issue for trial.</u>

    **NOTE:**  On January 14, 1999, EEO Counselor met with Jack Phillips completed EEO counseling with him on discrimination and reprisal against Mr. Battle including Mr. Phillips falsifying Mr. Battle's time and attendant records. The EEO Counselor also advised Mr. Phillips of him calling Mr. Battle home on August 28, 1998 harassing Mr. Battle. Mr. Phillips informed the EEO Counselor that he called Mr. Battle on August 28, 1998, to inform him that he was granted 45 days COP and to inform him of the white out on the Form CA-1.

    Also, Mr. Phillips has testified and submitted affidavits executed under the penalty of perjury that he called Mr. Battle's house on **August 28, 1998,** to inform him that he was on COP and to discuss the white out on Form CA-1. Also, Mr. Phillips has testified and documented that he place Mr. Battle on COP at the time he received his Form CA-1 requesting 45 days Cop. We know that this is intentional false information provided by Mr. Phillips based on his own official records because Phillips documented on the Form CA-1 item 22, that he received the Form CA-1 on **September 1, 1998.** Phillips received the form on CA-1 on September 1, 1998, Phillips could not have called Mr. Battle prior to receiving the form on August 28, 1998, to discuss the white-out on the

form and advise him that he was on COP. In addition, we know Mr. Phillips is lying because the supplemental information for official supervisor's report, **Supervisor's Response to Question 34: Mr. Battle has been on sick leave since the day of the alleged injury. As of September 4, 1998, Mr. Management has not received any medical documentation to support this claim or his continued absence**. Moreover, if this is true Phillips should have checked **NO** for question does the employing agency controvert COP on form CA-1, which would have informed the U.S. Department of Labor that Mr. Battle was on COP for 45 days. **Mr. Phillips never told the U.S. Department of Labor nor Mr. Battle that he was granted 45 days COP. Mr. Phillips has a huge credibility problem.** Mr. Phillips call Mr. Battle's home on September 11, 1998, threatening Mr. Battle telling him if he did not have a doctor statement to him or report to duty by September 16, 1998, he was going to change Mr. Battle's sick leave status to AWOL. This is a genuine issue for trial.

In his January 7, 2000, proposed removal letter (which is a personnel procedure violation) because effective January 2, 2000 Phillips was detailed to an unclassified position in the Free flight Organization), Mr. Phillips states that he determined in January 1999, after receiving Dr. Brown's January 12, 1999, letter stating that Mr. Battle was unable to return to duty but had good prognosis, that Mr. Battle "had been absent from duty for six months and [his] absence was having an adverse impact on the efficient administration and accomplishment of workload in the ARX-100 organization." At the same time, Mr. Phillips admits that it was only after he learned that DOL had denied Mr. Battle's traumatic injury claim (which was subsequently appealed), Don Faulkner that he revisited Dr. Brown's letter and found it was insufficient to support Mr. Battle's

continued absence. Because Mr. Phillips (who has no apparently medical/psychiatric credentials) did not agree with Dr. Brown's diagnosis of Generalized Anxiety Disorder, and without asking for more information from Dr. Brown, Mr. Phillips directed Mr. Battle to return to duty on February 16, 1999. Mr. Phillips has subsequently admitted that, without consulting with Mr. Battle, he determined that Mr. Battle's legal difficulties had stabilized. This is a genuine issue for trial.

On January 22, 1999, Mr. Phillips informed Mr. Battle that the phrase "risk avoidance value of returning to work" is "common throughout the federal sector..." and "answer (sic) the question, "How is the employee's medical well being effected by returning to duty." In that letter to Mr. Battle, Mr. Phillips also, wrote that "projects that were assigned to you prior to your departure have been temporarily reassigned to your colleagues causing an additional burden for them at a time that the overall work of the office is increasing." Mr. Phillips did not indicate the nature of the work nor that Mr. Battle's "colleagues" (Elvia Rivera, Sharon K. Darrell, Maria Madera, Stan Grubach, Stephen Norbrew, Mary Foster, Bob Cook and Jack Phillips) were regularly being detailed or transferred out of the ARX unit. This is a genuine issue for trial.

EEO counselor met with Mr. Phillips on January 14, 1999, 8 days later on August 22, 1999, Mr. Phillips submit a letter to Mr. Battle directing him to return to duty over Dr. Brown's advice. It is undisputed that Mr. Battle engaged in protective activities by EEO Counseling Marietta Swain meeting with Mr. Phillips on January 14 1999 and October 15, 1998. It is undisputed that Phillips was aware of Mr. Battle's protective activities. Base on the time period of Mr. Battle's protective activities and Mr. Phillips adverse actions against Mr. Battle give rise to an inference of retaliation. Mr. Phillips has

established a pattern and a paper trail of being contacted and meeting with the EEO counselor regarding his discrimination and reprisal against Mr. Battle; and within days he take adverse actions against Mr. Battle.    This is a genuine issue for trial.

After receiving Mr. Phillips letter dated January 22, 1999, directing him to return to duty on February 16, 1999, Mr. Battle contacted FAA EAP Manager Kimberly Braums for assistance and help. EAP manager Kimberly Braums had talked to Mr. Battle Professional health Care Provide (Dr Brown) she was knowledgeable of Mr. Battle's mental disability (she had reviewed the Forensic Psychological Evaluation Report completed by Dr. Brown on November 12, 1999). EAP Manager Kimberly Braums place a conference call to HRM Employee Relations Specialist Marion Poore, she explained Mr. Battle medical condition of unable to return to duty but his supervisor had directed him to return to duty. Marion Poore informed EAP coordinator and Mr. Battle that since his supervisor had directed him to return to duty, if he did not return his supervisor Had the authority to place him on AWOL for five days, and after five days terminate his employment. This is a genuine issue for trial.

Also, HRM Employee Relation Specialist Marion Poore informed EAP Manager Kimberly Braum that Mr. Battle Dr. has advised Mr. Battle supervisor that Mr. Battle is under his professional care and is unable to return to duty; and should Mr. Battle return to duty as directed by his supervisor (Jack Phillips), if Mr. Battle's medical condition is exacerbated in any manner the supervisor and the Federal Aviation Administration will be accountable. This is a genuine issue for trial.

Mr. Battle returned to work on February 16, 1999, as directed by his supervisor Jack Phillips against Dr. Brown's advice; and without Jack Phillips obtaining medical

information from any doctor advising him that Mr. Battle's stress had adequately subsided. Approximately 10:am Mr. Phillips called Mr. Battle into his office and assigned Mr. Battle former ARX-100 employee Elvia Rivera workload (configuration management) in additional to his own original workload. On February 17, 1999, Mr. Battle suffered a severe resumption of his medical condition confirmed by Dr. Brown on February 22, 1999. Also, Dr. Brian Schulman (consultant hired by the FAA) testified as an expert witness for the FAA that Mr. Battle returned to work on February 16 and 17 1999, caused a severe reoccurrence of his medical condition. This is a genuine issue for trial.

February 17, 1999, Plan and Performance Program Director John Staples had a program review with all ARX personnel, where each employee had to discuss the status of their program. I was scheduled to meet with Mr. Staples at 2:15 pm, I reported as scheduled. Mr. Staples informed me that he was informed that I (Mr. Battle) would bring him up to speed on Configuration Management. I informed Mr. Staples that Jack Phillips assigned me the addition workload on February 16, 1999, and I had it for one day and I had a lot of Configuration Management documents and NCP's I had to catch up on; and that I had no previous training or experience in configuration management.

