# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Lawerence Battle )
)
Plaintiff )
)     Civil Action No: 05-1412 (JR)
v. )
)
Norman Y. Mineta )
Secretary of Transportation )
)
Defendant, )
_____ )

## PLAINTIFF''S RESPONSE MEMORANDUM AND SUPPLEMENTAL MEMORANDUM TO DEFENDANTS REPLY MEMORANDUM AND SUPPLEMENTAL MEMORANDUM, AS A REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Comes now, Lawerence Battle, Pro Se Plaintiff in the above styled matter,

submits this memorandum as a response and supplemental information memorandum in

opposition to Defendant's legal memorandum as a supplemental memorandum, as a reply

in further support of Defendant's motion to dismiss and in opposition to plaintiff's cross-

motion for summary judgment.

Plaintiff sues under the Civil Rights Act of 1964 for race discrimination and

reprisal for engaging in protected activity **(EEOC activities on October 27, 1998,**

**January 14, 1999, and February 4, 1999, naming supervisor Jack Phillips as the**

**alleged discriminating official)** and the Rehabilitation Act o 1973 related to Defendant

denying Plaintiff's sick leave accommodation to continue his recovery related to his

August 5, 1998, disability traumatic injury sustained in the performance of duty over

Plaintiff's professional health care provider (Dick Brown, Ph.D. Licensed Psychologist),

RECEIVED

FEB 2 4 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

professional medical advice and opposition. This case is based on <u>RACE</u>, <u>DISABILITY</u> AND <u>RETALIATION</u>. Also, there were psychological abuse and harassment.

**It is clear that Plaintiff sustained a disability injury on August 5, 1998.** The U.S. Department of Labor advised the FAA that Plaintiff sustained a disability traumatic injury on August 5, 1998. **See Pl's Op. Exhibit A Tab 12.** The FAA did not dispute the U.S. Department of Labor's findings and decision. Dr. Brown documented in his Forensic Psychological Evaluation Report dated November 12, 1998, that Plaintiff sustained a disability injury on August 5, 1998, in the performance of duty. **See attached Exhibit 1 signed on November 12, 1998, by Dr. Brown.** The FAA did not dispute Dr. Brown's findings. The FAA has a copy of The Forensic Psychological evaluation (including FAA Legal Counsel Sheryl Williams). Also, U.S. Department of Justice AUSA Oliver McDaniel has a copy of the November 12, 1998, Forensic Psychological Evaluation Report regarding Plaintiff completed by Dr. Brown. **NOTE: Out of an abundance of caution for the privacy of my confidential medical information in further support of my disability sustained on August 5, 1998, which the FAA was aware of I am submitting a copy of the Forensic Psychological Evaluation Report completed on November 12, 1998, by Dick Brown, Ph.D, Licensed Psychologist. See attached Pl's Exhibit 1.** FAA has not disputed Dr. Brown's findings supported by medical documentation from another doctor. Moreover, Plaintiff second level supervisor Jose Justiniano submitted a disability application regarding Plaintiff to Office of Personnel Management (OPM) advising Plaintiff disability effective August 5, 1998. **See Pl's Op. Exhibit B Tab 10 disability application signed by Jose Justiniano.** OPM reviewed Plaintiff disability application

and medical documents and advised the FAA that Plaintiff has a disability. The FAA did

not dispute OPM findings. Moreover, the FAA never question or even mentioned the

ADA/Rehabilitation Act issue during this complaint, which was filed on May 4, 1999.

It is clear that plaintiff submitted a letter dated December 24, 1998, to his

supervisor Jack Phillips requesting sick leave accommodation effective January 4, 1999,

until such time that he is released for duty by his professional care provided. **See Pl's**

**Op. Exhibit B Tabs 2 and 13 (Phillips letter dated January 8, 1999, pg. 1 last**

**paragraph.**

It is clear that Phillips knew Plaintiff's August 5, 1998, disability traumatic injury

claim was pending at the U.S. Department of Labor based on Plaintiff's letter dated

December 24, 1998, to Phillips. There can be no question that Plaintiff was at home

recovering and receiving treatment related to his August 5, 1998, disability traumatic

injury sustained in the performance of duty. It is clear that Dr. Brown had advised Mr.

Philips that Plaintiff was unable to return to work. It is very clear that Plaintiff sustained

a disability traumatic injury in the performance of duty and Mr. Philips denied Plaintiff's

sick leave accommodation request and directed him to return to work. It is clear that the

FAA do not treat FAA employees outside of Plaintiff's protected class group who

sustained a disability traumatic injury in the performance of duty the same as it treated

Plaintiff. FAA employee Kenneth Neel is outside of Plaintiff's protected class group,

this confirms the FAA treated Plaintiff who RACE is **African-American** different than it

treated Kenneth Neel who RACE is **Caucasian. See Pl's Op. Exhibit A Tab 25 (FAA**

**employee Kenneth Neel's affidavit) . It is clear that the EEOC Enforcement**

**Guidance on ADA/Rehabilitation Act recognizes giving an individual with a**

**disability time off and the use of accrue paid leave or providing additional unpaid**

**leave for treatment or recovery related to a disability as a reasonable**

**accommodation.** The court must recognize that the FAA established it own criterial

outside of the EEOC Guidance on ADA/Rehabilitation Act. **See Pl's Op. Exhibit B Tab**

**12 pg. 87 line 14 thru pg. 88 line 1, FAA qualification "Plaintiff has to be physical**

**abused in a position, under the environment he is working it was totally unaccepted**

**or that he was personally harassed by people working where he was working."**

It is clear that Mr. Phillips had placed Plaintiff on sick leave effective January 4,

1999, and had not questioned the appropriateness or justification of Plaintiff's sick leave

status or his disability. However, on January 7, 1999, he was contacted by EEO

Counselor Marietta Swain to schedule an interview with him regarding Plaintiff reported

being subjected to discrimination and reprisal by Mr. Phillips. It is clear that on January

7, 1999, EEO Counselor Marietta Swain contacted Jack Phillip to schedule and interview

with him regarding his reported discrimination and reprisal against Plaintiff and only **"1**

**day"** after being contacted by EEO Counselor Marietta Swain, on January 8, 1999, Mr.

Phillips composed a letter referencing **"protected activities"** engaged in by Plaintiff

during July and November 1998, and requested medical information from Plaintiff

doctor. Less than **"2 months"** of time had elapsed between the November 1999,

protected activity engaged in by plaintiff and Mr. Phillips' letter dated January 8, 1999,

giving Plaintiff less than 2 days from the time Plaintiff received Phillips letter to schedule

an appointment with his doctor and be evaluated and provide the doctor's medical

document to Mr. Phillips. Phillips letter dated January 8, 1999, is retaliation against