Next Mr. Staples asked Mr. Battle how he was doing health wise. Mr. Battle informed Mr. Staples that he was still under his doctor care; and was unable to return to work and his doctor had advised Mr. Phillips that he was unable to return to work, however, Mr. Phillips provided him a letter directing him to report to work on February 16, 1999. Mr. Battle informed Mr. Staples that he should not be at work and the only reason he was there was because he and the EAP manager Kimberly Braums was advised

by human resource management Specialist marlin Poore that since Mr. Phillips had directed Mr. Battle to return to work, if Mr. Battle fail to show after 5 days Mr. Phillips had the authority to fire him.

Mr. Staples was unaware that Mr. Phillips had provided Mr. Battle a letter directing him to return to duty over Mr. Battle's doctor professional medical advice. Mr. Staples told Mr. Battle that he wanted him to take care of himself; and he would make sure he is well before returning to work. Mr. Staples asked Mr. Battle did he have a sick leave balance. Mr. Battle informed Mr. Staples that he had approximately 2300 hours of sick leave. Mr. Staples told Mr. Battle to go on sick leave until he is recovered from his illness. Mr. Battle reminded Mr. Staples that Mr. Phillips had directed him to return to duty and denied his sick leave request. Mr. Staples informed Mr. Battle that he would talk to Mr. Phillips and not to worry about his sick leave not being approved because his sick leave will be approved.

Sequentially, after his February 17, 1999, program review meeting with Mr. Staples and learning that Mr. Staples was not aware that Mr. Phillips had directed Mr. Battle to report to work, Mr. Battle provided a private act request to Mr. Phillips requesting all involved individual that was aware and involved in the January 22, 1999, letter directing Mr. Battle to return to duty. Mr. Phillips provided Mr. Battle with a GRID with the organization routing symbol and the initial of the person that this letter was coordinated with. The GRID was initialed by Donald Faulkner, Harold LeBlanc and Jack Phillips only. This means that these three individuals were the only FAA personnel that were aware of Phillips action. Moreover, this document was done on Donald

Faulkner computer.  Apparently Donald Faulkner prepared this letter for Mr. Phillips and Mr. Phillips signed his name to it.

When Mr. Battle's co-workers and peers learner that Mr. Phillips directed Mr. Battle to return to duty although Mr. Battle was not able to return; and Mr. Battle doctor had informed Mr. Phillips that Mr. Battle was unable to return to work, his co-workers and peers were very annoyed and express concerns regarding Mr. Battle's medical condition and well-being.

On July 2, 1998, Mr. Phillips called Mr. Battle to his office.  Mr. Phillips instructed Mr. Battle to discontinue working his regular workload assignment because he had a research project he needed Mr. Battle to do for him.  For more than a month (from July 2, 1998 to the date of Mr. Battle's disability traumatic August 5, 1998) Mr. Battle's regular workload assignment was not done.  Mr. Phillips assigned a research project to Mr. Battle title "How can we best introduce new technology into the National Airspace System (NAS) in the future from a technician perspective." This is a genuine issue for trial.

At the time of Mr. Battle's August 5, 1998, the research project was nowhere near completion.  The research project stopped when Mr. Battle sustained his disability traumatic injury on August 5, 1998.  (This was pretextual by Mr. Phillips to hide his discrimination and retaliation against Mr. battle).  Why didn't Mr. Phillips assign this research project workload of Mr. Battle to Mr. Battle's colleagues? This is a genuine issue for trial.  Mr. Phillips documented in his February 22, 1999, letter to Mr. Battle "Project that were assigned to you prior to your departure have been temporarily

reassigned to your colleagues causing an additional burden for them at a time that the overall work of the office is increasing.  <u>This is a genuine issue for trial.</u>

We know Mr. Phillips is providing false information because the workload project Mr. Phillips assigned to Mr. Battle prior to his August 5, 1998, disability traumatic injury was not reassigned to Mr. Battle's colleagues.  The project ended when Mr. Battle sustained his disability traumatic injury in the performance of duty on August 5, 1998.  Also, this validate Mr. Battle's original workload was not a concern for Mr. Phillips because Mr. Battle's original workload had been vacated (not done) since July 2, 1998.  <u>This is a genuine issue for trial.</u>

More appalling, Mr. Phillips is aware that reassigning an employee workload to the employee colleagues cause an additionally burden on the employee colleagues.  The court must wonder why Mr. Phillips doubled Mr. Battle's workload to cause an additional burden on him.  A rational, reasonable and prudent supervisor would not have doubled Mr. Battle's workload knowing that this would cause an additionally burden on Mr. Battle.  <u>Especially, after being advised by Mr. Battle's doctor (Dr. Brown) that he is unable to, return to work and no Mr. Phillips had no medical information that Mr. Battle's stress had adequately subsided.</u>  However, this is exactly what Mr. Phillips done.  <u>This is a genuine issue for trial.</u>

Mr. Phillips violated FAA order 1400.8 Section 810 on February 16, 1999, when he assigned Mr. Battle former employee Elvia Rivera workload (configuration management) in additional to his original workload.  FAA Order 1400.8 Section 810 require consultation with the EEO Officer prior to any change in job assignment of any employee who has contacted an EEO counselor or who has filed a discrimination

complaint. Also, Mr. Phillips violated FAA memorandum dated December 31, 1996. This memorandum went to all managers reminding them that employee who seek EEO counseling, file an EEO complaint, or, who otherwise participate in the EEO process, are protected by law from retaliation. This memorandum again, reminded managers to consult with the EEO officer prior to any change in job assignment of any employee who are involved in the EEO process. Ref. FAA Order 1400.8 Section 810 and memorandum dated December 31, 1996 from FAA Civil Rights Officer.

Mr. Phillips was aware that Mr. Battle had contacted and EEO counselor prior to him making a change to Mr. Battle's job assignment because the EEO counselor had a meeting with Mr. Phillips on October 15, 1998, and January 14, 1999 regarding Mr. Battle discrimination and retaliation complaint involving Mr. Phillips. Mr. Phillips was aware that Mr. Battle had filed an EEO complaint prior to Mr. Phillips changing Mr. Battle's job assignment because Mr. Battle filed an EEO discrimination complaint on February 4, 1999, naming Mr. Phillips as the alleged discriminating official just 12 days prior to Mr. Phillips assigning Mr. Battle the configuration management workload. Mr. Phillips was aware that Mr. Battle was involved in the EEO process. Furthermore, Mr. Battle had no training, knowledge or experience in configuration management.

Mr. Phillips has shown no regards for FAA rules, regulations, orders, memorandum, counseling, and other federal regulations. Albert Douglas Acting Director Air Traffic System Requirement Service (ARS) counseled Mr. Phillips during September 1998, on treating Mr. Battle fairly in the workplace and on FAA rules, regulations and policies.

Mr. Justiniano counseled Mr. Phillips during July 1999, on his misconduct of shooting pool while on duty on the clock at a local bar in the District of Columbia. During this counseling Mr. Phillips brought up how the LB (Larry Battle) case was affecting his health condition and affecting his family. Mr. Battle had reported Mr. Phillips discrimination and retaliation against him to Mr. Justiniano as early as December 15, 1998. Mr. Battle also reported Mr. Phillips misconduct to other FAA officials as well. July 1998, Mr. Justiniano gave Mr. Phillips a wink and a nod to continue his discrimination and retaliation against Mr. Battle. Mr. Justiniano asked Mr. Phillips how could Mr. Justiniano and Mr. Staple help. Mr. Justiniano also reminded Mr. Phillips that he is not in this along that he has the FAA team composed of AHR, AGC, AAM, and ARS within. Ref e-mail documents authored by Mr. Justiniano dated July 14 and July 20, 1999.