Plaintiff for engaging in protected activity, contacting an EEO Counsel regarding

4

Phillips' discriminating and reprisal.  **See Pl's Op. Exhibit A Tabs 1 Route Slip Page 4**

**G) Summary of Counsel Inquiry and Tab 13.**  It is clear that on January 14, 1999, EEO

Counselor Marietta Swain interviewed Mr. Phillips regarding his discrimination and

reprisal against Plaintiff and only **"8 days"** after EEO Counselor Marietta Swain

interviewed him, Mr. Phillips submitted a letter dated January 22, 1999, directing

Plaintiff to report for work.  Phillips letter dated January 22, 1999, wherein he directed

Plaintiff to return to work over Dr. Brown's professional medical advice and opposition

is retaliation against Plaintiff for being interviewed by EEO Counselor Marietta Swain

regarding Phillips' discrimination and reprisal.  See **Pl's OP. Exhibit A Tab 1 Route**

**Slip Page 4 G) Summary of Counsel Inquiry and Tab 15.**   Also, it is clear that

Defendant has not and "cannot" produced any documentary material evidence of Plaintiff

requesting sick leave accommodation as a claim of reasonable accommodation in Civil

Action No. 01-2213 (JR).  **This is a genuine issue of material fact, which preclude**

**summary judgment in favor of Defendant.**  Defendant does not have a legal argument.

Plaintiff's supervisor (Jack Phillips) who lacks medical and mental health

training, knowledge, experience and background submitted a letter dated January 22,

1999, to Plaintiff directed Plaintiff to return to work on February 16, 1999.  Plaintiff

returned to work on February 16, 1999, as directed by his supervisor.  Upon Plaintiff

return to work as directed, his supervisor assigned him former ARX-100 Division

employee Elvia Rivera workload (Configuration Management) in addition to his original

workload and caused a sever **resumption/reoccurrence** of Plaintiff's anxiety disorder,

which is an adverse employment action.  Plaintiff suffered a loss and was harmed.

**Plaintiff endured an adverse employment action at the hands of his employer the**

**Federal Aviation Administration.** Phillips doubling Plaintiff workload assignment on February 16, 1999, by assigning Plaintiff former ARX-100 employee Elvia Rivera workload (Configuration Management) is retaliation against Plaintiff for engaging in **protected activity** for filing EEO discriminating complaint on February 4, 1999. The increased workload was intentional by Phillips to punish and overwhelm Plaintiff for engaging in **protected activity**. Phillips knew that doubling Plaintiff's workload assignment would cause **"additional burden"** for Plaintiff, especially at a time when Plaintiff had sustained a disability traumatic injury and had not recovered from his disability injury. See **Pl's Op. Exhibit A Tab 15, Phillips letter dated January 22, 1999, page 2.**

Prior to February 16, 1999, the Federal Aviation Administration (Agency) was aware of Plaintiff's August 5, 1998, disability traumatic injury sustained in the performance of duty on August 5, 1998, because plaintiff had completed and submitted his Federal Employee's Notice of Traumatic injury and claim for continuation of Pay/Compensation (Form CA-1) to the Agency and the Agency submitted a cover letter dated September 10, 1998, with Attached form CA-1 to the U.S. Department of Labor. Subsequently, the U.S. Department of Labor accepted Plaintiff's form CA-1 claim and notified the agency that Lawerence Battle sustained a disabling traumatic injury in the performance of duty on August 5, 1998, and plaintiff is entitled to disability benefits.

Prior to February 16, 1999, Agency's officials had in their possession medical documents and report from Dr. Brown dated September 17, 1998, October 22, 1998, November 12, 1998, and January 12, 1999. More alarming, Dr. Brown medical report dated January 12, 1999, he advised the Agency that Lawerence Battle (Plaintiff) was

under his professional care and was unable to return to work. Nevertheless, the Agency directed Plaintiff to return to duty on February 16, 1999, and doubled his workload. **The Agency acted with "deliberate indifference" to plaintiff's medical needs.**

Plaintiff has moved this court for summary judgment based on undisputed facts and supported by documentary material evidence (including an affidavit submitted by similarly situated employee **Kenneth Neel** who sustained a disabling traumatic injury in the performance of duty. **Mr. Neel is outside of Plaintiff protected class group and is much younger than Plaintiff.** This is evidence that proves that the Agency treated plaintiff less favorable than it treats employees outside of his protected class group. Also, this is evidentiary information that plaintiff was subjected to disparate treatment by the Agency. **See Pl's Op. at pgs. 13-15 submitted December 21, 2005. This is a genuine issue of material fact, which preclude summary judgment in favor of Defendant.**

Defendant's Counsel AUSA Oliver McDaniel contacted Plaintiff on January 12, 2006. AUSA McDaniels advised plaintiff that he had completed reviewing Plaintiff's motion to deny defendant motion to dismiss supported by documentary material evidence and Plaintiff's motion for summary judgment based on undisputed facts (99 pages) supported by documentary material evidence in A an B exhibits (two books).

Plaintiff submitted 99 pages of material facts, affidavits from Lawerence Battle and FAA employee Kenneth Neel and exhibits A and B **(See Exhibit A following table of contents Battle's affidavit and Tab 25 Kenneth Neel's affidavit)** setting forth material facts supported by documentary material evidence, which are undisputed by Defendant. **Defendant did not and cannot dispute a single statement of material fact**

**submitted by Plaintiff in his motion for summary judgment dated December 21, 2005.**

Summary Judgment can be granted based on undisputed facts. There is no genuine issue of material fact. Plaintiff is entitled to prevail as a matter of law. Federal Rule of civil procedure 56 permits plaintiff to move for summary judgment. One reason but not the only reason that Plaintiff motion for summary judgment should be granted, is that defendant has not complied with rules of procedure that require a party opposing a motion for summary judgment to set forth specific facts showing that there is a genuine issue for trial, and in this court to file a statement of genuine issue of material fact that Defendant asserts are true. Fed. R. Civ. P. 56(e); LCvR 7(h); See Jackson v. Finnegan, Henderson, Farabow, Garreh & Dunner, 101 F. 3d 145 (D.C. Cir. 1996).