October 1999, Mr. Phillips submitted a "Memo for the record regarding Lawerence Battle's OWCP Appeal for DOL File # 25-0530406" to the U.S. Department of labor, Mr. Phillips state "On the days prior to August 5, 1998, I observed no sign of distress or lack of concentration in Larry Battle's job performance. Larry was working on a research paper for me to present to our new Director Jim Washington. The topic of the paper had Larry interviewing field personnel on new equipment and the training received for it. Larry was able to travel to local field facilities or have TELECONS. I had been reviewing the progress Larry was making on the paper and I was very satisfied." Ref. Phillips' document. <u>This is a genuine issue for trial.</u>

Jack Phillips documented in his letter dated January 7, 2000, "it is clear that your anxiety disorder interfere with your ability to **<u>concentrate</u>** and significantly diminishes

other work-related capacities." Ref. Phillips letter dated January 7, 2000, page 7 2[nd] paragraph. Also, Mr. Phillips testified in his October 30, 2000, deposition that he agree with Mr. Justiniano when asked about Mr. Justiniano's August 14, 2000, interrogatories response where Mr. Justiniano state "I truly believe that the severity of his medical condition" he is referring to Mr. Battle, "as described by three medical doctors involved in this case affected his thinking, perceptions and actions."

The EEOC Enforcement Guidance on the Americans with disabilities Act and Psychiatric Disabilities lists concentration and thinking as major life activities. I am sure Mr. Phillips is knowledgeable that EEOC guidance recognizes concentration and thinking as major life activities because Mr. Philips have quoted EEOC guidance on disability as one who has a physical or mental impairment. Ref. Phillips January 7, 2000, letter pages 4 and 5.

Phillips was asked about Dr. Brown's May 19, 1999, medical report regarding Mr. Battle that attorney Charles Chester attached to his May 26, 1999, letter to Jim Washington requesting ADA reasonable accommodation with an outline of diagnosis, work conditions, impact on disability, reasonable accommodation that will facilitate returning to work and how the reasonable accommodation will ameliorate the condition and work itself, which Mr. Washington forwarded to Jack Phillips for action. Mr. Phillips stated in his deposition on October 30, 2000, that he did not remember reading Dr.

Brown's May 19, 1999 medical report. Ref. page 68 line 7 through page 74 line 21.

In his proposal removal letter dated January 7, 2000, Mr. Phillips cites to his letter dated January 8, 1999, as his request that Mr. Battle return to duty or provide medical documentation specifying why he was unable to return to work on either a full or part time basis.  Dr. Brown provided such information on January 12, 1999.  Although Mr. Phillips now states that "Dr. Brown did not provide a medical rationale as to why [Mr. Battle] could not continue treatment while simultaneously reporting to duty on either a full or part-time basis nor did he provide an anticipated date that [Mr. Battle] would be able to return to duty," the evidence is clear that Mr. Phillips never asked either Dr. Brown or Mr. Battle for such information.  Mr. Phillips also, admits that he directed Mr. Battle to return to work because Mr. Phillips heard that the U.S. Department of Labor denied Mr. Battle's claim.

Mr. Phillips ignorance of psychiatric forensic diagnoses seem to have contributed to his belief that that there was insufficient medical rationale for Dr. Brown's assessment of Mr. Battle's condition.

Mr. Phillips submitted a letter dated June 4, 1999, to Charles Chester (Mr. Battle attorney) as a response to Attorney Charles Chester letter dated May 20, 1999, to Mr. James Washington, Director Air traffic System Requirements service.  Mr. Phillips documented in his June 4, 1999, letter that he had reviewed the letter from Dick Brown, Ph.D. dated May 19.  Also, Mr. Phillips state "Therefore, we are asking for all medical/psychological records/information used by Dr. Brown in reaching his conclusions regarding Mr. Battle, including, but not limited to, the forensic psychological evaluation(s) and multiple data sources referred to by Dr. Brown in his May 19 letter to you.  Ref. Phillips letter dated June 4, 1999, to attorney Charles Chester.

August 18, 1999, 3 months after Mr. Phillips read Dr. Brown's medical report dated May 19, 1999, regarding Mr. Battle's disability and accommodation needed, Mr. Phillips submitted a letter dated August 18, 1999, to Mr. Battle state "In a letter to Mr. Chester dated May 19, 1999, Dr. Brown stipulated that your medical condition is situational related and would continue as long as you stayed in your current job environment in ARX-100. In the conclusion of this letter, Dr. Brown states that you "be able to perform field duties (away from headquarters) unless the "good old boy" network filters down and adversely impacts future job requirements."

January 7, 2000, 8 months after Mr. Phillips read Dr. Brown's medical report dated May 19, 1999, regarding Mr. Battle disability and accommodation, Mr. Phillips submitted a letter dated January 7, 2000, to Mr. Battle wherein, Mr. Phillips documented "In a letter to your attorney, Charles Frederick Chester, Esq., dated May 19, 1999, Dr. Brown stipulated that your medical condition is situational related and would continue as long as you stayed in your current job environment in ARX-100. Ref. Page 4 4[th] paragraph.

Based on documentary material evidence submitted by Mr. Phillips on June 4, 1999, August 18, 1999, and January 7, 2000, confirms that Mr. Phillips lied in his October 30, 2000, deposition when he testified that he did not read Dr. Brown's May 19, 1999, medical report regarding Mr. Battle. **The court must consider Mr. Phillips' credibility issues.**

October 30, 2000, Jack Phillips deposition he was asked about Mr. Battle performance when he returned to work on February 16 and 17, 1999, Mr. Phillips stated Mr. Battle's performance was fine on February 16 and 17, 1999. Ref page57 line 20

through Page 60 line1. Mr. Phillips has stated that Mr. Battle performance was fine prior to his August 5, 1998 disability traumatic injury; and on February 16 and 17, 1999, which is after Mr. Battle's disability traumatic. This confirms that Mr. Battle performed the essential function of his position after his disability traumatic injury.

Mr. Phillips October 30, 2000, deposition, wherein he testified that Mr. Battle's performance was fine on February 16 and 17, 1999, contradicts the officials government record (Standard Form 3112B) information Mr. Justiniano submitted on April 6, 2000, to OPM, wherein Mr. Justiniano advised OPM that Mr. Battle's performance was unacceptable effective August 5, 1998. **The court must consider Mr. Justiniano's credibility issue.**

Mr. Jose Justiniano (Mr. Phillips' supervisor) submitted a document dated October 7, 1999, to the U.S. Department of Labor. Mr. Justiniano state "Mr. Battle testified on how his condition affected his job skills and ability to perform on the job. To the best of my knowledge, Mr. Battle's supervisor had not raised any issues with Mr. Battle's performance. Mr. Battle had been on extended sick leave for many months when he returned to work on February 16, 1999, as I recall, Mr. Battle did not experience any conflict during his brief return to duty. In fact, he received positive recognition during a staff meeting for a project he had contributed to before his long-term absence started. All staff members welcomed Mr. Battle back and were happy to see him. Mr. Justiniano submitted this document to the U.S. Department of Labor in the FAA's attempt to convince the U.S. Department of Labor to deny Mr. Battle's August 5, 1998, disability traumatic injury claim. Nevertheless, the U.S. Department of Labor accepted Mr. Battle traumatic injury claim and notified the FAA that Mr. Battle sustained a disabling

traumatic injury in the performance of duty on August 5, 1998. <u>This is a genuine issue</u>
<u>for trial</u>.