Defendant's submitted false information, concealed facts and misrepresented facts in its reply memorandum and supplemental memorandum in further support of Defendant motion to dismiss and memorandum in opposition to plaintiff Cross-Motion for summary judgment on page 4 mid-page statement. "Again, even assuming *arguendo* that plaintiff's claims are not barred by the preclusion effect of *res judicata*, his claim that he was given additional duties fails to set an actionable adverse employment action. In this Circuit minor changes in work-related duties or opportunities do not constitute actionable injury unless they are accomplished by some other adverse changes in the terms, condition or privileges of employment." **See Def's Reply Op. at pgs. 4-5 submitted January 20, 2006.** NOTE: Defendant has not and "cannot" produced one single document that substantiate Defendant's allegation that the identical claims Plaintiff

submitted in Civil Action No. 05-1412 (JR) are identical claims in Civil Action No. 01-2213

Assigning Plaintiff's former ARX-100 Division employee Elvia Rivera workload (Configuration Management) in addition to his own original workload **is not** simple additional duties and a minor change in work-related duties or opportunities as alleged by defendant in his reply dated January 20, 2006, submitted to this court. The Configuration Management assignment is a program, and was a permanent assignment, not short term. It was a regular program. Defendant's actions on February 16 and 17, 1999, <u>caused a severe resumption/reoccurrence of plaintiff anxiety disorder medical condition</u>. Plaintiff suffered a personal loss and harm to his health regarding a term, condition, or privilege of plaintiff's employment. **See pl's Op. at pgs. 16-18 and pgs. 35-36 and Exhibit B Tab 1 pg. 2 second para.** Defendant should not have the authority to choose between Plaintiff's job and health.

Defendant's motion for summary judgment must be denied because plaintiff has disputed Defendant's memorandum in support of Defendant's motion to dismiss at pgs. 1-12 submitted October 19, 2005 and Defendant's Reply and Supplemental memorandum in further support of defendant's motion to dismiss and memorandum in opposition to plaintiff's cross-motion for summary judgment (including Discussion and Conclusion) submitted January 20, 2006.

PLAINTIFF'S FACTS UNDISPUTED BY DEFENDANT

Defendant discriminated and retaliated against Plaintiff when it denied Plaintiff's sick leave request per plaintiff letter dated December 24, 1998. **See Pl's Op. at pg. 5 and Exhibit A Tab 15 submitted December 21, 2005.**

Defendant discriminated and retaliated against Plaintiff when it directed Plaintiff to return to work on February 16, 1999, over Plaintiff's Professional Health Care Provider, Dick Brown, Ph.D. Licensed Psychologist professional advice and opposition. See Pl's **Op. at pg. 5 and Exhibit A Tabs 14 & 15 submitted December 21, 2005**.

Defendant has not and cannot produce any medical information, which disputes FAA Chief Psychiatrist Barton Pakull's testimony wherein he stated that he reviewed Dr. Brown medical information regarding Plaintiff and found sick leave to be appropriate and justified. See **Pl's Op. at pg 7 submitted December 21, 2005**.

Defendant discriminated and retaliated against Plaintiff when it denied Plaintiff sick leave time off from work to continue his recovery from his August 5, 1998, disability traumatic injury sustained in the performance of duty and directed Plaintiff to return to work on February 16, 1999, without requesting Plaintiff to submit for a second medical opinion and/or obtaining a second medical opinion. **See Pl's Op. at pg. 12 and pgs. 20-21 submitted December 21, 2005**. NOTE: Plaintiff had approximately 2200 hours of accrued sick leave on February 16, 1999. **See Pl's Op. at pg. 7 submitted December 21, 2005**.

Defendant discriminated and retaliated against Plaintiff on February 16, 1999, when it assigned Plaintiff former ARX-100 Division employee Elvia Rivera workload (Configuration Management) in addition to his own original workload. **See Pl's Op. at pg. 2 and Exhibit A Tab 24, Jack Phillips' affidavit dated March 8, 2004 pg 3 of 4 No. 8, wherein Mr. Phillips stated the configuration management assignment program was a permanent assignment, not short term. It was a regular program. He had other assignments as well submitted December 21, 2005**. Doubling

Plaintiff's workload was intentional, premeditated and connected to the FAA plot to force Plaintiff out of the Agency. **See Pl's Exhibit A Tab 22 Jack Phillips' letter dated February 4, 1999, last paragraph "I will schedule a meeting on February 16 to discuss work assignment with you."** The FAA had decided to terminate Plaintiff employment as early as 1998. **See Pl's Exhibit B Tab 8. Christine Comer testimony dated May 11, 2000, page 49, lines 16-18.**

Defendant discriminated and retaliated against Plaintiff when Supervisor Jack Phillips (who lacks medical and mental health training, knowledge, experience and background) reviewed and or failed to proper review Plaintiff medical information submitted by Dr. Brown and determined Dr. Brown medical information was insufficient for plaintiff continued sick leave, only 8 days after his interview with EEO Counselor Marietta Swain on January 14, 1999, regarding Phillips discriminating and retaliation against Plaintiff. NOTE: Mr. Phillips has not and cannot identify a single medical statement or diagnosis recorded by Dr. Brown's medical documents dated September 17, 1998, October 22, 1998, November 12, 1998, and January 12, 1999, which were in the possession of Agency's officials on February 16, 1999.

**Dick Brown, Ph.D. licensed Psychologist** – Is a person trained and educated to perform psychological research, testing and therapy. He is a specialist in psychology, which is the science that deals with mental processes and behavior. Also, psychology is the emotional and behavioral characteristics of an individual, group or activity. **Dick Brown, Ph.D. is a Licensed Psychologist. He is not a therapist as alleged by Defendant.** Therapist – One who specialize in the provision of a particular therapy.

All medical documents and reports authored by Dr. Brown dated September 17, 1998, October 22, 1998, November 12, 1998, and January 12, 1999, writing occurred prior to the Agency's adverse employment actions on February 16 and 17, 1999, which causing a severe resumption/reoccurrence of Plaintiff's known anxiety disorder medical condition. NOTE: Medical report writing by Dr. Brown dated February 22,1999, occurred 5 days after Defendant's adverse employment actions caused a severe resumption/reoccurrence of Plaintiff' anxiety disorder medical condition.

After its adverse employment actions against Plaintiff on February 16 and 17, 1999, which caused a severe resumption/reoccurrence of Plaintiff's anxiety disorder, the Agency granted Plaintiff sick leave on February 18, 1999, based on the same medical information from Dr. Brown from September 17, 1998, to January 12, 1999, which the Agency previously stated was insufficient for plaintiff's continued sick leave.