Prior to Mr. Battle's August 5, 1998, disability traumatic injury sustained in the
performance of duty, both Mr. Phillips and Mr. Justiniano praised him for his work
performance. Moreover, after Mr. Battle August 5, 1998, disability traumatic injury, he
was directed to report to duty by Mr. Phillips without any accommodation, Mr. Justiniano
documented in his October 7, 1999, document that Mr. Battle returned to duty on
February 16, 1999, and did not experience any conflict. Neither, Mr. Phillips or Mr.
Justiniano noted any deficiency in Mr. Battle's work performance. Both Mr. Phillips and
Mr. Justiniano confirmed that Mr. Battle was able to perform the duties of his position
after his August 5, 1998, disability traumatic injury because he performed the duties of
his position on February 16 and 17, 1998. Ref. Mr. Justiniano document. <u>This is a</u>
<u>genuine issue for trial</u>.

April 6, 2000, Mr. Justiniano submitted an official government record dated April
6, 2000, to OPM stating Mr. Battle's performance was less than fully successful and Mr.
Battle became physical inability to perform on August 5, 1998. However, Mr. Justiniano
did not identify the critical element(s) of the position which Mr. Battle did not perform
successful or not at all. Mr. Justiniano did not explain the deficiencies he observed. Mr.
Justiniano did not attach supporting performance appraisal as notice to Mr. Battle that
performance is less than fully successful. <u>This is a genuine issue for trial</u>.

Mr. Justiniano submitted false information to the U.S. Department of Labor in his
document dated October 7, 1999, or he submitted false information to OPM on Standard
Form 3112B dated April 6, 2000. **<u>Mr. Justiniano has a credibility problem</u>**. The Court

must determine whether Mr. Justiniano lied to the U.S. Department of Labor or Mr. Justiniano lied to OPM.  This is another genuine issue for trial.

Later, August 14, 2000, Mr. Justiniano provided a response to interrogatories to the agency where he state "I truly believe that the severity of his (Mr. Battle) medical condition, as described by three different doctors involved with this case, affected his thinking, perceptions and actions.  My belief is supported by the DOL's latest decision on one of Mr. Battle's appeals."  Ref. document Mr. Justiniano's August 14, 2000 document. EEOC Enforcement guidance recognizes thinking as a major life activities. This is a genuine issue for trial.

In Mr. Phillips letter dated January 7, 2000, to Mr. Battle Mr. Phillips refer to the two-day period (February 16 and 17, 1999), when Mr. Battle returned to work.  Also, Mr. Phillips submitted this same written statement during October 1999, in the Federal Aviation Administration effort to convince the U.S. Department of Labor to deny Mr. Battle's August 5, 1998, disability injury claim   Mr. Phillips implies that the recognition Mr. Battle received at a staff meeting for his **"positive contributions"** to a project that he worked on prior to his disability leave and a statement that the ARX-100 staff was **"pleased"** to see him back to work, should have miraculously cured Mr. Battle of his mental illness, Mr. Phillips references have no medical basis.  While demonstrating a lay misperception of, and bias against, mental illness, Mr. Phillips inferences have no medical basis.  Also, contrary to Mr. Phillips bias view of Mr. Battle's mental disability, on February 22, 1999, Dr. Brown provided Mr. Phillips with further medical opinion that Mr. Battle's anxiety prevented him from returning to his current position, but opinion that a transfer would allow Mr. Battle to return to work.  Dr. Brown attached a Mental Health

treatment Plan to the letter. (Dr. Brown restricted Mr. Phillips's use of the plan to "for your eyes only" – Mr. Battle learned that Mr. Phillips shared the details of Dr. Brown's Plan with Dr. Brian Schulman and others). Also, Mr. Phillips documented a portion of Dr. Brown's plan word for word in his January 7, 2000, proposed termination letter. <u>This is a genuine issue for trial</u>

Nowhere does Mr. Phillips acknowledge that his actions in forcing Mr. Battle back to work over the advice of Dr. Brown created a very stressful re-entry. To add to that stress, on Mr. Battle first morning back to work 9february 16, 1999), Mr. Phillips requested that Mr. Battle come to his office at 10;am. Mr. Phillips initiated a discussion of the directive that he sent Mr. Battle to return to work, stating that the FAA Office of Civil rights and human Resources management Offices told him to send the January 22, 1999, letter. (The January 22, 1999 letter directing Mr. Battle to return to work was coordinated among Jack Phillips ARX-100, Donald Faulkner AHR-140, and Harold Leblanc ACR-5 only.) Mr. Phillips then informed Mr. Battle that he was to resume his workload as well as that of Ms. Elvia Rivera. Ms Rivera (Hispanic female) and ARX-100 employee, had been released by Mr. Phillips for a detail to the Southwest Region (Albuquerque, New Mexico, SMO) for an extended period of time (8 months), to be with her ailing daughter. Mr. Phillips had previous approved approximately 4 weeks of annual leave for Mr. Rivera prior to the detail so that Ms. Rivera could be with her daughter. Subsequently, Ms. Rivera was picked up for a permanent position in Albuquerque, New Mexico, SMO. Announcing that he would be giving Mr. Battle extra work, especially work from a person who had been detailed as an accommodation for a **"personal**

**situation"** ensured that Mr. Battle would be under considerable stress upon returning to work.  This is a genuine issue for trial.

Mr. Phillips granted Stan Grubach (white male) a nine (9) month detail out of the ARX-100 division.  Mr. Grubach nine months detail absence accommodation from the ARX-100 Division was for a personal situation to advance his career.

Mr. Phillips granted Madera Pilar (Hispanic female) a detail absence accommodation from the ARX-100 Division in excess of 2 years starting approximately March 1999 for a personal situation to advance her career.

When the EEO Counselor met with Mr. Phillips during April 1999, about assigning Mr. Battle Ms. Elvia Rivera workload in addition to his own original workload. Mr. Phillips falsely advised the EEO counselor that the ARX-100 division staff had gone from 15 to 8 employees and the organization workload remained the same is why doubled Mr. Battle workload.  However, Mr. Phillips failed to inform the EEO counselor what employee left the ARX-100 Division and what workload was assigned to the remainder 8 employees. **This is a pretext to hide his discrimination and retaliation against Mr. Battle.**  This is a genuine issue for trial.

Moreover, Mr. Phillips failed to inform the EEO Counselor that he was continuing granting other ARX-100 Division employees extended details prior to, during and after directing Mr. Battle to return to duty over Dr. Brown's advice.  This is a genuine issue for trial.

Mr. Battle was also under considerable stress because he felt that he had been called back to work  - with no effort to determine the reasonableness of his sick leave accommodation and contrary to his medical advice – because he had exercised his right

to file various EEO complaints as a mean of coping with the actions of the FAA management. In particular, Mr. Battle also knew that Mr. Phillips met with an EEO counselor on January 14, 1999, regarding issues raised by Mr. Battle against him in a complaint subsequently filed on February 4, 1999. Mr. Battle was also aware that Mr. Phillips would be meeting with another EEO counselor about issues related to his directive that Mr. Battle return to work (That complaint was subsequently filed on March 6, 1999. This is a genuine issue for trial.