Dr. Brown performed a medical evaluated on Plaintiff on February 22, 1999, and advised the Agency that Plaintiff's return to work on February 16 and 17, 1999, was psychologically ill advised and caused a resumption of the anxiety which he clearly documented in the opinion from the Forensic Psychological Evaluation of November 12, 1998. See Pl's Op. at pg. 2 and Exhibit A Tab 23 submitted December 21, 2005.

Dr. Brian Schulman (hired consultant by the Agency) testified as an expert witness for the Agency that Plaintiff reintroduction to the workplace on February 16 and 17, 1999, caused a severe reoccurrence of Plaintiff's condition. See Pl's Op. at pg. 2 and Exhibit B Tab 5 submitted December 21, 2005.

Defendant has not and "cannot" produce any medical information, which disputes Dr. Brown's findings and Dr. Schulman's testimony.

12

Dr. Brown conducted extensive clinical interviews, psychological testing (including DSM-IV Diagnosis), collateral interviews, reviewed numerous documents, phone consultation, and multiple sources of data were utilized in arriving at the opinion that plaintiff sustained a psychological or emotional disability injury casually related to workplace stress on August 5, 1998.  Collateral interviews with Plaintiff's co-worker (Loren Kropat) and fellow FAA employee (Chuck Nelms) were conducted to form the basis of finding that Plaintiff sustained a disability injury on August 5, 1998, casually related to the workplace.  **See Pl's. attached Exhibit 1 Forensic Psychological Evaluation completed by Dr. Brown  dated November 12, 1998, pages 5-6**.

Jack Phillips authorized Dr. Brown to examine Plaintiff and administer treatment for his August 5, 1998 disability traumatic injury.  Jack Phillips authorized Dr. Brown to examine plaintiff and determine whether or not Plaintiff sustained a disability injury in the performance of duty on August 5, 1998.  **See Pl's attached Exhibit 2 CA-16 form signed by Jack Phillips.**

Defendant has not and "cannot" produced any medical information stating Plaintiff's stress had adequately subsided on February 16, 1999, and Plaintiff was able to return to work.

Defendant has not produced any medical information stating that plaintiff did not have a disability on February 16, 1999.

Defendant has not and "cannot" produce any documentation authored by an official of the Agency between August 5, 1998, to February 16, 1999, where the Agency raised any issue about plaintiff disability status or his qualification under the

13

ADA/Rehabilitation Act, and to raise this issue approximately 7 years after the fact is pretextual. **See Pl's Op. at pg. 6.**

Defendant regarded Plaintiff as an employee with a disability as of August 5, 1998. Nevertheless Defendant denied Plaintiff sick leave request to recovery from his disability; and directed Plaintiff to return to work on February 16, 1999, and doubled his workload and exacerbated his known disability medical condition. **See Pl's Op. at pg. 4 and Exhibit B Tab 10 disability form SF-3112B submitted to the Office of Personnel Management by second level Supervisor Jose Justiniano.**

Defendant regarded Plaintiff as a "handicapped person" under the Rehabilitation Act with major life activities "concentration and thinking" substantially substantially impaired. **See Pl's Op. at pg 4 and Exhibit B Tab 10 interrogatories response 12 of 31 submitted by second level Supervisor Jose Justiniano and Pl's Op at pgs. 4 and 71-72 and Exhibit B Tab 11 Pg. 7 of supervisor Jack Phillips letter dated January 7, 2000.**

DISCUSSION

Defendant has had numerous opportunity to settle Plaintiff's' claims in this matter prior to reaching this civil action lawsuit. During the administrative process plaintiff presented the FAA a proposal for settlement. FAA Legal Counsel Sheryl William came back with the agency has nothing to offer and have no interest or desire to resolve this matter.

Prior to filing this civil action lawsuit on July 15, 2005, Defendant's Counsel AUSA Oliver McDaniels was contacted regarding settling this claim rather than filing a civil action in this court. The beginning of July 2005, AUSA Oliver McDaniel was on

14

leave. <u>Approximately July 14, 2005, AUSA McDaniels responded with the Agency's</u> <u>answer stated that FAA Legal Counsel Sheryl Williams was not interested in resolving</u> <u>this matter out of court and to file a civil action in court.</u> This answers why Plaintiff filed this action on July 15, 2005, the 90th day following his claimed receipt of the final agency decision the very last day Plaintiff could have advanced his claim, absence unusual circumstances. **See <u>Defendant's footnote at bottom of page 2 in defendant's motion</u>** **<u>to dismiss dated October 19, 2005</u>**.

AUSA Oliver McDaniel contacted Plaintiff on January 12, 2006, regarding an enlargement of time. Again, Plaintiff brought up settling this matter. AUSA McDaniel informed Plaintiff that he had discussed settling this matter with Agency Counsel Sheryl Williams, and Sheryl Williams informed him that the Agency had no desire or interest in settling this claim.

Defendant has not and cannot articulate a legitimate nondiscriminatory reason for exacerbating Plaintiff's known medical disability injury on February 16 and 17, 1999. Defendant has **<u>concealed</u>** from this court pertinent information in his possession that is favorable to Plaintiff. Defendant has <u>intentionally</u> submitted **<u>false</u>** and **<u>misrepresented</u>** facts to this court in his attempt to persuade this court to grant summary judgment favorable to Defendant. **See <u>Pl's Op. at pgs. 15-19 (FAA employee Kim L. Hamilton</u>** **<u>v. Merit System Protection Board, No. 94-3195, United States Court of Appeal,</u>** **<u>Federal Circuit dated January 26, 1996)</u>**. Plaintiff has disputed with documentary material evidence all alleged material facts submitted on October 19, 2005, and January 20, 2006. Moreover, Defendant is very well aware that Defendant has a huge **"<u>credibility</u>"**issue, which is a serious problem. Now, Defendant wants this court to bail

Defendant out of its legal liability predicament responsibility caused by Defendant's discriminatory and retaliatory actions against Plaintiff. **A government lawyer as AUSA Oliver McDaniel should not continue in litigation that is obviously unfair such as Plaintiff's case before this court.**

Defendant submitted false information to this court, misrepresented facts and concealed factual information favorable when he documented in his October 19, 2005, motion to dismiss document page **5 "Significantly, either as a separate count, or as a logical outgrowth of his failure to accommodate claim, Plaintiff further alleged that he was deprived of leave by being forced to return to work on February 16, and 17, 1998 (should be February 16 and 17, 1999) and denied a transfer to a different position as a reasonable accommodation of his claimed disability."** *See Def. Motion to dismiss document page 7 dated October 19, 2005, Defendant submitted to this court.* This is an inaccurate statement and misrepresenting facts by Defendant. Plaintiff has never alleged that he was deprived of leave by being forced to return to work on February 16 and 17 1999.