Notwithstanding the growing stress that Mr. Battle was experiencing, Mr. Battle was so afraid that he would lose his job if he did not obey Mr. Phillips' directive that he reported to work on February 16 and 17, 1999. Especially after he and Kimberly Braums (EAP Manager) was informed by HR Specialist Marion Poore, that should Mr. Battle not report as directed by his supervisor, his supervisor has the authority to place him on AWOL for 5 days, then fire him. EAP Manager (Kim Braums) advised Mr. Battle to schedule a meeting With Jim Washington (Director ARS) to get help. Mr. Batle was schedule to meet with Mr. Washington on February 2, 1999, when Mr. Battle arrived for his scheduled meeting Mr. Battle was told Mr. Washington was in a meeting with Air Traffic and could not meet with him. On February 18, 1999, Mr. Battle was not able to come to work and his stress was further raised that day by a call from Tev Hatcher, FAA EEO counselor who informed Mr. Battle that she met with Mr. Phillips earlier that day to discuss the allegations of Mr. Battle's formal complaint and that he denied everything. This is a genuine issue for trial.

Because Mr. Battle was unable to come to work on February 18, 1999, he requested sick leave via Form SF-71 documented work related stress on the form, which

was approved by Mr. Phillips (FAA).  Next Mr. Battle was on his RDO's.  Mr. Battle was

still unable to return to work on February 22, 1999, He requested Family and Medical

Leave for his serious health condition.  Dr. Brown again sent a letter to Mr. Phillips on

February 22, 1999, explaining Mr. Battle's need for medical leave and requested the

accommodation of a different work environment.  In his February 22, 1999,

correspondence, Dr. Brown again provided to Mr. Phillips regarding Mr. Battle's medical

condition.  Dr Brown told Mr. Phillips that Mr. Battle's anxiety continued to prevent him

from "performing his duties at FAA Headquarters."  Dr. Brown noted that Mr. Battle's

prognosis continued to be good "although his recent return to work (February 16 and 17,

1999) was psychologically ill advised and caused a resumption of the anxiety which he

clearly documented in the opinion from the Forensic Psychological Evaluation of

November 12, 1998.'  Dr. Brown noted that Mr. Battle needed more medical leave

because of the work-related stress.  Dr. Brown answered Mr. Phillips re-stated question,

"How is the employee medical well being effected by returning to duty" by stating that

"it is my opinion that [Mr. Battle] will never recover from the workplace induced

disability unless he works in an "operation" sort of position in an environment totally

different than his current situation."  Dr. Brown attached a Mental health Treatment Plan

with the caveat that access to the plan be limited to Mr. Phillips.  This plan document the

duration of treatment 18 months August 2000.  <u>This is a genuine issue for trial.</u>

    The Mental Health treatment Plan under DESCRIPTION OF SYMPTOMS

documents major life activities such as (academic dysfunction (learning) and work and

their degree of impairment (severe impairment in occupational functions).  In the

Forensic Psychological Evaluation Report dated November 12, 1998, Dr. Brown

documented major life activities problems sleeping, not remembering things. Mr. (FAA) Phillips referenced Dr. Browns' May 19, 1999, letter and documented word for word in his January 7, letter major life activities severely impaired in Dr. Brown's document impairment in school **(learning); sleeping; work; concentration; caring for himself; etc.** This is a genuine issue for trial.

It court must compare the Federal regulation qualification for ADA and Mr. Phillips (FAA) qualification for ADA per ADA information that Mr. Phillips gave in a deposition on October 30, 2000, questioned about the ADA qualification. Mr. Phillips was asked QUESTION: What does the doctor have to tell a manager in your position under a case like this (Mr. Battle's case), what does he have to tell you to get that transfer under the ADA? Mr. Phillips ANSWER: probably be specific that Mr. Battle was psychically abused in a position, I would imagine, and that the –I would assume that under the environment he was working in was totally unacceptable or that he was personally harassed by people working where he was working. None of these things happened under my watch. (Ref. EEOC No. 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X October 30, 2000 deposition of Jack Phillips' page 87 line 14 thru page 88 line1). This is a genuine issue for trial.

Mr. Phillips (FAA) qualification is totally different from the U.S. Equal Employment Opportunity Commission Enforcement Guidance Reasonable Accommodation under the Americans with Disabilities Act. This is a genuine issue for trial.

Base on Mr. Phillips (FAA) response to his qualification for Mr. Battle to qualify for reasonable accommodation under the ADA, is documentary material evidence that Mr. Phillips (FAA) is clueless to the EEOC Enforcement Guidance for employee

82

reasonable accommodation under the Americans with Disabilities Act.  This is a genuine issue for trial.

Dr. Brown and Dr. Brian Schulman both have brought to the FAA official's attention major life activities such as (sleeping, learning (Mr. Battle had to withdraw from the University of MD University College March 1999), performing manual tasks (TEST RESULTS WAIS-R PERFORMANCE IQ), caring for himself (difficult getting up in the morning) and work as major life activities of Mr. Battle that are substantially limited.  The FAA has this record in its possession.  In addition, Mr. Phillips has documented major life activities that are substantially impaired regarding Mr. Battle that Dr. Brown listed in his may 19, 1999, letter to attorney Charles Chester.  This is a genuine issue for trial.

Mr. Battle endured an "adverse employment action" (a severe resumption/reoccurrence of his generalized anxiety disorder (mental disorder)) when Jack Phillips directed him to return to duty on February 16, 1999, over Dr. Brown's professional medical advice; and assigned him former employer Elvia Rivera workload (configuration management) in addition to his original workload.  October 22, 1998, Dr. Brown first advised Mr. Phillips of Mr. Battle's generalize anxiety disorder. Ref Phillips letter dated August 18, 1999, 1st page 3 rd par.  Mr. Phillips (FAA) lied to EEO Investigator Robert Medler when asked "Are you aware of Complainant's anxiety disorder.  Mr. Phillips (FAA) denied any knowledge.  Ref. Phillips affidavit dated March 28, 2000, page 3 of 14.  This is a genuine issue for trial.


## REHABILITATION ACT AND RETALIATION CLAIMS

### Letter directing Mr. Battle to return to work

With respect to this issue, Mr. Battle established a *prima facie* case of discrimination and retaliation. Mr. Battle most recently engaged in prior EEO activities when he contacted EEO counselor on October 15, 1998 and December 1998. Phillips became aware of Mr. Battle's EEO contact when FAA EEO Counselor notified him in October 1998 and January 1999 of the complaint filed against him. Ref. EEO counselor Marietta Swain EEO counselor reports. Mr. Battle suffered an adverse action when he was required to return to work on February 16, 1999. Additionally, Mr. Battle's prior EEO activities and adverse action are sufficiently related in time to infer a nexus.

Next, defendant has not and cannot articulate a legitimate, non-discriminatory rationale. Mr. Phillips granted ARX-100 employee Elvia Rivera (Hispanic female) approximately four weeks of annual leave to visit her daughter in Albuquerque, New Mexico; and following her annual leave in March 1999, Mr. Phillips granted her a 8 month detail to the Southwest Region, RIO System management Office (SMO) located in Albuquerque, NM to assist in the care of her daughter who was experiencing serious health complications resulting from a high risk pregnancy as alleged by Mr. Phillips. This documentary material evidence produced by Mr. Battle show a pretext. Ref. supporting documents.

### Mr. Battle's December 24, 1998, sick leave accommodation denied by Mr. Phillips

With respect to this issue, Mr. Battle established a *prima facie* case of discrimination and retaliation. The factors set forth in the letter directing Mr. Battle to return to work above are hereby incorporated by reference and realleged the same as if

set forth verbatim and in its entirely.  Mr. Battle suffered an adverse action when Mr. Phillips denied his December 24, 1998, sick leave accommodation.