Plaintiff claim that he was deprived of leave is a valid claim, which has not been rectified of heard by this court. Plaintiff was deprived of leave when his supervisor Jack Phillips ignored Plaintiff management approved Alternate Work Schedule (AWS) of 10 hours per day 4 days per week and place Plaintiff on a regular work week 8 hours per day five days per week in violation of Agency regulation and OWCP regulation. Plaintiff's AWS he received 10 hours of holiday pay every holiday. Jack Phillips placed him on a regular schedule and every holiday plaintiff received 8 hours of holiday pay. **Plaintiff was deprived of 20 hours of holiday pay every year.** See Pl's Exhibit A Tab 24

Phillips affidavit dated March 28, 2000, pages 7 and 8 of 14 wherein Phillips

admitted he charged Plaintiff 72 hours of sick leave every pay period with a holiday

rather than 70 per the AWS. Phillips lied in his affidavit Plaintiff leave was never

restored. When an employee sustains a disability traumatic injury in the performance of

duty as Plaintiff, it is a violation of the U.S. Department of Labor regular regulation to

change the injured employee work schedule. Also, when an employee sustains a

disability traumatic injury in the performance of duty prior to the end of his or her work

shift the remainder of the work shift must be administrative leave per the U.S.

Department of Labor regulation. Plaintiff sustained a disability traumatic injury on

August 5, 1998. His supervisor charged him 8 hours of sick leave rather than following

the federal regulation and granting 8 hours of administrative leave the remainder of shift

as required. **Plaintiff was deprived of 8 hours of sick leave on August 5, 1998.** The

Agency barred Plaintiff from entering his work location and charged him 64 hours of

annual leave. **Plaintiff was deprived of 64 hours of annual leave.** The Agency

awarder Plaintiff one full day (10 hours) off incentive award for his contribution to the

organization. The FAA fired Plaintiff he never received his day off. **Plaintiff was**

**deprived of 10 hours** . Plaintiff sustained a disability traumatic injury in the

performance of duty of August 5, 1998, OWCP accepter plaintiff claim and advised the

FAA that plaintiff is entitled to 45 days continuation of pay. Plaintiff was deprived of his

45 days COP. Moreover, Phillips documented in his letter dated January 22, 1999, that

he amended Plaintiff his time and attendant records and took 252 hours of sick leave

from him. **Plaintiff was deprived of 252 houes of sick leave.** Plaintiff's disability

traumatic injury claim was accepted by the U.S. Department of Labor. The Agency

never amended Plaintiff time and attendant records to restore approximately 2600 hours

of sick leave and 431 hours of annual leave nor submit corrected forms for Plaintiff to

repurchase his leave. **Plaintiff was deprive of approximately 2600 hours of sick leave**

**and 431 hours of annual leave.** This is Plaintiff's deprived of leave claim.

Make no misstate Defendant is aware of the leave Plaintiff was deprived of

because this discussion came up during the July 23, 2004, deposition of Plaintiff

conducted by AUSA Oliver McDaniel, Agency Counsel Sheryl Williams and Manager

Jose Justiniano. Attorney Scott Frison, Jr. represented Plaintiff at the July 23, 2004,

deposition. Also, Plaintiff deprived leave is documented in Plaintiff EEO Complaints

documents. Defendant's statement **"Plaintiff further alleged that he was deprived of**

**leave by being forced to return to work on February 16 and 17, 1999,"** documented

on page 7 of Defendant's October 19, 2005, motion to dismiss document is ludicrous.

Forced to return to work would not require the use of any leave and every pay period

Plaintiff accrued leave would have increase not decreased. Deprived of leave means

taking away of leave. **Trying to get honest, forthright, straightforward and factual**

**information from Defendant is like trying to walk through molasses with ankles**

**shackled.** You are stuck.

Defendant's Counsel AUSA Oliver McDaniel stated on January 12, 2006, that he

had read and reviewed Plaintiff's opposition and A and B Exhibits submitted to this court

dated December 21, 2005, to Defendant motion to dismiss. If this is true, regarding

Plaintiff's statement of material facts Defendant Counsel could have chosen any one page

or all pages of the 99 pages of document wherein Plaintiff clearly documented matter of

facts. Also, if Defendant's Counsel read and reviewed Plaintiff's opposition documents

and A and B Exhibits, he is aware and have in his possession documentary material evidence that validates Defendant concealed from this court information favorable to Plaintiff, and submitted false information to this court and misrepresented facts in Civil Action No. 05-1412 (JR) as well as Civil Action 01-2213 (JR). **See Pl's Op. at Pgs.1-99 and A and B Exhibits submitted to this court by Plaintiff dated December 21, 2005.**

Based on facts supported by documentary material evidence AUSA Oliver McDaniel has in his possession, his conduct appears to **violate** his **ethical** duties as a Government Lawyer and a member of the District of Columbia Bar. As a member of the District of Columbia Bar, AUSA Oliver McDaniel is subject to the District of Columbia code of **professional responsibility**. As such, the following sections of the District of Columbia code of Profession Responsibility apply to Mr. McDaniel.

Under DR-1-102 [§1200.3] Misconduct

A. A lawyer …shall not

5. Engage in conduct that is prejudicial to the administration of justice

CANNON 7

A lawyer should Represent a Client Zealously Within the Bounds of the Law EC-7-14 a government lawyer who has discretionary power relative to litigation should refrain from instituting or continuing litigation that is obviously unfair. A government lawyer not having such discretionary power who believe there is a lack of merit in a controversy submitted to the lawyer should so advise his or her superior and recommend the avoidance of unfair litigation. A government lawyer in a civil action or administrative proceeding has the responsibility to seek justice and to develop a full and fair record, and should not use his or her position or the economic power of the

government to harass parties or to bring about unjust or result. The responsibility of government lawyers with respect to the compulsion of testimony and other information are generally the same as those of public prosecutors.

AUSA Oliver McDaniel is the Lawyer for Norman Y. Mineta, Secretary of Transportation (Defendant) in civil Action No. 05-1412 (JR) filed by Lawerence Battle (Plaintiff). AUSA Oliver McDaniel submitted **false** information to this court; and **misrepresented** facts as well as **concealed** information favorable to Plaintiff in Defendant's documents submitted to this court dated October 19, 2005, and **January 20, 2005**. I believe the Certificate of Service, which AUSA Oliver McDaniel certified as October 20, 2005, should be **January 20, 2006**.