June 1999, five months after Mr. Phillips denied Mr. Battle sick leave accommodation request of December 24, 1998, Mr. Phillips decided for the first time to ask FAA Chief Psychiatrist Barton Pakull to review medical information submitted by Dr. Brown regarding Mr. Battle to see if extended sick leave was justified.  Dr. Pakull testified that he reviewed Dr. Brown's medical information and advised Mr. Phillips that he found sick leave to be appropriate and justified.  Ref. GFT Case No. 00 – HR – 04 page 635 line 8 thru page 636 line 22.  Permitting the use of sick leave is a form of reasonable accommodation per EEOC Enforcement Guidance.

<u>Mr. Phillips doubled Mr. Battle workload on February 16 and 17, 1999, caused a severe resumption/reoccurrance of his anxiety disorder</u>

With respect to this issue, Mr. Battle established a *prima facie* case of discrimination and retaliation.

The factors set forth in the letter directing Mr. Battle to return to work above are hereby incorporated by reference and realleged the same as set forth verbatim and in its entirely.  Mr. Battle suffered an adverse action when Mr. Phillips assigned him former ARX-100 Division employee Elvia Rivera workload (configuration management) in addition to his own original workload.

Mr. Phillips granted ARX-100 employee Sharon K. Darnell (white female) a detail effective January 31, 1999, to an unclassified position for 6 months, it was extended for another 6 months.  Mr. Phillips submitted a letter dated January 22, 1999, directing Mr. Battle to return to work at the same time he had granted Ms. Darren a detail

out of the ARX-100 Division. Ref. Personnel Action Standard Form (SF)-50. This confirm that the ARX-100 Division work was not a priority for Mr. Phillips.

Mr. Phillips granted ARX-100 employee Maria Madera (Hispanic female) a year detail out of the ARX-100 Division effective April 25, 1999, to an unclassified position. Ref. SF-50. Ms. Madera detail was extended until the ARX organization was abolished during 2002. Ms. Madera was absence from the ARX-100 Division, more than three years. The ARX-100 Division work was not a priority for Mr. Phillips nor the FAA..

Mr. Phillips granted ARX-100 Stan Grubach a nine months detail out of the ARX-100 Division from March 1998 to November 1998.

The Rehabilitation Act forbids discrimination against a "qualified handicapped person" 45 C.F. R. § 84.4 (a). A "handicapped person" is one "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such impairment, or (iii) is regarded as having such an impairment." Id. At § 84.3(j) (1). "Major life activities" are functions such as sleeping, learning, thinking, concentration, performing manual tasks, caring for oneself, and working. Dr. Brown documented Mr. Battle major life activities that are substantial limited in his medical report dated May 19, 1999 including Mr. Battle's is a qualified individual under the ADA/Rehabilitation Act. Mr. Phillips has quoted Dr. Brown's ADA/Rehabilitation Act finding in his letters dated August 18, 1999, and January 7, 2000.

Diagnosis (DSM – IV) Axis V current GAF-45 should be sufficient medical information to any reasonable person with any knowledge on mental disorder to realize that Mr. Battle is a handicapped person. The FAA regards Mr. Battle as a person with a

disability effective August 5, 1998. Ref. FAA's letter dated October 19, 2004, regarding

Mr. Battle's August 5, 1998 on the job disability injury and his current disability status.

This is a genuine issue for trial.

Defendant is aware that plaintiff has a pending civil action in Civil Action No. 01-

2213 (JR) wherein Plaintiff engaged in protective activities by filing several EEOC

complaints between October 1998 and February 4, 2000 against defendant. Therefore,

some of those protective activities were engaged in by plaintiff just days prior to

defendant adverse action against plaintiff in this civil action case (1:05CV01412), which

is before the court in this matter. Appellant filed one EEOC Complaint on **February 4,**

**1999**, just 12 days prior to defendant's February 16, 1999, adverse employment action.

The close nexus between the protective activity and defendant's adverse action give rise

to an inference of discrimination. This is a genuine issue for trial.

Mr. Battle sustained a disability traumatic injury in the performance of duty on

August 5, 1998. Mr. Phillips (FAA) directed Mr. Battle to report to duty over Mr.

Battle's doctor professional advice; and during the pendency of Mr. Battle disability

traumatic injury claim with the U.S. Department of Labor. Mr. Battle reported to duty on

February 16, 1999, as directed by Mr. Phillips. On February 16, 1999, Mr. Phillips

assigned Mr. Battle former employee Elvia River workload (configuration management

which Mr. Lacks Battle training, knowledge and experience) in addition to Mr. Battle's

original workload. Mr. Battle performed the job assignments on February 16 and 17

1999, which caused a severe resumption/reoccurrance of his anxiety disorder. Dr. Brown

advised Mr. Phillips of Mr. Battle's generalized anxiety disorder on October 17, 1998,

and January 12, 1999. Subsequently, the Department of Labor accepted Mr. Battle's

disability traumatic injury claim and notified the FAA that Mr. Battle sustained a disability injury in the performance of duty on August 5, 1998. Ref. Dr. Brown's letter dated February 22, 1999 to Jack Phillips and Dr. Brian Schulman's deposition given on July 26, 2000.

Mr. Battle's sustained a disability traumatic injury on August 5, 1998, and was still disabled and ill on December 24, 1998, When Mr. Battle requested sick leave accommodation until he was released for duty by his professional health care provided. Mr. Phillips who lacks medical and mental health training, knowledge experience and background denied Mr. Battles' sick leave request; and directed him to report to duty and doubled his jog assignment, which caused an adverse impact on Mr. Battle's medical condition.

February 16, 1999, when Mr. Phillips denied Mr. Battle's sick leave accommodation request Mr. Battle had amassed approximately <u>2300 hours of accrued Sick leave</u>, approximately 370 hours of accrued annual leave and 10 hours time off incentive award leave. **<u>Mr. Battle's accrued leave along should serve as testimony for Mr. Battle's dedication and loyalty to the FAA.</u>**

August 25, 2005, the FAA submitted a letter to Mr. Battle advising Mr. Battle that according to the U.S. Department of Labor's data the FAA has reimbursed the U.S. Department of Labor $329,185.93 for compensation benefits for Mr. Battle's disability traumatic injury sustained on August 5, 1998. Ref. letter dated June 25, 2005, from the FAA.

## RACE CLAIM

Mr. Battle alleges that he was discriminated against base on his race. To establish

a *prima facie* case of discrimination, Mr. Battle must show by a preponderance of the

evidence that (i) he is a member of a protected class; (ii) he suffered an adverse

employment action; (iii) other similarly situated employees from outside his protected

class were not subjected to the adverse employment action. See McDonnel Douglas, 411

U.S. at 802-05 and n. 13; Brown, 199 F.3d at 452. Below, Mr. Battle articulated a list of

similarly situated individuals who are outside of his protective class and were treated

disparately. This list validates Mr. Battle's *prima facie* case of disparately treatment.

The following FAA **Caucasian** employees sustained a disability traumatic injury in the

performance of duty; or, came down with an illness; and the FAA treated them different

than it treated Mr. Battle. The FAA did not direct these Caucasian employee to return to

work over their doctors professional advice; and assign these employees addition work

projects in additional to their original workload during the pendency of their claims with

the U.S. Department of Labor nor did the FAA make any change to their workload

assignment and caused a severe resumption/reoccurrence of their medical condition.