AUSA Oliver McDaniel concealed and failed to inform this court in Defendant's October 19, 2005 and January 20, 2005 motion to dismiss documents that Plaintiff sustained a disability traumatic injury in the performance of duty on August 5, 1998, and Plaintiff was at home recovering from his disability injury is the reason Plaintiff was not at work; and his supervisor Jack Phillips (who lacks medical and mental health training, knowledge, experience and background) directed Plaintiff to return to work over Dr. Brown's professional medical advice and opposition. Plaintiff returned to work on February 16, 1999, as directed by his supervisor and worked February 16 and 17, 1999, and during those two days at work something happened to Plaintiff that exacerbated his known medical condition, which his supervisor Jack Phillips was fully aware of.

AUSA Oliver McDaniel concealed and failed to inform this court in Defendant's motion to dismiss documents that the U.S. Department of Labor informed the FAA that Plaintiff sustained a disability injury in the performance of duty on August 5, 1998, and

Plaintiff is entitled to medical treatment and benefits and Plaintiff is currently receiving benefits due to his August 5, 1998, disability traumatic injury sustained in the performance of duty.

AUSA Oliver McDaniel attached as Exhibit 2 the court decision filed September 2, 2005, wherein the court granted the FAA motion for summary judgment in Civil Action No. 01-2213 (JR) wherein on page 2 the court documented "Mr. Battle claimed he suffered a workplace injury on August 4, 1998, upon receipt of a letter from the head of the FAA office of Civil Rights. He left work the following day after submitting a leave slip that included a request for administrative leave, Def. Ex. 2 Attach."

AUSA Oliver McDaniel failed to advise this court that Defendant had misrepresented facts and submitted inaccurate information to this court; and that Mr. Battle claimed he suffered a workplace injury on **August 5, 1998,** cause of injury: Emotional stress disorder related to the frustration and aggravation in trying to get the FAA to fulfill its legal commitment contained in the July 1, 1998, resolution agreement. He failed to inform this court that the Dr. Brown found and documented the Plaintiff sustained a disability injury on August 5, 1998. **See Pl's Op. Exhibit A Tab 12.** He failed to inform this court that the U.S. Department of Labor found that Plaintiff sustained a disability traumatic on August 5, 1998, in the performance of duty. He failed to inform this court that Defendant submitted false information attributing it to alleging Mr. Battle claims he suffered a workplace injury on August 4, 1998 upon **receipt of a letter from the head of the FAA Office of Civil Rights. See Pl's Exhibit A Lawerence Battle Affidavit dated December 17, 2005, Tabs 3,6,10,12,14 and 23 and Tab 24 Phillips Affidavit Ans. on page 5 of 14.**

Attached Exhibit 2 on page 2 of the court September 2, 2005, the Court writs "much of this letter- writing occurred after Mr. Battle had essentially abandoned his job. Defendant never informed this court that Mr. Battle did not **abandon** his job, and that Mr. Battle had sustained a **disability** traumatic injury in the performance of duty on August 5, 1998, and his supervisor Jack Phillips had submitted a letter to Mr. Battle dated August 20, 1998, advising him that he will be on sick leave during his absence; and Mr. Phillips provided Mr. Battle a letter dated June 29, 1999, advising Mr. Battle that FAA Chief Psychiatrist Barton Pakull had reviewed Dr. Brown medical reports and agreed with Dr. Brown and based on Mr. Battle medical condition he will be on sick leave until he make a decision on his **reasonable accommodation** transfer request and Mr. Battle was on approved sick leave  awaiting Mr. Phillips decision on his reasonable accommodation is why Mr. Battle was away from work.. On June 29, 1999, Mr. Phillips advised Mr. Battle that a decision on his reasonable accommodation would be soon. Mr. Battle made several inquiries on his reasonable accommodation between June 29, 1999 and February 1999. The FAA failed to respond. Finally the FAA responded with a letter dated February 14, 2000, to Mr. Battle's reasonable accommodation request with and adverse employment action terminating his employment. Based, on the **record**, it is clear that Plaintiff followed the guidance and done everything the FAA asked of him between August 5, 1998, and February 20, 1999. Had Plaintiff abandoned his job as alleged by Defendant, there would be a record of counseling, letter of reprimand and disciplinary action for job abandonment. The Federal Aviation Administration Human Resource Policy requires progressive documented disciplinary actions before termination unless an egregious act. Defendant did not produce any documentation of progressive disciplinary

action given to Plaintiff.    There is no record because Plaintiff did not abandon his position.  Plaintiff was on approved leave by the FAA from August 5, 1998 to February 20, 1999, except for two days (February 16-17, 1999), when the FAA subjected Plaintiff to **disparate** treatment by directing him to return to work and exacerbated Plaintiff's known medical condition.  The Very next day February 18, 1999, after exacerbating Plaintiff medical condition the FAA placed Plaintiff back on sick leave.  The FAA subjected Plaintiff to disparate treatment.  **See PI's Exhibit A Tab 25 (FAA employee Kenneth Neel's (white male) Affidavit).**  Based on the record, it is clear that the reasonable accommodation the FAA advised Plaintiff on June 29, 1999, that it will give a decision as soon as possible is on work assignment transfer.  Furthermore Dr. Brian Schulman FAA hired Consultant testified for the FAA that Plaintiff **work assignment transfer** had been pending since February 1999.  Based on the record it is clear that the **reasonable accommodation** claim in C.A. No. 01-2213 (JR) was regard to **work assignment transfer**.  Based on the record it is clear that Plaintiff' sick leave accommodation requested was requested during December 1998, and it is clear that the FAA made its decision on Plaintiff's sick leave accommodation request in January 1999.  Based on the record, it is clear that Plaintiff's sick leave accommodation request dated December 24, which was decided and denied by the FAA in January 1999, in C.A. No. 05-1412 (JR) was not the same reasonable accommodation work assignment transfer in C.A. No. 01-2213 (JR) as alleged by defendant as *res judicata*.  **The record itself impeaches Defendant's *res judicata* claim allegation.**  To date the FAA has reimbursed the U.S. Department of Labor more than $350, 000 for wage loss benefits due to Plaintiff's August 5, 1998 disability traumatic injury.  **See PI's Exhibit A Tab 12 FAA's**

**letter dated June 25, 2005.** The record is telling, it is doubtful that the FAA would

reimbursed the U.S. Department of Labor an excess of more than one-third of a **Million**

**Dollars** for Plaintiff's disability traumatic injury sustained in the performance of duty on

August 5, 1998, if Plaintiff just walked off and **"abandoned"** his position as alleged by

Defendant.