The FAA treated the following FAA Caucasian employees different and more favorable

when they sustained a disability traumatic injury during the performance of duty or came

down with an illness that it treated Mr. Battle when he sustained his disability traumatic

injury in the performance of duty on August 5, 1998. Many of the following Caucasian

employees had no accrue sick lave or annual leave and some were absence from work

more than 15 months. The FAA allowed many on these employees to borrow leave; join

the leave donation program and to go on LWOP:

LeAnn Robbins, Richard Chase, Gary Bradford, Patricia Myers, Harold LeBlanc, Lynn Cunningham, Jay Angles, Gayle Myers, Mary Sands, Michael Pettis, Joyce McIlrath, Linda Cass, Judy Mckoy, Brenda Woods, Barbara Charlazu, Connie Vinck, Lisa Walker, Kimberly Braums, Pike Reynold, Vincent Preston, Can Schnore, Bill Baxter, Cashmer Hefiak, Don Barnes, Bob Marshall, Donald Giles, Bob Marshall, Paul Lauskai, Don Berkowercz, Mickey Heifner, Nick Rodredio, Richard Paxton, Edward Lynch, Anthony Davis, Woody Williams, Tommy Thompson, Phillip Woodruff, Frank Manier, Edward Dougherty, Sam Biddle, Arnold Aquilano, Ken Neel, Ken Bitgood and Yashoba Reddy

If defendant doubt Mr. Battle's above statement supported by employees name, defendant can obtain these employee completed personnel file records which consists of three sections (i) section of normal personnel records SF-50B, Sf-52, SF-171, SF-2808, SF-3112B, health and life insurance, awards and etc.); (ii) section of medical records; and (iii) section of disciplinary actions.

To prove his disparately treatment case Mr. Battle only need one employee outside of his protective class.  Mr. Kenneth Neel (white male, age 48) submitted an Affidavit dated December 1, 2005, which prove Plaintiff received disparately treatment. If that not sufficient evidence, Defendant must provided the complete personnel record files for the below individuals:

Patricia Myers (white female) is outside of Mr. Battle's (African Americans) protective class and came down with an illness.  Ms. Myers came the Washington Headquarters the fall of 1992; she was assigned to the same System Service Management organization as Mr. Battle.  From 1990 to 1994 Ms. Myers came and went as she pleased.

The FAA approved Ms. Myers for Absence Without Leave (A.W.O.L.), FAA approved Leave Without Pay (L.W.O.P.), FAA allowed Ms. Myers to borrow sick leave, and FAA allowed Ms Myers to join the leave donor program. May 1994 Ms. Myers did not have a sick leave balance or annual leave balance. FAA granted Ms. Myers a 5 months absence from May 1994 to October 1994. The FAA did not direct Ms. Myers to return to duty over her professional health care provider. The FAA did not double Ms. Myers workload. The FAA did not cause a severe resumption/reoccurrence of Ms. Myers medical condition. The FAA did not subsequently barred Ms. Myers from entering all Washington Headquarters DOT/FAA buildings. The FAA and defendant have Ms. Myers SSN.

LeAnn Robbins (white female) sustained a disability traumatic injury in the performance of duty. Ms. Robbins disability traumatic injury claims was pending at the U.S. Department of Labor. Ms. Robbins was absence in excess of 15 months. Ms. Robbins did not have accrued sick leave to cover her absence. FAA allowed Ms. Robbins to go on Leave Without Pay (LWOP) until the U.S. Department of Labor accepted her disability traumatic injury claim. The FAA did not direct Ms. Robbins to return to duty over her professional health care provider advice. In sharp contrast Mr. Battle had approximately 2300 hours of accrued sick leave when the FAA directed him to return to work. The FAA did not double Ms. Robbins workload. The FAA did not cause a severe resumption/reoccurrence of Ms. Robbins medical condition. The FAA did not subsequently bar Ms. Robbins entry to all Washington Headquarters DOT/FAA buildings. The FAA and defendant have Ms. Robbins SSN.

Yashoba Reddy (Indian female) sustained a disability traumatic injury in the performance of duty and her disability traumatic injury claim was pending at the U.S. Department of Labor. Ms. Reddy was absence for approximately 24 months. The FAA did not direct Ms. Reddy to return to duty after being absence for 5 months over her professional health care provider. The FAA did not deny Ms. Reddy sick leave. The FAA did not assign Ms. Reddy another employee workload in addition to her own workload. The FAA did not subsequently terminate Ms. Reddy employment with the FAA.

Ms. Reddy is an employee of the Great Lakes Region Office located in Des Plaines, IL. Ms. Reddy is current working in the Logistics organization as a Contracting Officer. She can be reached at 847-294-7297.  Ms. Reddy is a current FAA employee on the FAA payroll, therefore the FAA can obtain her SSN and her complete personnel record file including her medical records by contacting the Great Lakes Region Office Human Resource Management Office or contact Ms. Reddy direct at 847-294-7297.  Ms. Reddy supervisor at the time of her disability traumatic injury is willing to appear in federal court as a witness for Mr. Battle; and tell the court how the FAA treated Ms. Reddy.

Gary Bradford (white male) sustained a disability traumatic injury in the performance of duty; and had his disability traumatic injury claim pending with the U.S. Department of Labor. Mr. Bradford was absence in excess of one year, after one year the FAA notified Mr. Bradford that he could be absence 12 more months if he needed it. The FAA did not direct Mr. Bradford to return to duty over his professional health care provider advice. The FAA did not double Mr. Bradford workload. When Mr. Bradford

92

returned to duty after being absence in excess of a year, Mr. Bradford reported to work at a different work location with a different supervisor with different assigned duties. The FAA did not cause a severe resumption/reoccurrence of Mr. Bradford medical condition. Mr. Battle has Mr. Bradford home address and telephone number; and plan to bring Mr. Bradford in as his witness to testify in court as to how the FAA treated him.

To obtain Mr. Bradford's SSN to procure his personnel records file please contact the Eastern Region Human Resource Management located at Jamaica, NY telephone number 718-553-3130 or Chesapeake SMO located at Leesburg, VA telephone number 703-771-3600 and ask to speak to manager Les James or contact Mr. Battle and he can provide you Mr. Gary Bradford home telephone number and you can speak to Mr. Bradford direct and obtain his SSN.

Richard Chase (white male) sustained a disability traumatic injury in the performance of duty. Mr. Chase and his supervisor Jim Copeland (white male) got into a fist fight at a local bar. Mr. Copeland beat Mr. Chase eye out. Mr. Chase had a disability traumatic injury claim pending with the U.S. Department of Labor and was absence for an extended period of time. The FAA did not direct Mr. Chase to return to duty over his professional health care provider, FAA did not double Mr. Chase's workload. FAA did not cause a severe resumption/reoccurrence of Mr. Chase's medical condition. The FAA did not subsequently bar Mr. Chase entry to all Washington Headquarters DOT/FAA Headquarters buildings.

FAA Civil Rights Officer Fanny Rivera processed Mr. Chase's disability traumatic injury claim with the U.S. Department of Labor. She was a manager in the

Eastern Region personnel office. Ms. Rivera can testify that the FAA treated Mr. Chase different than it treated Mr. Battle.

Also, FAA Legal Counsel Sheryl Williams can testify that she has knowledge on how the FAA treated Mr. Chase. Legal Counsel Sheryl Williams was on the telephone conference witness testimony in <u>civil action number WMN-96-2944</u> when witness Annette Black testified as a witness for Mr. Battle to how the FAA treated Mr. Chase when he sustained his disability traumatic injury due to violent fighting between him and his supervisor (Jim Copeland). Ms. Black testified that African American employees such as Mr. Battle are treated disparately.