       **The FAA was put on notice as early as November 1998, that Plaintiff needed**

**Reasonable Accommodation and again on February 22, 1999.  See attached Exhibit**

**1 Forensic Psychological Evaluation dated November 11, 1998, and Pl's Op. Exhibit**

**A Tab 23 letter dated February 22, 1999, 2 nd paragraph from Dr. Brown with**

**attached Mental Health Plan.  Also, FAA EAP Coordinator Kimberly Brams met**

**with Director ARS James Washington during March 1999, regarding reasonable**

**accommodation work assignment transfer for Plaintiff.  The FAA abandoned it**

**responsibility and obligation regarding Plaintiff's reasonable accommodation; and**

**also abandoned Plaintiff.  Moreover, the FAA submitted a letter dated June 29,**

**1999, to plaintiff advising Plaintiff that he will have a decision on his reasonable**

**accommodation soon.  See Pl's Exhibit B Tab 11, Phillips letter dated June 29, 1999**

**and See attached Exhibit 3.**

       The FAA placed Plaintiff on sick leave on August 5, 1998.  Plaintiff was on

approved leave authorized and approved by the FAA from August 5, 1998, to February

20, 2000.  The record speaks for itself.  **See Pl's Exhibit A Tab 5 and Tab 23.**  Also,

**See Pl's Exhibit B Tab 11.**  April 8, 1999, the FAA approved Plaintiff's sick leave based

on work related stress.  May 19, 1999, the FAA approved Plaintiff's sick leave based on

workplace induced disability which Plaintiff sustained on August 5, 1998.  July 29, 1999,

the FAA approved Plaintiff sick leave based on workplace disability and per Mr. Phillips'
advice on approving Plaintiff reasonable transfer in support of Plaintiff's workplace
induced disability. June 29, 1999, the FAA submitted a letter to Plaintiff advising him
that his medical material has been reviewed by the agency medical Officer and he has
determined in agreement with Dr. Brown. Via letter dated June 29, 1999, the FAA
advised Plaintiff that pending its determination of plaintiff job work assignment transfer
**Reasonable Accommodation** Plaintiff will be granted continued sick leave based on his
**medical condition**. **See attached Exhibit 3 Phillips' letter dated June 29, 1999.** This
document statement along is proof that Plaintiff did not abandon his position as alleged
by Defendant. Also, the FAA advised Plaintiff that it would respond to Plaintiff job work
assignment transfer as soon as possible. Plaintiff followed his supervisor's instructions.
30 days is a reasonable time period for the FAA to respond to Plaintiff's work assignment
transfer. However, Plaintiff engaged in protected activity between July 22, 1999, to
February 4, 2000, when he filed several EEO complaints against the Agency naming Jack
Phillips, Jose Justiniano and John Staples as the alleged discrimination and retaliatory
officials. Only 10 days had elapsed from the filing of the February 4, 2000, EEO
complaint and the letter from Jose Justiniano dated February 14, 2000, advising Plaintiff
that his employment with the FAA will be terminated effective February 20, 2000. **See
attached Exhibit 4.** Terminating Plaintiff's employment is an adverse employment
action. **See Pl's Exhibit B Tab 11 and attached Exhibit 3.** The record speaks for itself.

Attachment 2 page 2 the court documents "His supervisor had directed him to
return to work on February 16, 1999, Mr. Battle complied, but **two days** after his return
he requested further leave, which the FAA also granted. Defendant never informed this

court that Defendant had provided this court with false information, misrepresented facts and concealed pertinent information favorable to Mr. Battle. Defendant never informed this court that Mr. Battle sustained a disability traumatic injury in the performance of duty on August 5, 1998, Dr. Brown had advised Mr. Phillips on January 12, 1999, that Mr. Battle was under his professional care and was unable to return to work at this time. Mr. Phillips directed Mr. Battle to return to work on February 16, 1999, over Dr. Brown's professional advice and opposition. Mr. Battle returned to work as directed by Mr. Phillips on February 16, 1999. Upon Mr. Battle return Mr. Phillips assigned Mr. Battle former ARX-100 Division employee Elvia Rivera workload (Configuration Management) in addition to his own original workload. Mr. Phillips adverse employment action caused a severe resumption/reoccurrence of Mr. Battle anxiety disorder medical condition as found and testimony by Dr, Brown and Dr. Schulman respectively. Mr. Battle complied, but two days after his return he requested further leave, which the FAA granted because the FAA had exacerbated Mr. Battle's known medical condition. Also, Defendant failed to inform this court that Mr. Phillips directed Mr. Battle to return to work only **8 days** after EEO counselor Marietta Swain interviewed him regarding Mr. Battle reporting Mr. Phillips discrimination and retaliation against him. Also Mr. Battle initiated An EEOC complaint against Mr. Phillips on **October 27, 1998**. Mr. Battle filed an EEOC complaint against Mr. Phillips on **February 4, 1999**, only 12 days had elapsed prior to Mr. Phillips doubling Mr. Battle workload on February 16, 1999, causing a severe harm to Mr. Battle's health. Defendant concealed these facts from this court. **See Pl's Op at pgs. 2,5,7, 12,13-19,22,61-70 Exhibit A Tabs 1, 13,15,20 and 23,23 and Exhibit B Tabs 5 pg. 411, Tab 6 and Tab 8 pg. 49 line16-18.**

Also, AUSA Oliver McDaniel concealed and failed to inform this court in Defendant's October 19, 2005 and January 20, 2005, motion to dismiss documents that after exacerbating Mr. Battle medical condition on February 16 and 17, 1999, Mr. Battle filed a FMLA request and Mr. Phillips approved leave under the FMLA. Approximately 4 months later when Mr. Battle attorney Charles Chester became involved Mr. Phillips decided to let FAA Chief Psychiatrist Barton Pakull review Dr. Brown medical records to determine if sick leave was appropriate only. Mr. Phillips only asked Dr. Pakull to determine if sick leave was appropriate. Mr. Phillips instructed Attorney Charles Chester to submit all medical reports, documents and information Dr. Brown relied on. Attorney Charles Chester submitted all medical reports, records, notes, testing, raw score, test scoring and every thing dr. brown relied on. Dr. Pakull reviewed Dr. Brown's medical documents and determined that sick leave was appropriate and justified. Defendant concealed and failed to inform this court that Dr. Pakull was informed that Mr. Battle was terminated, subsequently, thereafter Dr. Pakull destroyed all medical documents including notes, testing, scoring and all information Dr. Brown relied on. During the Battle deposition conducted on July 23, 2004, at AUSA Oliver McDaniel work location this was reported by Mr. Battle during his deposition. AUSA Oliver McDaniel was aware that FAA Chief Psychiatrist Barton Pakull had reviewed Dr. Brown's medical documents and his finding was that sick leave was appropriate and justified. Also, he is aware that the Agency has destroyed all medical documents and information submitted to Dr. Pakull.