<u>Mr. Chase SSN can be obtained by contacting the Eastern Region Office located in Jamaica, NY and speaking to the Human Resource Management Division telephone number 718-553-3130, Airway Facilities Manager, Barry Boshnack at 718-553-3400, Manager Selim Haber at 718-553-3401 and Manager Abigail Moserowitz at 718-553-3420.</u>

Annette Black worked in the Eastern Region Personnel Office located in Jamaica, NY, she will testify as a witness for Mr. Battle regarding how the FAA treated Mr. Chase when he sustained his disability traumatic injury. Ms. Black will testify that the FAA treated Mr. Chase more favorable than it treated Mr. Battle.

Harold LeBlanc (white male) Manager FAA Office of Civil Rights (ACR-5) initiated the letter, concurred with Mr. Phillips to direct Mr. Battle to return to duty. Subsequently, Mr. LeBlanc came down with an illness, Mr. LeBlanc did not have a sick leave balance or annual leave balance. Mr. Leblanc was absence for more than a year. The FAA did not direct mr. LeBlanc to return to duty over his professional health care

provider advice. The FAA did not double Mr. LeBlanc work load. The FAA did not

cause a severe resumption/reoccurrence of Mr. LeBlanc medical condition. The FAA did

not subsequently bar Mr. LeBlanc entry to all Washington Headquarters DOT/FAA

buildings. The FAA sent out a broadcast message requesting employee to donate leave to

Mr. Leblanc. Mr. LeBlanc concurred with Mr. Phillips to direct Mr. Battle to return to

duty and showed no regard for Mr. Battle's disability and illness. If it was in compliance

with the FAA Office of Civil Rights to direct employee to return to duty after being ill for

5 months, The FAA Office of Civil Right and the FAA must explain to the court why Mr.

LeBlanc, Mr. Bradford, Mr. Chase, Ms. Robbins and Ms. Myers was not directed to

return to duty after being absence for 5 months.

  To obtain Harold Leblanc SSN please contact FAA Civil Rights Officer Fanny

Rivera at 202-267-3254.

  Mary Sands (white female) became ill and was absence from work for an

extended period of time. Ms. Sands did not have accrued sick leave to cover her absence.

The FAA allowed Ms. Sands to go on leave without pay and allowed her to stay on the

payroll until she had the time in for retirement. Also, the FAA allowed Ms. Sand to work

from home when it knew Ms. Sands was not doing any work from home due to her

severe medical condition. Defendant can obtain Ms. Sands SSN to obtain her complete

personnel records file including the medical section by contacting the FAA airway

Facilities organization Technical Training Division at 202-267-8280 or Program director

Steven I. Rothschild at 202-267-7133.

  In Sharp contrast, Mr. Battle sustained a disability traumatic injury in the

performance of duty, his disability traumatic claim was pending with the U.S.

Department of Labor. Mr. Battle was ill and disabled; and submitted a letter dated December 24, 1998, to his supervisor requesting sick leave accommodation until he is released for duty by his professional health care provided. Also, Mr. Battle informed Mr. Phillips of the pending claim with the U.S. Department of labor. On December 24, 1998, Mr. Battle had approximately 2300 hours of accrued sick leave. FAA denied Mr. Battle sick leave accommodation. FAA directed Mr. Battle to return to duty over Mr. Battle's doctor's professional advice. FAA doubled Mr. Battle's workload upon his return to duty. Subsequently, FAA barred Mr. Battle entry to all Washington Headquarters DOT/FAA buildings.

Mr. Battle has provided <u>four FAA employees that sustained a disability traumatic injury in the performance of duty and were ill</u>; and has provided information for defendant to obtain these employee <u>complete</u> personnel record file. Also, Mr. Battle has provided <u>three FAA employees that came down with an illness</u>; and has provided information for defendant to obtain these employee <u>complete</u> personnel record file (including medical section). It is inexcusable for defendant not to obtain these personnel records files and provide this information, so the court can see supported by documentary material evidence that the FAA treated these similarly situated employees different and more favorable than it treated Mr. Battle. <u>The FAA did not come back much later and question these employees qualification under the ADA/Rehabilitation Act</u>.

Mr. Battle has four FAA employees who sustained a disability traumatic injury in the performance of duty that are willing to appear in court as a witness for Mr. Battle and testify that the FAA treated them different than the FAA treated Mr. Battle when they sustained their disability traumatic. They were not directed to report to duty during the

pendency of their claim with the U.S. Department of Labor. When they returned they were returned with accommodations.

Albert Crawford (African-American male) will appear in court as a witness for Mr. Battle; and will testify that during Mr. Battle's absence he requested a detail from Jack Phillips (Manager ARX-100 Division) to back fill behind Mr. Battle. Mr. Phillips denied Mr. Crawford a detail into the ARX-100 Division. Subsequently, Mr. Crawford requested a detail from Jim Rowlette (Manager ARX-200 Division) and Mr. Rowlette granted Mr. Crawford a detail into the ARX-200 Division. Mr. Crawford has Navigation and Communication equipment training, knowledge, experience and background as Mr. Battle. Mr. Phillips denial of Mr. Crawford detail to the ARX-100 Division to back fill behind Mr. Battle during Mr. Battle's absence is validation that Mr. Phillips was not concerned about the accomplishment of work in the ARX-100 Division.

The court has documentary material evidence in its possession in this civil action case number 1:05CV01412 (JR) submitted by Mr. Battle that impeaches summary judgment statements submitted by defendant in this case (1:05CV01412 (JR)). Also, the court has in its possession documentary material evidence from civil action case number 01-2213 (JR) provided by plaintiff that impeaches defendant summary judgment statements in this civil action case.

## CONCLUSION

Wherefore, Plaintiff submits that his motion to "deny" Defendant's motion to dismiss be granted; and Plaintiff's motion for summary judgment be granted based on undisputed facts supported by documentary material evidence in Plaintiff's Exhibits A and B. There is no dispute as to either material fact of inference to be drawn from

undisputed facts. Plaintiff believes that there is no genuine issue of material fact and that

he is entitled to prevail as a matter of law. Motion is supported by Plaintiff's Affidavit

and similarly situated FAA employee Kenneth R. Neel's Affidavit and a variety of other

documentary material evidence.

Plaintiff has submitted medical information from Dr. Brown and Dr. Schulman

validating that Mr. Phillips' adverse action against Plaintiff on February 16 and 17, 1999,

exacerbated Plaintiff's known Generalized Anxiety Disorder medical condition. Both Dr.

Brown and Dr. Schulman has found that Mr. Phillips action harmed Plaintiff. Defendant

has not produced any medical information or documentation that disputes Dr. Brown and

Dr. Schulman findings and conclusions.

Plaintiff has submitted several documents of protected activities he engaged in

(EEO Counselors reports, and EEO complaint) filed prior to February 16, 1999, against

Mr. Phillips. One incident the EEO Counselor contacted Mr. Phillips the very next day

Mr. Philips took harmful action against Plaintiff. Plaintiff has submitted several official

documents, which establishes Mr. Phillips' and the Agency's huge credibility issues. Mr.

Phillips established a pattern, the EEO counselor contacts him or Plaintiff files an EEO

complaint against him within days he takes harmful action against Plaintiff. Mr. Phillips

established a pattern of retaliation. Plaintiff has stated a claim that relief can be granted.

Federal Rule of Civil Procedure 56 permits Plaintiff to move for summary judgment.


Respectfully submitted,

Lawerence Battle, Pro Se
6920 100th Avenue
Seabrook, MD 20706
301-731-4268

## CERTIFICATION OF SERVICE

I CERTIFY THAT ON December  _2/_  , 2005, I caused the Plaintiff's motion to

deny defendant's motion for an extension of time and for default judgment to be served

on Defendant by first class mail, addressed as follows:

OLIVER W. MCDANIEL
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C. 20530