Plaintiff has established a *prima facie* case of **race discrimination**. Plaintiff is an African-American, and he did suffer an adverse employment when the agency actions on

February 16 and 17, 1999, caused a severe resumption/reoccurrence of his anxiety

disorder medical condition as findings and testimony by Dr. Brown and Dr. Schulman

respectively.  **See <u>Pl's Op. at pgs 89-96 and Exhibit A Tab 25 FAA employee</u>**

**<u>Kenneth Neel Affidavit</u>**. NOTE:  This is just one of numerous *prima facie* case of racial

discrimination Plaintiff documented throughout Plaintiff's Opposition supported by

Exhibits to Defendant' motion to dismiss and plaintiff's motion for summary judgment.

　　　　Plaintiff has established a *prima facie* case of **<u>retaliation</u>**.  It is undisputed that

Plaintiff engaged in protected activities by filing several EEO complaints against his

supervisor Jack Phillips between October 27, 1998 and February 4, 1999, and his severe

resumption/reoccurrence of his known anxiety disorder medical condition caused by his

supervisor Jack Phillips harmful actions including denying Plaintiff's sick leave to

recover from his August 5, 1998, disability traumatic injury; directing him to return to

work on February 16, 1999; and assigning him a former employer workload

(Configuration Management) in addition to his own original workload on February 16

and 17, 1999, was an adverse employment action.  The time period was only 12 days

after Plaintiff filed his February 4, 1999, EEO complaint naming Jack Phillips as the

alleged discrimination official and only 32 days had elapsed between the time EEO

Counselor Marietta Swain conducted and interview with Mr. Phillips regarding his

discrimination and retaliation against Plaintiff.  <u>The time period was just days which give</u>

<u>rise to an inference of retaliatory treatment</u>.  **See <u>Pl's Op. at pgs. 28-30 and Exhibit A</u>**

**<u>Tabs 1 and 15</u>**.  Defendant has failed to provide any evidence that articulates Jack

Phillips actions against Plaintiff were nonretaliatory.

Plaintiff has established he sustained a disability traumatic injury on August 5, 1998, and is currently receiving benefits for his disability; FAA Manager Jose Justiniano has regarded Plaintiff as a person with a disability effective August 5, 1998; and FAA Managers Jose Justiniano and Jack Phillips has regarded Plaintiff as a person with major life activities **thinking** and **concentration** substantially impaired which is covered under the EEOC Enforcement Guidance on the ADA/Rehabilitation Act. **See attached Exhibit 5 EEOC Notice page 37 under Major life activities (in General).** Also, Manager Jose Justiniano has submitted a document to Agency's officials and EEOC wherein he documented that he truly believe that the severity of Plaintiff's medical condition, as described by three doctors affected plaintiff's thinking, perceptions and actions. Manager Jose Justiniano stated his belief is supported by the U.S. Department of Labor (DOL) decision dated June 23, 2000, wherein DOL advised the FAA that Plaintiff sustained a **disability** traumatic injury in the performance of duty on August 5, 1998. **See Pl's Exhibit B Tab 10.** Defendant has not and cannot dispute the U.S. Department of Labor findings and decision.

Herein, contain Exhibit 6 of documentation of the May 4, 1999 EEO Complaint filed by Plaintiff which constitute the action before this Court.

CONCLUSION

Plaintiff has stated a claim upon which relief can be granted. Moreover, there are no genuine issues of material fact that preclude summary judgment, and Plaintiff is entitled to summary judgment as a matter of law. Plaintiff suffered an adverse employment action on February 16 and 17, 1999, when defendant's actions caused a severe resumption/reoccurrence of plaintiff's known anxiety disorder medical condition,

29

which is an <u>adverse employment action</u>. **Defendant acted with "deliberate indifference" to Plaintiff's medical needs.** Furthermore, defendant was aware and knowledgeable of Plaintiff's August 5, 1998, disabling traumatic injury sustained in the performance of duty on August 5, 1998, and his anxiety disorder medical condition prior to February 16, 1999, and had in his possession and available medical reports and documents from Dr. Brown dated September 17, 1998, October 22, 1998, November 12, 1998, and January 12, 1999, prior to causing a severe resumption/reoccurrence of Plaintiff's anxiety disorder medical condition, which is a personal loss and harm to plaintiff.

Respectfully submitted,

Lawerence Battle, Pro Se
6920 100th Avenue
Seabrook, MD 20706
301-731-4268

## CERTIFICATION OF SERVICE

I CERTIFY THAT ON February 24, 2006, I caused the foregoing Plaintiff's Motion for an extension of time to File a Response to Defendant's Motion to Dismiss and opposition to Plaintiff's motion for summary judgment to be served on Defendant by first class mail, addressed as follows:

OLIVER W. MCDANIEL
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C. 20530



DCD_ECFNotice@dcd.uscour
ts.gov
02/02/2006 12:14 PM

To   DCD_ECFNotice@dcd.uscourts.gov

cc

bcc

Subject   Activity in Case 1:05-cv-01412-JR BATTLE v. MINETA
"Order on Motion for Extension of Time to File
Response/Reply"

***NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once
without charge. To avoid later charges, download a copy of each document during this first
viewing.

## U.S. District Court

## District of Columbia

Notice of Electronic Filing

The following transaction was received from MT, entered on 2/2/2006 at 12:14 PM EDT and
filed on 2/2/2006

**Case Name:**              BATTLE v. MINETA
**Case Number:**           1:05-cv-1412
**Filer:**
**Document Number:**

**Docket Text:**
MINUTE ORDER granting plaintiff's motion for extension of time [18] to February 24, 2006.
Signed by Judge James Robertson on February 2, 2006. (MT)

The following document(s) are associated with this transaction:

**1:05-cv-1412 Notice will be electronically mailed to:**

Oliver W. McDaniel    oliver.mcdaniel@usdoj.gov, timothy.rice@usdoj.gov;
tammatha.l.dawkins@usdoj.gov

**1:05-cv-1412 Notice will be delivered by other means to:**

LAWERENCE BATTLE
6920 100th Avenue
Seabrook, MD 20706